## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

JEFFREY THOMAS PIRZINGER,    )     Case No. 7:25-cv-01760-PMH
         Plaintiff,   )     Hon. Philip M. Halpern
            )
v.               )
            )
TRANS UNION LLC,        )
         Defendant.   )
            )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S LETTER MOTION for Conference**

Hon. Judith C. McCarthy, Chief Magistrate Judge
The Hon. Charles L. Brieant Jr. Federal Building
300 Quarropas Street
White Plains, NY 10601-4150

Dear Judge McCarthy:

Plaintiff Jeffrey Thomas Pirzinger respectfully submits this letter in response to Defendant's request for a discovery conference concerning Plaintiff's responses to certain interrogatories.

Plaintiff respectfully submits that Court intervention does not appear necessary at this time because the parties have already engaged in substantive written meet-and-confer communications addressing the issues raised by Defendant. Defendant's request appears premature given the parties' ongoing meet-and-confer efforts.

Copies of those communications are attached as Exhibits A–D so that the Court may review the full record of the parties' discussions.

**1. The Parties Have Conducted a Good-Faith Meet-and-Confer Process**

Defendant's letter suggests that Plaintiff has not sufficiently met and conferred regarding the discovery issues raised.

That characterization is inaccurate.

Following Defendant's Rule 37 correspondence, Plaintiff responded in writing on multiple occasions addressing Defendant's concerns and explaining the scope of information within Plaintiff's possession.

These communications include:

**Exhibit A**: Plaintiff's February 10, 2026 response regarding discovery issues

**Exhibit B**: Plaintiff's February 17, 2026 follow-up response

**Exhibit C:** Plaintiff's March 3, 2026 reply addressing Defendant's latest Rule 37 letter

**Exhibit D:** Email correspondence between the parties regarding the proposed stipulated confidentiality agreement and protective order

These written communications demonstrate that Plaintiff engaged with Defendant's concerns in good faith and attempted to resolve the issues without Court intervention.

Courts in this District regularly recognize that written correspondence can satisfy the meet-and-confer requirement when it substantively addresses the discovery dispute and preserves an accurate record of the parties' positions.

**2. Plaintiff Has Produced All Documents Within His Possession, Custody, or Control**

Defendant's correspondence repeatedly requests documentation purporting to prove that certain tradelines reported on Plaintiff's credit file are inaccurate.

Plaintiff has already explained that:

- Plaintiff does not possess creditor-originated accounting records

- Plaintiff does not possess internal furnisher documentation
- Plaintiff does not control third-party creditor records

Plaintiff has produced all documents within his possession relevant to the dispute, including the January 2, 2025 dispute correspondence and consumer disclosure materials.

Plaintiff has also expressly stated in his written responses that no additional responsive documents exist within Plaintiff's custody or control beyond those already produced.

A party cannot produce documents that do not exist or that are not within that party's possession, custody, or control.

## 3. Defendant Mischaracterizes the Nature of Plaintiff's Claim

Defendant's correspondence repeatedly asserts that Plaintiff must provide documentary proof demonstrating that the reported tradelines are inaccurate.

However, Plaintiff's claim arises under 15 U.S.C. §1681i, which concerns the adequacy of a consumer reporting agency's reinvestigation after receiving notice of a dispute.

The statute requires a consumer reporting agency to conduct a reasonable reinvestigation upon receipt of a dispute.

It does not condition that duty on a consumer's possession of creditor accounting records.

The disputed reporting at issue in this action is described in the operative Second Amended Complaint (ECF No. 34), which remains the operative pleading in this case.

To the extent Defendant contends that the disputed reporting was verified as accurate, the documentation supporting that verification would be within Defendant's records or the furnishers' records, not Plaintiff's possession.

Information concerning the steps taken during Defendant's reinvestigation, including the materials reviewed and communications with furnishers, resides within Defendant's records and is appropriately explored through discovery.

Plaintiff respectfully submits that discovery is intended to permit the parties to obtain information relevant to the claims and defenses in the case, including information within the opposing party's possession.

**4. Defendant's March 3, 2026 Letter Raises Issues Already Addressed in the Parties' Correspondence**

Defendant's March 3, 2026 correspondence requests documentary proof of tradeline inaccuracy from Plaintiff while acknowledging that the underlying account records and furnisher documentation are maintained by third parties.

Plaintiff has already explained that he does not possess creditor-originated accounting records or internal furnisher documentation beyond the materials previously produced.

To the extent Defendant seeks account-level documentation supporting the furnishers' verification of the disputed information, such records would necessarily be maintained by Defendant or the furnishers and are appropriately the subject of discovery directed to those entities.

Additionally, Defendant's letter states that Plaintiff has "yet to provide any explanation" of the alleged inaccuracies while simultaneously quoting Plaintiff's explanation that the reported items do not reflect Plaintiff's records and understanding of the accounts at the time of the dispute.

Finally, Defendant references an alleged December 26, 2024 dispute letter, which Plaintiff does not recognize and which has not been produced. Plaintiff has requested that

Defendant identify and produce that document so that the record regarding the timing and nature of the disputes may be clarified.

**5. Court Intervention Is Unnecessary at This Time**

Plaintiff respectfully submits that the issues raised appear readily capable of resolution through continued meet-and-confer discussions between the parties.

Plaintiff has:

- responded to Defendant's interrogatories

- produced documents within his possession

- explained the limits of documents within his custody or control

- engaged in multiple written meet-and-confer communications

Plaintiff does not oppose continuing to meet and confer with Defendant regarding any specific interrogatory or production request that Defendant believes remains deficient.

If Defendant identifies a particular interrogatory response it believes requires clarification, Plaintiff remains willing to address such issues through further written correspondence.

Plaintiff also remains willing to supplement any discovery response if additional responsive information later comes into Plaintiff's possession.

**6. Protective Order**

Defendant's March 3, 2026 correspondence also references the parties' discussions regarding a stipulated confidentiality agreement and protective order.

The parties have exchanged proposed language and have engaged in written discussions regarding certain provisions of the proposed protective order, including issues relating to retention of materials and archival copies for a pro se litigant.

The parties have not yet reached agreement on all terms of a proposed protective order.

Plaintiff remains willing to continue discussions in an effort to reach agreement. If the parties are unable to resolve the remaining issues, Plaintiff would respectfully request that the Court permit the parties to submit either a joint proposed protective order or competing proposed drafts for the Court's consideration.

**Conclusion**

For the reasons stated above, Plaintiff respectfully submits that judicial intervention does not appear necessary at this time.

If the Court believes additional clarification would be helpful, Plaintiff would be pleased to provide any further written explanation the Court may request.

Plaintiff respectfully requests that the Court permit the parties to continue meeting and conferring in good faith to resolve any remaining discovery issues without the need for judicial intervention.

To the extent any dispute remains after those efforts, the parties may renew their request for Court intervention.

Plaintiff remains committed to cooperating in good faith to ensure that discovery proceeds efficiently and without unnecessary burden on the Court.

Dated: March 6, 2026

Respectfully submitted,

*Jeffrey Thomas Pirzinger*

Jeffrey Thomas Pirzinger
135 Beechwood Dr
Mamaroneck, NY 10543
T: (914) 497-1104
Plaintiff, Pro Se

**Exhibit A**: Plaintiff's February 10, 2026 response regarding discovery issues

**Exhibit B**: Plaintiff's February 17, 2026 follow-up response

**Exhibit C:** Plaintiff's March 3, 2026 reply addressing Defendant's latest Rule 37 letter

**Exhibit D:** Email correspondence between the parties regarding the proposed stipulated confidentiality agreement and protective order

# EXHIBIT A

Sent via Email to: andrew.hope@bipc.com makenzie.leh@bipc.com          Date: February 10, 2026

To:   BUCHANAN INGERSOLL – ROONEY          From: JEFFREY THOMAS PIRZINGER
      ATTN: ANDREW G. HOPE                        135 BEECHWOOD DR
      ATTN: MAKENZIE P. LEH (215-665-5342)        MAMARONECK, NY 10543
      640 FIFTH AVE, 9TH FL
      NEW YORK, NY 10019
      PHONE: 212-440-4400, 610-783-3314
      FAX: 212-440-4401
      ANDREW.HOPE@BIPC.COM
      MAKENZIE.LEH@BIPC.COM

Re:   **Jeffrey Thomas Pirzinger v. Trans Union LLC**
      **Case No. 7:25-cv-01760-PMH (S.D.N.Y.)**
      **Responses Rule 37 Letter Plaintiff Discovery Responses**

       In reply to: "Dear Mr. Pirzinger: In accordance with Federal Rule of Civil Procedure
37(a)(1), this correspondence serves as a request to meet and confer regarding your discovery
responses and objections to the discovery requests of Defendant, TransUnion, LLC
("TransUnion"). Please note that the issues raised herein are based on TransUnion's initial
review of your responses, and TransUnion reserves the right to address additional concerns upon
further review. Please provide your availability to meet and confer before the close of business
on Tuesday, February 17, 2026. Further, prior to the meet and confer, please review the
following areas of concern and proposed courses of action regarding Plaintiff's answers to the
Interrogatories and responses to the Requests for Production of Documents provided below:
Interrogatory No. 4: Please provide a complete response to this Interrogatory. Simply referring
to Exhibit F to the Second Amended Complaint is insufficient. Interrogatory No. 5: Please state
whether you allege that any action and/or inaction of TransUnion affected such application for
credit identified in Interrogatory No. 4. This information is relevant and discoverable.
Interrogatory No. 6: Please provide a complete response to this Interrogatory, including subsets
(a) – (c), which specifically ask why you contend the tradeline is inaccurate. Simply referring to
January 2, 2025 dispute letter is insufficient and does not identify why the tradeline is
inaccurate. Interrogatory No. 7: Please clarify what you mean by "credit profile" and "adverse
actions and damages." Please do not hesitate to contact me should you have any questions.
Sincerely, Andrew G. Hope"

Dear Mr. Hope,

       I write in response to your February 10, 2026 Rule 37 letter regarding Plaintiff's

discovery responses.

Page 1 of 3

Sent via Email to: andrew.hope@bipc.com makenzie.leh@bipc.com          Date: February 10, 2026

Plaintiff has reviewed Defendant's letter (cited above, and as attachment) and confirms his willingness to engage in a good-faith meet-and-confer process pursuant to Federal Rule of Civil Procedure 37(a)(1). At this time, however, Plaintiff declines a telephonic conference and elects to proceed in writing in order to preserve an accurate and complete record of the parties' respective positions. Written correspondence fully satisfies Rule 37's meet-and-confer requirement.

As an initial matter, Plaintiff maintains that his discovery responses were timely served, made in good faith, and are compliant with the Federal Rules of Civil Procedure, including Rules 26(b), 26(e), 33, and 34. Plaintiff's responses answered the interrogatories as framed, asserted appropriate objections where warranted, and incorporated by reference sworn pleadings and authenticated exhibits already produced in this action. The Rules do not require a responding party to restate, narrate, or re-characterize evidence already identified and incorporated, nor do they require premature contention discovery or legal conclusions.

Defendant's Rule 37 letter does not identify any response that is incomplete or incorrect due to later-acquired information within the meaning of Rule 26(e). Rather, Defendant appears to seek additional narrative explanation beyond what the Rules require and beyond what is proportional to the needs of this Fair Credit Reporting Act action. Plaintiff respectfully disagrees that any such supplementation is required under the Federal Rules of Civil Procedure.

Plaintiff notes that Rule 26(e) does not impose an obligation to supplement based on a requesting party's evolving preferences or continued review.

With respect to Interrogatories Nos. 4–7, Plaintiff's responses relied on the adverse action notices, written disputes, consumer disclosures, and other exhibits properly incorporated by reference into the Second Amended Complaint. Those materials identify the credit applications at issue, the disputed items of information, the nature of the alleged inaccuracies, and the

Page 2 of 3

Sent via Email to: andrew.hope@bipc.com makenzie.leh@bipc.com          Date: February 10, 2026

resulting adverse actions. To the extent Defendant contends that any specific interrogatory response fails to comply with the Federal Rules, Plaintiff requests that Defendant identify with particularity, as required before any Rule 37 motion: (1) the specific portion of the interrogatory allegedly unanswered; (2) the rule requiring additional information; and (3) what information is purportedly missing that is not already set forth in the pleadings or exhibits.

Plaintiff can provide a compliance table if Defendant believes further clarification is required.

Plaintiff does not waive, and expressly preserves, all objections previously asserted, including objections based on relevance, proportionality, burden, privacy, privilege, and the improper scope of contention discovery. Nothing herein should be construed as an admission that any response was deficient or that supplementation is required.

If Defendant believes a motion to compel is necessary after this written meet-and-confer process, Plaintiff will oppose such a motion and rely on the existing discovery record. Plaintiff remains open, however, to considering targeted clarification if the Court later directs it.

Please advise if Defendant wishes to continue the meet-and-confer process in writing based on the framework above.

Respectfully,

*Jeffrey Thomas Pirzinger*

Jeffrey Thomas Pirzinger

Pro Se Plaintiff

Attachment:  Copy of Rule 37 Letter From Defendant Regarding Plaintiff's Discovery Responses Dated February 10, 2026.

# Buchanan

**Andrew G. Hope**
215 665 5322
andrew.hope@bipc.com

Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
T 215 665 8700
F 215 665 8760

February 10, 2026

**VIA ELECTRONIC MAIL**

Jeffrey Thomas Pirzinger
135 Beechwood Dr.
Mamaroneck, NY 10543
(914) 497-1104

> RE:    *Jeffrey Thomas Pirzinger v. Transunion LLC*
> Case No.: 7:25-cv-01760-PMH
> **Rule 37 Letter Regarding Plaintiff's Discovery Responses**

Dear Mr. Pirzinger:

In accordance with Federal Rule of Civil Procedure 37(a)(1), this correspondence serves as a request to meet and confer regarding your discovery responses and objections to the discovery requests of Defendant, TransUnion, LLC ("TransUnion"). Please note that the issues raised herein are based on TransUnion's initial review of your responses, and TransUnion reserves the right to address additional concerns upon further review. Please provide your availability to meet and confer before the close of business on Tuesday, February 17, 2026.

Further, prior to the meet and confer, please review the following areas of concern and proposed courses of action regarding Plaintiff's answers to the Interrogatories and responses to the Requests for Production of Documents provided below:

**Interrogatory No. 4:** Please provide a complete response to this Interrogatory. Simply referring to Exhibit F to the Second Amended Complaint is insufficient.

**Interrogatory No. 5:** Please state whether you allege that any action and/or inaction of TransUnion affected such application for credit identified in Interrogatory No. 4. This information is relevant and discoverable.

**Interrogatory No. 6:** Please provide a complete response to this Interrogatory, including subsets (a) – (c), which specifically ask why you contend the tradeline is inaccurate. Simply referring to January 2, 2025 dispute letter is insufficient and does not identify why the tradeline is inaccurate.

**Interrogatory No. 7**: Please clarify what you mean by "credit profile" and "adverse actions and damages."

February 10, 2026
Page - 2 -

    Please do not hesitate to contact me should you have any questions.

                Sincerely,

                Andrew G. Hope

# EXHIBIT B

Sent via Email to: andrew.hope@bipc.com makenzie.leh@bipc.com          Date: February 17, 2026

To:   BUCHANAN INGERSOLL – ROONEY    From: JEFFREY THOMAS PIRZINGER
ATTN: ANDREW G. HOPE                   135 BEECHWOOD DR
ATTN: MAKENZIE P. LEH (215-665-5342)   MAMARONECK, NY 10543
640 FIFTH AVE, 9TH FL
NEW YORK, NY 10019
PHONE: 212-440-4400, 610-783-3314
FAX: 212-440-4401
ANDREW.HOPE@BIPC.COM
MAKENZIE.LEH@BIPC.COM

Re:   **Jeffrey Thomas Pirzinger v. Trans Union LLC**
       **Case No. 7:25-cv-01760-PMH (S.D.N.Y.)**
       **2nd Response Rule 37 Letter Plaintiff Discovery Responses**

In reply to: "Defendant, TransUnion, LLC ("TransUnion") writes in response to your February 10, 2026 letter addressing TransUnion's Rule 37 Letter. Your letter notes that you decline a telephonic conference and elect to proceed in writing, which TransUnion does not oppose. As to your statement that TransUnion's Rule 37 letter does not identify any response that is incomplete or incomplete, that is incorrect. Instead, TransUnion identified the following deficiencies in its Rule 37 letter: Interrogatory No. 4: Please provide a complete response to this Interrogatory. Simply referring to Exhibit F to the Second Amended Complaint is insufficient. Interrogatory No. 5: Please state whether you allege that any action and/or inaction of TransUnion affected such application for credit identified in Interrogatory No. 4. This information is relevant and discoverable. Interrogatory No. 6: Please provide a complete response to this Interrogatory, including subsets (a) – (c), which specifically ask why you contend the tradeline is inaccurate. Simply referring to January 2, 2025 dispute letter is insufficient and does not identify why the tradeline is inaccurate.  These are not requests for additional information or narration beyond what the rules require but were included in TransUnion's original interrogatory requests. They were not fully answered by you. Federal Rule of Civil Procedure 33(b)(3) mandates that each party must answer each interrogatory separately and fully. Since you have not fully responded to each interrogatory, TransUnion requests that you do so. This is not a request for supplementation. Regarding Interrogatory No. 4, please confirm that the "vehicle-related denials" reflected in Exhibit F to the Second Amended Complaint represent your only applications for credit over the past seven years. Whether you have made other credit applications, whether these applications have been approved or denied, and the reasons for any such adverse decisions directly bear upon your claim for damages in this action, as well as the extent to which any such damages are traceable to TransUnion's alleged conduct. Regarding Interrogatory No. 6, TransUnion specifically notes that you failed to respond to subparts (a) through (c), which ask why you believe the tradelines listed in your dispute are inaccurate. Although you have provided several documents—including a revocation of consent, your dispute letter, transcripts, adverse action notes, an MSRP printout, and a consumer disclosure—you have not supplied any evidence supporting your conclusion that the accounts are inaccurate. While your Complaint and dispute letter contain general statements and "reasons" for the alleged inaccuracy, such as "inaccurate amount," "the amount past due is inaccurate," or "not charged off," you have failed to respond to TransUnion's request

for specific information substantiating these alleged inaccuracies. To clarify, for any account where you claim that there is an inaccurate balance or that the amount past due is inaccurate, Interrogatory No. 6 seeks information regarding what you believe to be the correct balance and whether the amount reflected in the tradelines includes charges that you did not make or approve or otherwise fails to reflect payments that you made on the accounts that were not properly credited. Likewise, you contend that many of the tradelines are inaccurate because they are "not charged off" but do not provide any documents or information to support that the accounts were not (or should not have been) charged off. These would include, for example, account statements, proof of payments that were made to keep the accounts current but were not credited, and/or communications with the creditor or other third parties indicating that the accounts are not delinquent or closed. Finally, TransUnion requests that you clarify what you mean by "credit profile" and "adverse actions and damages" in Interrogatory No. 7. Pursuant to the Federal Rules and the court's Local Rules, the parties are obligated to work together in good faith to resolve any discovery disputes. To that end, please advise as to your availability for a call during the week of February 16, 2026. Sincerely, Andrew G. Hope"

Dear Mr. Hope,

Plaintiff writes further in response to Defendant's February 13, 2026 correspondence regarding Interrogatories Nos. 4, 6, and 7. Without waiving any previously asserted objections, and in the interest of narrowing issues, Plaintiff provides the following clarification.

Plaintiff continues to elect to proceed in writing and does not believe a telephonic conference is necessary at this time. Written correspondence satisfies Rule 37's meet-and-confer requirement.

**Interrogatory No. 4:**

Plaintiff identifies the vehicle-related adverse action notices reflected in Exhibit F to the Second Amended Complaint as the credit applications that form the basis of Plaintiff's damages claim in this action. Plaintiff has not asserted damages in this case based on other inquiries that may appear within his consumer file.

To the extent Defendant's records reflect additional hard inquiries, Plaintiff does not concede that each such inquiry constituted a completed credit application submitted by Plaintiff

Sent via Email to: andrew.hope@bipc.com makenzie.leh@bipc.com          Date: February 17, 2026

or that each resulted in an adverse action. Plaintiff's damages claim in this action are limited to the adverse action notices identified in Exhibit F to the Second Amended Complaint.

After reasonable inquiry, Plaintiff does not presently have information sufficient to characterize the nature or outcome of other inquiries reflected in Defendant's records. Determining the precise nature and disposition of any such inquiry would require review of underlying lender/furnisher documentation not within Plaintiff's custody or control. Plaintiff will supplement pursuant to Rule 26(e) if additional responsive information becomes known.

**Interrogatory No. 6**

Plaintiff contends that certain items of information identified in his January 2, 2025 written dispute and reflected in his consumer disclosure were inaccurate, incomplete, and/or materially misleading within the meaning of 15 U.S.C. § 1681i.

Plaintiff disputed the reported items of information because the balances, amounts past due, delinquency indicators, and status designations did not reflect Plaintiff's records and understanding of the accounts at the time of dispute. Plaintiff communicated those disputes to Defendant in writing on January 2, 2025.

Plaintiff's claim in this action concerns Defendant's reinvestigation obligations under § 1681i after receiving notice of disputed items of information. The central issue is whether Defendant conducted a reasonable reinvestigation and ensured that the reported information was accurate or not materially misleading following notice of dispute.

Plaintiff has produced the documents in his possession relevant to the disputed items of information, including his written dispute and consumer disclosure. Plaintiff does not control or possess creditor-originated accounting records or internal furnisher documentation. To the extent Defendant relies on furnisher verification to justify continued reporting, the adequacy and reasonableness of that reinvestigation process is a disputed issue in this action.

Sent via Email to: andrew.hope@bipc.com makenzie.leh@bipc.com          Date: February 17, 2026

This clarification is provided in good faith and without waiving previously asserted objections.

**Interrogatory No. 7**

As used in Plaintiff's responses, "credit profile" refers to the contents of Plaintiff's consumer report, including reported items of information, balances, delinquency indicators, charge-off designations, and inquiry history, as presented to third parties for permissible purposes under 15 U.S.C. § 1681b.

"Adverse actions and damages" refer to credit denials and related financial and reputational harm alleged in the Second Amended Complaint resulting from the reporting of disputed items of information following Plaintiff's written dispute.

Plaintiff provides the above clarification in good faith while preserving all previously asserted objections.

Respectfully,

*Jeffrey Thomas Pirzinger*

Jeffrey Thomas Pirzinger
Pro Se Plaintiff

Attachment:  Copy of Rule 37 Letter from Defendant Regarding Plaintiff's Discovery Responses Dated February 13, 2026.

# Buchanan

**Andrew G. Hope**
215 665 5322
andrew.hope@bipc.com

Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA  19102-2555

T 215 665 8700
F 215 665 8760

February 13, 2026

**VIA ELECTRONIC MAIL**

Jeffrey Thomas Pirzinger
135 Beechwood Dr.
Mamaroneck, NY 10543
(914) 497-1104

> RE:  ***Jeffrey Thomas Pirzinger v. Transunion LLC***
> **Case No.: 7:25-cv-01760-PMH**
> **TransUnion Response to February 10, 2026, Letter**

Dear Mr. Pirzinger:

Defendant, TransUnion, LLC ("TransUnion") writes in response to your February 10, 2026, letter addressing TransUnion's Rule 37 Letter. Your letter notes that you decline a telephonic conference and elect to proceed in writing, which TransUnion does not oppose.

As to your statement that TransUnion's Rule 37 letter does not identify any response that is incomplete or incomplete, that is incorrect. Instead, TransUnion identified the following deficiencies in its Rule 37 letter:

**<u>Interrogatory No. 4:</u>** Please provide a complete response to this Interrogatory. Simply referring to Exhibit F to the Second Amended Complaint is insufficient.

**<u>Interrogatory No. 5:</u>**  Please state whether you allege that any action and/or inaction of TransUnion affected such application for credit identified in Interrogatory No. 4. This information is relevant and discoverable.

**<u>Interrogatory No. 6:</u>** Please provide a complete response to this Interrogatory, including subsets (a) – (c), which specifically ask why you contend the tradeline is inaccurate. Simply referring to January 2, 2025 dispute letter is insufficient and does not identify why the tradeline is inaccurate.

February 13, 2026
Page - 2 -

These are not requests for additional information or narration beyond what the rules require but were included in TransUnion's original interrogatory requests. They were not fully answered by you. Federal Rule of Civil Procedure 33(b)(3) mandates that each party must answer each interrogatory *separately* and *fully*. Since you have not fully responded to each interrogatory, TransUnion requests that you do so. This is not a request for supplementation.

Regarding Interrogatory No. 4, please confirm that the "vehicle-related denials" reflected in Exhibit F to the Second Amended Complaint represent your only applications for credit over the past seven years. Whether you have made other credit applications, whether these applications have been approved or denied, and the reasons for any such adverse decisions directly bear upon your claim for damages in this action, as well as the extent to which any such damages are traceable to TransUnion's alleged conduct.

Regarding Interrogatory No. 6, TransUnion specifically notes that you failed to respond to subparts (a) through (c), which ask why you believe the tradelines listed in your dispute are inaccurate. Although you have provided several documents—including a revocation of consent, your dispute letter, transcripts, adverse action notes, an MSRP printout, and a consumer disclosure—you have not supplied any evidence supporting your conclusion that the accounts are inaccurate.

While your Complaint and dispute letter contain general statements and "reasons" for the alleged inaccuracy, such as "inaccurate amount," "the amount past due is inaccurate," or "not charged off," you have failed to respond to TransUnion's request for specific information substantiating these alleged inaccuracies. To clarify, for any account where you claim that there is an inaccurate balance or that the amount past due is inaccurate, Interrogatory No. 6 seeks information regarding what you believe to be the correct balance and whether the amount reflected in the tradelines includes charges that you did not make or approve or otherwise fails to reflect payments that you made on the accounts that were not properly credited.

Likewise, you contend that many of the tradelines are inaccurate because they are "not charged off" but do not provide any documents or information to support that the accounts were not (or should not have been) charged off. These would include, for example, account statements, proof of payments that were made to keep the accounts current but were not credited, and/or communications with the creditor or other third parties indicating that the accounts are not delinquent or closed.

Finally, TransUnion requests that you clarify what you mean by "credit profile" and "adverse actions and damages" in Interrogatory No. 7.

February 13, 2026
Page - 3 -

   Pursuant to the Federal Rules and the court's Local Rules, the parties are obligated to work together in good faith to resolve any discovery disputes.  To that end, please advise as to your availability for a call during the week of February 16, 2026.

       Sincerely,

       Andrew G. Hope

# EXHIBIT C

Sent via Email to: andrew.hope@bipc.com makenzie.leh@bipc.com          Date: March 3, 2026

To:  BUCHANAN INGERSOLL – ROONEY          From: JEFFREY THOMAS PIRZINGER
     ATTN: ANDREW G. HOPE                       135 BEECHWOOD DR
     ATTN: MAKENZIE P. LEH (215-665-5342)       MAMARONECK, NY 10543
     640 FIFTH AVE, 9TH FL
     NEW YORK, NY 10019
     PHONE: 212-440-4400, 610-783-3314
     FAX: 212-440-4401
     ANDREW.HOPE@BIPC.COM
     MAKENZIE.LEH@BIPC.COM

Re:   **Jeffrey Thomas Pirzinger v. Trans Union LLC**
      **Case No. 7:25-cv-01760-PMH (S.D.N.Y.)**
      **3rd Response Rule 37 Letter Plaintiff Discovery Responses**

       In reply to: "Dear Mr. Pirzinger: Defendant, Trans Union, LLC ("Trans Union"), responds to
your February 17, 2026, letter regarding Trans Union's Rule 37 Letter concerning Interrogatory Nos. 4,
6, and 7. Your letter indicates that you decline a telephonic conference and choose to proceed in writing.
Regarding Interrogatory No. 6, Trans Union requested an explanation of why you believe the tradelines
listed in your January 2, 2026, dispute are inaccurate. You respond that the reported items do not reflect
"Plaintiff's records and understanding of the accounts at the time of the dispute." However, you have yet
to provide any of these "records" or your "understanding of the accounts" and why they are purportedly
inaccurate. Although you have submitted several documents—including a revocation of consent, your
dispute letter, transcripts, adverse action notes, an MSRP printout, and a consumer disclosure—you have
not supplied any evidence supporting your conclusion that the accounts are inaccurate. Such information
is discoverable and relevant to the dispute. Additionally, you assert that your claim "concerns
Defendant's reinvestigation obligation" under the FCRA. Specifically, you contend that the central issue
is whether Trans Union conducted a "reasonable reinvestigation and ensured that the reported
information was accurate or not materially misleading following notice of dispute." You further state
that if Trans Union relies on furnisher verification to justify continued reporting, "the adequacy and
reasonableness of that reinvestigation process is a disputed issue." Trans Union responds to these
assertions in turn. First, regarding your January 2, 2026, dispute letter—upon which your claims are
based—Trans Union conducted a reasonable investigation and confirmed the accuracy of the disputed
accounts. See January 23, 2025, Response Letter (Exhibit "A"). Your allegation that Trans Union
responded with a letter stating that your submission was "illegible" or "undeterminable" is incorrect.
Instead, Trans Union responded to your December 26, 2024, dispute letter— which is not referenced in
the Complaint—stating that it was unable to process your request because the nature of the request could
not be determined or was illegible. See January 8, 2025, Response Letter ("Exhibit B"). Therefore, the
January 8, 2025, letter was not Trans Union's response to your January 2, 2026, letter. Instead, Trans
Union properly conducted a reinvestigation of your January 2, 2026, dispute and provided the results to
you on January 23, 2025. See Ex. A. Second, your statement that the central issue is whether Trans
Union conducted a reasonable reinvestigation and whether it relies on furnisher verification further
supports why Interrogatory No. 6 is both relevant and discoverable, and why it is necessary for
understanding the allegations in the Second Amended Complaint. After receiving your January 2, 2026,

Page 1 of 3

Sent via Email to: andrew.hope@bipc.com makenzie.leh@bipc.com         Date: March 3, 2026

dispute letter, Trans Union fulfilled its obligations under the FCRA and conducted a proper reinvestigation of the disputed accounts. These accounts were verified by the furnishers, and you were notified accordingly. To the extent you believe these accounts were inaccurate and should have been removed, Trans Union requests proof of such inaccuracy. Lastly, your letter states that you have produced the documents in your possession relevant to the disputed items. You also note that you do not control or possess creditor-originated accounting records or internal furnisher documentation. If you lack any information or documentation regarding the alleged inaccuracies, please explicitly state so. As stated in all of Trans Union's correspondence, pursuant to the Federal Rules of Civil Procedure and the court's Local Rules, the parties are obligated to work together in good faith to resolve any discovery disputes. Trans Union seeks to resolve this matter without court intervention. Therefore, if you possess proof demonstrating that the 35 items in question are inaccurate, please provide it by Friday, March 6, 2026, to avoid motion practice. Sincerely, Andrew G. Hope"

Dear Mr. Hope,

Plaintiff writes in response to your March 3, 2026 letter.

**1. Alleged December 26, 2024 Dispute and January 23, 2025 Results**

Your letter references a "December 26, 2024 dispute letter." Plaintiff is not aware of having sent any dispute communication dated December 26, 2024. Plaintiff's written dispute in this action is dated January 2, 2025.

If Trans Union contends that it received a dispute communication from Plaintiff dated December 26, 2024, please produce a copy of that document and identify the date and manner in which it was allegedly received.

To the extent Trans Union contends that it provided reinvestigation results on January 23, 2025, please identify the date and manner in which such results were generated and transmitted and produce documentation evidencing the same.

The January 23, 2025 document you reference does not identify the specific dispute to which it relates, nor does it reference Plaintiff's January 2, 2025 correspondence. Please identify the dispute ID, date of receipt, and documentation demonstrating that the January 23 communication was generated in response to Plaintiff's January 2, 2025 dispute correspondence.

Sent via Email to: andrew.hope@bipc.com makenzie.leh@bipc.com          Date: March 3, 2026

**2. "Records and Understanding" of the Accounts**

Plaintiff has produced all documents in his possession relevant to the disputed items, including his January 2, 2025 written dispute and consumer disclosure.

Plaintiff does not possess creditor-originated accounting records, internal furnisher documentation, or other third-party materials beyond what has already been produced.

Plaintiff's § 1681i claim concerns whether Trans Union conducted a reasonable reinvestigation upon receipt of a dispute and whether materially inaccurate or misleading information continued to be reported thereafter. The statute imposes reinvestigation duties upon receipt of a dispute; it does not condition those duties on the consumer's possession of creditor-originated accounting records.

Plaintiff has identified in his pleadings and discovery responses the categories of information disputed, including reported balances, past-due amounts, delinquency indicators, charge-off designations, and dispute coding.

Plaintiff has responded to Interrogatories Nos. 4, 6, and 7 in good faith and does not withhold responsive information within his custody or control. If Trans Union believes a specific interrogatory remains deficient, please identify the precise deficiency so that the parties may address it without court intervention.

Respectfully,

*Jeffrey Thomas Pirzinger*

Jeffrey Thomas Pirzinger
Pro Se Plaintiff
Attachment:   Trans Union LLC's response dated March 3, 2026 to Plaintiff's February 17, 2026 letter.

# Buchanan

**Andrew G. Hope**
215 665 5322
andrew.hope@bipc.com

Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA  19102-2555

T 215 665 8700
F 215 665 8760

March 3, 2026

**VIA ELECTRONIC MAIL**

Jeffrey Thomas Pirzinger
135 Beechwood Dr.
Mamaroneck, NY 10543
(914) 497-1104

> RE:    *Jeffrey Thomas Pirzinger v. Transunion LLC,* Case No.: 7:25-cv-01760-PMH
> **TransUnion Response to February 17, 2026, Letter**

Dear Mr. Pirzinger:

Defendant, TransUnion, LLC ("TransUnion"), responds to your February 17, 2026, letter regarding TransUnion's Rule 37 Letter concerning Interrogatory Nos. 4, 6, and 7. Your letter indicates that you decline a telephonic conference and choose to proceed in writing.

Regarding Interrogatory No. 6, TransUnion requested an explanation of why you believe the tradelines listed in your January 2, 2026, dispute are inaccurate. You respond that the reported items do not reflect "Plaintiff's records and understanding of the accounts at the time of the dispute." However, you have yet to provide any of these "records" or your "understanding of the accounts" and why they are purportedly inaccurate. Although you have submitted several documents—including a revocation of consent, your dispute letter, transcripts, adverse action notes, an MSRP printout, and a consumer disclosure—you have not supplied any evidence supporting your conclusion that the accounts are inaccurate. Such information is discoverable and relevant to the dispute.

Additionally, you assert that your claim "concerns Defendant's reinvestigation obligation" under the FCRA. Specifically, you contend that the central issue is whether TransUnion conducted a "reasonable reinvestigation and ensured that the reported information was accurate or not materially misleading following notice of dispute." You further state that if TransUnion relies on furnisher verification to justify continued reporting, "the adequacy and reasonableness of that reinvestigation process is a disputed issue."

TransUnion responds to these assertions in turn. First, regarding your January 2, 2026, dispute letter—upon which your claims are based—TransUnion conducted a reasonable

March 3, 2026
Page - 2 -

investigation and confirmed the accuracy of the disputed accounts. *See* January 23, 2025, Response Letter (Exhibit "A"). Your allegation that TransUnion responded with a letter stating that your submission was "illegible" or "undeterminable" is incorrect. Instead, TransUnion responded to your December 26, 2024, dispute letter— which is not referenced in the Complaint—stating that it was unable to process your request because the nature of the request could not be determined or was illegible. *See* January 8, 2025, Response Letter ("Exhibit B"). Therefore, the January 8, 2025, letter was not TransUnion's response to your January 2, 2026, letter. Instead, TransUnion properly conducted a reinvestigation of your January 2, 2026, dispute and provided the results to you on January 23, 2025. *See* Ex. A.

Second, your statement that the central issue is whether TransUnion conducted a reasonable reinvestigation and whether it relies on furnisher verification further supports why Interrogatory No. 6 is both relevant and discoverable, and why it is necessary for understanding the allegations in the Second Amended Complaint. After receiving your January 2, 2026, dispute letter, TransUnion fulfilled its obligations under the FCRA and conducted a proper reinvestigation of the disputed accounts. These accounts were verified by the furnishers, and you were notified accordingly. To the extent you believe these accounts were inaccurate and should have been removed, TransUnion requests proof of such inaccuracy.

Lastly, your letter states that you have produced the documents in your possession relevant to the disputed items. You also note that you do not control or possess creditor-originated accounting records or internal furnisher documentation. If you lack any information or documentation regarding the alleged inaccuracies, please explicitly state so.

As stated in all of TransUnion's correspondence, pursuant to the Federal Rules of Civil Procedure and the court's Local Rules, the parties are obligated to work together in good faith to resolve any discovery disputes. TransUnion seeks to resolve this matter without court intervention. Therefore, if you possess proof demonstrating that the 35 items in question are inaccurate, please provide it by Friday, March 6, 2026, to avoid motion practice.

Sincerely,

Andrew G. Hope

# EXHIBIT A

*** 450079572-052 ***

01/23/2025



Information for Good.

JEFFREY THOMAS PIRZINGER
135 BEECHWOOD DR
MAMARONECK, NY 10543-1201

Dear JEFFREY THOMAS PIRZINGER,

We understand that recently something on your credit report did not seem right to you. We take this matter seriously, and we want to make sure your TransUnion credit report is accurate. It's our commitment to you.

Our investigation of the dispute you submitted is now complete.  After a review of your dispute and any provided documentation, we took one or more of the following action(s):

1.  Updated your credit report based on the information you provided; OR
2.  Determined that the information you disputed either does not appear on your credit file or already shows the requested status;  OR
3.  Determined that the data furnisher had previously verified the reported information.  If any of the items you disputed were previously verified, a separate communication was sent to you listing those items along with the data furnisher's contact information; OR
4.  Asked the data furnisher reporting the information you disputed to do all of the following:
    - Review relevant information we sent them, including any provided documents
    - Investigate your dispute and verify whether the information they report is accurate
    - Provide us a response to your dispute and update any other information
    - Update their records and systems, if necessary;

Should you wish to receive the above description of the procedures we used to investigate your dispute in a separate communication for your records, please contact TransUnion.

Your dispute is important. In the pages that follow, you will see your detailed investigation results, including the name and contact details of the source of the information. Please review the results carefully.  To view a full copy of your credit report and for more information about how to read your credit report, please visit www.transunion.com/fullreport.

---

## How to Read Your Investigation Results

You will see that, for each disputed item, a summary explanation appears in the gray box, followed by a brief paragraph describing the results of our investigation, followed by a view of how the item appears in your updated credit report. Please note any changes we made to personal information (name, address, employment, SSN, date of birth) will appear at the end of **Your Investigation Results.**

**A Note on Credit Report Updates**

Information in your credit report is updated frequently which means items you disputed may not appear on your credit report or have already changed by the time we received your dispute. In most cases, the **Date Updated** represents the last time the account information was updated or reported by the data furnisher. Please note that this date may not change following our investigation of your dispute. For **Payment Received** and **Last Payment Made**, please keep in mind, the data may not represent very recent payment activity.

If information was removed or updated as a result of your dispute, the "Your Investigation Results" section below will note that an update was made. An update can include a change to the information or the removal of the information entirely from your credit file. For example, if a field was removed as a result of your dispute, the description will indicate that a change was made to that field. If information was removed, it will no longer appear in the account details.

**Definitions**

For your reference, here are some definitions to help you understand **Your Investigation Results.**

**For ACCOUNTS:**

| | |
|---|---|
| **Balance:** The balance owed as of the date the account was verified or reported | **Original Charge Off:** If applicable, the amount charged off due to non-payment of the account |
| **Credit Limit:** The maximum amount of credit approved by the creditor on the account | **Past Due:** The amount past due as of the date the account was verified or reported |
| **Date Opened:** The date the account was Opened | **Pay Status:** The current status of the account; how you are currently paying. For accounts that have been paid and closed, sold, or transferred, it represents the last reported status of the account. |
| **High Balance:** The highest amount ever owed on an account | **Remarks:** If applicable, the creditor may provide additional information here related to the account |
| **Last Payment Made:** The date the creditor received the last payment on the account | **Responsibility:** The type of contractual ownership (individual, joint, authorized user, etc.) of the account |
| **Maximum Delinquency:** If applicable, the maximum amount past due before an account becomes a charge-off or a collection account | **Terms:** The monthly payment amount or monthly minimum payment due on the account |

**Historical Trended Data**

Accounts on your credit report may include historical account information, which TransUnion has collected from account updates provided by your creditor for up to 30 months. On your credit report, this historical trended data may have appeared in a grid below each account along with information reflecting the timeliness of your payments and may have included the following data: Date Updated, Balance, Amount Due, Amount Paid, Past Due, Credit Limit, High Balance and Remarks.

Please note: Once an account is disputed, the historical trended data is removed from your credit file and will not be displayed on these results. However, the rating information reflecting the timeliness of your payments will remain and reflect any updates provided by the creditor, if applicable.

File Number: 4500795721
Date Issued: 01/23/2025

## Rating Key

Your accounts may also include up to 84 months of rating information. Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors.  This rating key will help you understand any updates to your **PAYMENT HISTORY**, if applicable to **YOUR INVESTIGATION RESULTS**. Any rating that is shaded or any value in the account detail appearing with brackets (> <) may indicate that it is considered adverse.

| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120+ days late | Collection | Voluntary Surrender | Repossession | Charge Off | Foreclosure |

File Number: 4500795742
Date Issued: 01/23/2025

# TransUnion Credit Score

JEFFREY THOMAS PIRZINGER

## YOUR CREDIT SCORE



| Your Score & Grade | Score & Grade Range | Where You Rank |
|---|---|---|
| Score<br>**Not Purchased**<br>(See Below)<br><br>Grade<br>**<br><br>Created on<br>01/23/2025<br><br>Based on your TransUnion credit report, this is a depiction of your creditworthiness. | Unavailable<br>(See Below)<br><br>The numerical score ranges from 850 to 300 equaling grade ranges from A to F. | Unavailable<br>(See Below)<br><br>Your credit ranks higher than --% of the nation's population. |

## About your TransUnion Credit Score

TransUnion is now including some Buy Now, Pay Later (BNPL) installment loans, also known as 'point-of-sale installment loans,' on credit reports. At this time, BNPL information provided to TransUnion is visible to you, but scoring providers, lenders, insurers or other authorized companies that may access your credit report will not be able to use this data. As a result, it will not affect credit decisions or credit scores calculated using TransUnion data. In the future, Buy Now, Pay Later data may be factored into credit scores and credit decisions (for example, account opening or account review decisions). If you have questions please visit https://www.transunion.com/buy-now-pay-later to learn more.

## Summary

You did not order a TransUnion credit score. You can purchase your credit score for $9.95 by calling 1-866-SCORE-TU or 1-866-726-7388.

# Your Investigation Results

> **INVESTIGATION RESULTS - DISPUTED INFORMATION UPDATED:  A change was made to the item(s) based on your dispute.**

**ELAN FIN SVCS/FIDELITY** #417903000929**** ( CB DISPUTES, PO BOX 108, SAINT LOUIS, MO 63166, (866) 234-4750 )
We investigated the information you disputed and updated: **Rating; Historical Trended Data**.  Here is how this item appears on your credit report following our investigation.

| | | | |
|---|---|---|---|
| Date Opened: | 03/05/2012 | Balance: | $21,551 |
| Responsibility: | Individual Account | Date Updated: | 12/31/2024 |
| Account Type: | Revolving Account | Payment Received: | 07/08/2024 ($0) |
| Loan Type: | FLEXIBLE SPENDING CREDIT CARD | Last Payment Made: | 07/08/2024 |
| | | High Balance: | $21,551 |
| | | Original Charge-off: | $18,779 |
| | | Credit Limit: | $35,000 |
| | | Past Due: | >$21,551< |

| | |
|---|---|
| Pay Status: | >Charged Off< |
| Terms: | Paid Monthly |
| Date Closed: | 02/01/2024 |
| >Maximum Delinquency of 120 days in 07/2024 and in 08/2024< | |

Remarks: ACCOUNT CLOSED BY CONSUMER; >UNPAID BALANCE CHARGED OFF<
Estimated month and year that this item will be removed: 03/2031

| | 11/2024 | 10/2024 | 09/2024 | 08/2024 | 07/2024 | 06/2024 | 05/2024 | 04/2024 | 03/2024 | 02/2024 | 01/2024 | 12/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | C/O | C/O | X | 120 | 120 | 90 | 60 | 30 | OK | OK | OK | OK |

| | 11/2023 | 10/2023 | 09/2023 | 08/2023 | 07/2023 | 06/2023 | 05/2023 | 04/2023 | 03/2023 | 02/2023 | 01/2023 | 12/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2022 | 10/2022 | 09/2022 | 08/2022 | 07/2022 | 06/2022 | 05/2022 | 04/2022 | 03/2022 | 02/2022 | 01/2022 | 12/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2021 | 10/2021 | 09/2021 | 08/2021 | 07/2021 | 06/2021 | 05/2021 | 04/2021 | 03/2021 | 02/2021 | 01/2021 | 12/2020 | 11/2020 | 10/2020 | 09/2020 | 08/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 07/2020 | 06/2020 | 05/2020 | 04/2020 | 03/2020 | 02/2020 | 01/2020 | 12/2019 | 11/2019 | 10/2019 | 09/2019 | 08/2019 | 07/2019 | 06/2019 | 05/2019 | 04/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 03/2019 | 02/2019 | 01/2019 | 12/2018 | 11/2018 | 10/2018 | 09/2018 | 08/2018 | 07/2018 | 06/2018 | 05/2018 | 04/2018 | 03/2018 | 02/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

File Number: 4500795572
Date Issued: 01/23/2025

Page 8 of 4

> **INVESTIGATION RESULTS - DISPUTED INFORMATION UPDATED AND OTHER INFORMATION UPDATED:** A change was made to the item(s) based on your dispute and other information has also changed.

**TBOM/FORTIVA** #765650209727**** ( POB 105555, ATLANTA, GA 30348-5555, (800) 710-2961 )
We investigated the information you disputed and updated: **Date Updated; Maximum Delinquency; Rating; Historical Trended Data.** Here is how this item appears on your credit report following our investigation.

| | | |
|---|---|---|
| Date Opened: 06/30/2024 | Balance: $1,864 | Pay Status: >Account 120 Days Past Due< |
| Responsibility: Individual Account | Date Updated: 12/05/2024 | |
| Account Type: Revolving Account | Payment Received: ($0) | Terms: $28 per month, paid Monthly |
| Loan Type: CREDIT CARD | High Balance: $1,864 | Date Closed: 10/04/2024 |
| | Credit Limit: $1,874 | >Maximum Delinquency of 120 days in 12/2024 for $140< |
| | Past Due: >$140< | |

Remarks: DISP INVG COMP-CONSUM DISAGRS
Estimated month and year that this item will be removed: 08/2031

| | 11/2024 | 10/2024 | 09/2024 | 08/2024 | 07/2024 |
|---|---|---|---|---|---|
| Rating | 30 | OK | OK | OK | OK |

**TD BANK USA/TARGET CREDI** #511786301360**** ( P O BOX 1470, MINNEAPOLIS, MN 55440, Phone number not available )
We investigated the information you disputed and updated: **Date Updated; High Balance; Remarks; Maximum Delinquency; Rating; Historical Trended Data.** Here is how this item appears on your credit report following our investigation.

| | | |
|---|---|---|
| Date Opened: 04/23/2015 | Balance: $13,109 | Pay Status: >Account 90 Days Past Due< |
| Responsibility: Individual Account | Date Updated: 01/15/2025 | |
| Account Type: Revolving Account | Payment Received: 07/24/2024 ($0) | Terms: $461 per month, paid Monthly |
| Loan Type: CREDIT CARD | Last Payment Made: 07/24/2024 | Date Closed: 11/17/2024 |
| | High Balance: $13,150 | >Maximum Delinquency of 90 days in 01/2025 for $1,221< |
| | Credit Limit: $11,600 | |
| | Past Due: >$1,221< | |

Remarks: CLOSED BY CREDIT GRANTOR
Estimated month and year that this item will be removed: 09/2031

| | 12/2024 | 11/2024 | 10/2024 | 09/2024 | 08/2024 | 07/2024 | 06/2024 | 05/2024 | 04/2024 | 03/2024 | 02/2024 | 01/2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | 60 | 30 | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 12/2023 | 11/2023 | 10/2023 | 09/2023 | 08/2023 | 07/2023 | 06/2023 | 05/2023 | 04/2023 | 03/2023 | 02/2023 | 01/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 12/2022 | 11/2022 | 10/2022 | 09/2022 | 08/2022 | 07/2022 | 06/2022 | 05/2022 | 04/2022 | 03/2022 | 02/2022 | 01/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 12/2021 | 11/2021 | 10/2021 | 09/2021 | 08/2021 | 07/2021 | 06/2021 | 05/2021 | 04/2021 | 03/2021 | 02/2021 | 01/2021 | 12/2020 | 11/2020 | 10/2020 | 09/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 08/2020 | 07/2020 | 06/2020 | 05/2020 | 04/2020 | 03/2020 | 02/2020 | 01/2020 | 12/2019 | 11/2019 | 10/2019 | 09/2019 | 08/2019 | 07/2019 | 06/2019 | 05/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 04/2019 | 03/2019 | 02/2019 | 01/2019 | 12/2018 | 11/2018 | 10/2018 | 09/2018 | 08/2018 | 07/2018 | 06/2018 | 05/2018 | 04/2018 | 03/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

File Number:     4500793572
Date Issued:     01/23/2025

In the preceding pages we have provided details on the results of our investigation. **If our investigation has not resolved your dispute, here's what you can do next:**

- **Add a 100-word statement to your report.** What this means is that you have the right to send us a note of 100 words or less describing your situation or why you disagree with the results, and we will add this statement to your report. Anyone who views your report will see this statement. Please know that if you include any medical information in your statement, this means you're giving TransUnion permission to include that information in any future credit report we issue on your behalf.
- **Dispute directly with the company that reported the information to us.** If you want changes made to information found on your credit report you may dispute with the company that reported it using the contact information listed in **Your Investigation Results.**
- **Provide to us any other information or documents about your dispute.** Please visit www.transunion.com/dispute and let us know you are filing a repeat dispute. Be sure to include any other information or documentation you feel will help us resolve your dispute.
- **File a complaint** about the company reporting the account or about TransUnion with the Consumer Financial Protection Bureau (www.consumerfinance.gov/complaint) or with your State's Attorney General's office.

If there has been a change to your credit report as a result of our investigation, or if you have added a statement to your report, **you may ask TransUnion to send an updated credit report** to those who have received your report within the last 2 years for employment purposes or within the last 6 months (or 1 year, where applicable) for any other purpose.

**A Note on Inquiries**
An inquiry is posted on your credit report to notify you that a company has requested your report. Companies can only request a credit report for a legitimate business reason (called permissible purpose). Examples of permissible purpose include: credit transactions, employment consideration, review or collection of an existing account or other legitimate business need, insurance underwriting, government licensing, rental application or court order. Inquiries stay on your credit report for up to two (2) years. Each company that requested your credit report will be listed in the section on inquires, along with their contact information. Please note, a company doesn't always need your authorization to view your credit report as long as they have a permissible purpose. If you think an inquiry was made without a permissible purpose, we strongly encourage you to reach out to the company who requested your credit report to find out whether they have opened an account in your name. The company can then investigate and if they determine that someone fraudulently applied for credit in your name they can close that account and send us a letter requesting removal of the inquiry. If you have specific information that the inquiry was made fraudulently, you can also call our Fraud Victim Assistance department at 800-680-7289.

## Should You Wish to Contact TransUnion

Please have your TransUnion **FILE NUMBER** available.  Your unique **FILE NUMBER** is located at the top of each page of this correspondence.

**Online:**
To dispute information contained in your credit report, please visit:  www.transunion.com/disputeonline
For more information please visit our Frequently Asked Questions page at
http://transunion.com/consumerfaqs

**By Mail:**
TransUnion
P. O. Box 2000
Chester, PA 19016-2000

**By Phone:**
(800) 916-8800
You may contact us between the hours of 8:00 AM – 11:00 PM Eastern Time, Monday through Friday, and Saturday through Sunday between the hours of 8:00 AM and 5:00PM Eastern Time, except major holidays.

# EXHIBIT B

***450079572-049***
TransUnion LLC
PO Box 805
Woodlyn, PA 19094-0805

**File Number:** 450079572
**Page:** 1 of 2
**Date Issued:** 1/8/2025

**TransUnion**®

P-I000199-
JEFFREY T PIRZINGER
135 BEECHWOOD DR
MAMARONECK, NY 10543-1201

We appreciate you taking the time to contact us at TransUnion. Our goal is to maintain complete and accurate credit information. It's our commitment to you.

Re: Dispute Status

After reviewing your correspondence, we are unable to process your request because we were unable to determine the nature of your request or your request was illegible. To investigate information contained in your credit report, please type or print the account name and number, and specify why you are disputing it (for example, "this is not my account", "I have never paid late", etc.). Please provide us with this information so we may process your request and initiate an investigation. You may contact us at (800) 916-8800. Our business hours are Monday through Friday, 8:00 am - 11:00 pm, Eastern Time.

We're here to help. Should you have any further questions please contact us at:
- www.transunion.com
- (800) 916-8800
- P.O. Box 2000
Chester, PA 19016-2000

Please have your file number ready 450079572.

File Number:  4500 79572
Page:  2 of 2
Date Issued:  1/8/2025

**TransUnion**

## Disclosure Request Form

To receive a copy of your credit report, please complete this form and attach proof of the required information before returning it to TransUnion Consumer Relations.  If you wish, you may also use this form to purchase a credit score and have it sent with your credit report.

| Name: | SSN: |
|---|---|
| Current Address: | Previous Address: |
| Other Name(s) Used: | Date of Birth : |

**Proof of Current Address**

**Acceptable forms of Current Address verification include copies of two of the following documents that show your Current Address:**
a) Driver's license
b) Utility bill
c) Bank or credit union statement
d) Cancelled check
e) Signed homeless shelter letter
f) Stamped post office box receipt
g) Government issued ID
h) State ID card
i) Pay stub

**Proof of Social Security Number**

**Acceptable forms of Social Security verification include a copy of one of the following documents that shows your Social Security Number:**
a) Social Security card
b) Letter from the Social Security Administration
c) Military ID
d) Medicaid or Medicare card

**Proof of Date of Birth**

**Acceptable forms of Date of Birth verification include a copy of one of the following documents that shows your Date of Birth:**
a) Birth certificate
b) Driver's license
c) Government issued ID
d) Passport

**Important notes regarding acceptable forms of proof:**
- Utility Bills, Bank or Credit Union Statements, Cancelled Checks and Pay Stubs must not be older than 2 months.
- P.O. Box Receipts and Homeless Shelter Letters must not be older than 12 months.
- We are unable to accept documents that contain a past expiration date as proof.
- Electronic statements printed from a website cannot be accepted as proof.

**Include Payment (if necessary)**

If you would like to receive your TransUnion Consumer Credit Score in addition to the credit report, please provide additional payment.

**TransUnion Credit Score - $9.95**

Check here ☐ to include credit score with credit report.

Check credit card type:   ☐ MasterCard   ☐ AMERICAN EXPRESS Cards   ☐ VISA   ☐ DISCOVER

Card Number: ☐☐☐☐ ☐☐☐☐ ☐☐☐☐ ☐☐☐☐     Expiration Month/Year:_____ / _____

You may also pay by sending a check or money order, for the required amount, payable to TransUnion. Once payment is received, we will promptly send you a copy of your credit report (and score if applicable).

Form-950 (Disclosure Request)

# EXHIBIT D

## RE: Pirzinger v. Trans Union, LLC – 25-cv-1760 – Proposed Stipulated Confidentiality Agreement and Protective Order

From    Jeffrey <████████████████>

To      Makenzie P. Leh<makenzie.leh@bipc.com>

CC      Andrew G. Hope<andrew.hope@bipc.com>

Date    Wednesday, March 4th, 2026 at 10:16 PM

Makenzie,

Thank you for sending the revised draft and for outlining Trans Union's edits.

I am agreeable to removal of the "same nucleus of operative facts" language and appreciate that the revised draft incorporates the clarification regarding the prospective effect of corrected confidentiality designations.

With respect to the remaining provisions, I propose the following narrow revisions to address the remaining issues.

### 1. Retention of materials

I cannot agree to a provision requiring complete return or destruction of all Confidential Discovery Material without any archival retention. As a pro se litigant, I must retain a limited archival copy as part of my litigation file for record-keeping, appeal, and enforcement purposes.

To address TransUnion's concern, I propose the following narrowly tailored language in place of the deleted retention provision:

"Notwithstanding the foregoing, Plaintiff, as a pro se litigant, may retain one archival copy of Confidential Discovery Material as part of Plaintiff's litigation file solely for purposes of record-keeping, any appeal, and enforcement of any judgment or order in this action. Any such archival copy shall remain subject to this Protective Order and shall not be disclosed or used for any other purpose."

This mirrors the archival litigation file typically retained by counsel while remaining narrowly limited and subject to the Order.

### 2. AI clause

I understand Trans Union's concern regarding submission of confidential materials to publicly available generative AI tools. However, the current language appears broader than necessary and imposes technical requirements that may not be within a party's control.

To address that concern while preserving the intended protection, I propose replacing the AI provision with the following language:

"Common Interest Materials covered by this Agreement shall not be submitted to any publicly available generative AI tool or large language model in a manner that would disclose Confidential Discovery Material. Prior to submitting any such materials to a non-public generative AI tool or large language model, the submitting Party shall take reasonable steps, to the extent within the submitting Party's control, to ensure that the tool's settings prevent disclosure of the Confidential Discovery Material to third parties and prevent the use of such material for training or any purpose unrelated to this action."

This preserves the restriction on disclosure of confidential material while ensuring compliance obligations remain within the submitting party's control.

The parties appear to be in agreement on the vast majority of the Order's provisions, and the remaining issues are limited to these narrow points. If Trans Union is agreeable in principle, let's circulate a clean draft reflecting these revisions so the Order may be executed and submitted promptly.

If the parties are unable to reach agreement on these limited points, I am comfortable submitting the competing drafts to the Court so that discovery can proceed without further delay.

Best regards,

Jeffrey Thomas Pirzinger
(914) 497-1104

On Wednesday, March 4th, 2026 at 1:40 PM, Makenzie P. Leh <makenzie.leh@bipc.com> wrote:

> Jeffrey,
>
> Following up on the language of the Confidentiality Order, please find attached for TransUnion's suggested edits shown in track changes. Regarding your second point below regarding retention of documents, we are not agreeable to the proposed language. However, if the case ends up settling, and you wish to retain a copy of the settlement agreement for enforcement purposes, TransUnion is agreeable to that.
>
> Please note that TransUnion cannot produce any confidential policies or procedures until a Confidentiality Order is on file.
>
> Thanks.
>
> Kenzie
>
> **Makenzie P. Leh**

**Associate**

Two Liberty Place

50 S. 16th Street, Suite 3200

Philadelphia, PA19102-2555

215 665 5342 (o)

makenzie.leh@bipc.com

# Buchanan

vCard | Bio | BIPC.com | Twitter | LinkedIn

Makenzie,

Thank you for your email and for outlining Trans Union's comments.

I am amenable to the following, subject to the clarifications below:

1. **Use limitation:**
I am agreeable to limiting use of Confidential Discovery Material, solely for purposes of prosecuting or defending this action (including amended pleadings), any appeal, and any proceeding to enforce or interpret this Order or any judgment in this action, and not for any business, commercial, or competitive purpose.

2. **Return / destruction; pro se retention:**
I am not agreeable to deleting a retention provision applicable to Plaintiff. As a pro se litigant, I must retain a limited archival copy for record-keeping, appeal, and enforcement purposes. I am, however, agreeable to

tightening this language to provide that, Plaintiff may retain one archival copy of Confidential Discovery Material solely for purposes of record-keeping, this action, any appeal, and enforcement of any judgment or order, and that such archival copy shall remain subject to the Protective Order. This mirrors the practical necessity of counsel's archival file while remaining narrowly tailored.

3. **Inadvertent confidentiality designation:**

I am agreeable to adding a provision addressing inadvertent failure to designate material as Confidential, provided that any corrected designation applies prospectively from the date of written notice, does not apply to materials previously filed with the Court, used in motion practice, or disclosed prior to receipt of notice, and does not subject any party to sanctions for disclosures made before notice.

If these points are agreeable in principle, I can circulate a clean revised draft promptly reflecting the above so the parties may execute and submit it without delaying discovery.

Best Regards,

Jeffrey Thomas Pirzinger

(914) 497-1104

On Wednesday, January 28th, 2026 at 6:24 AM, Makenzie P. Leh <makenzie.leh@bipc.com> wrote:

Jeffrey,

Following up on your edits to the Protective Order. A few comments. First, confidential materials may only be used for this litigation (including appeals). You have added language that the material can be used for subsequent litigation arising out of the same nucleus of operative fact or some such thing, which TransUnion will not agree to.

Additionally, TransUnion would like to add a provision requiring that all confidential materials must be returned or destroyed at the conclusion of the litigation. Your reference to working files is inapplicable to a pro se litigant and, and therefore, should be deleted.

Lastly, there should be a claw back provision for the inadvertent failure to mark something confidential within the 30-day period.

Please let me know if you are amendable to these changes.

Thank you.

Kenzie

**Makenzie P. Leh**

**Associate**

Two Liberty Place

50 S. 16th Street, Suite 3200

Philadelphia, PA19102-2555

215 665 5342 (o)

makenzie.leh@bipc.com

# Buchanan

vCard | Bio | BIPC.com | Twitter | LinkedIn

Counsel:

I write to request your review and approval of the enclosed Proposed Stipulated Confidentiality Agreement and Protective Order (v4).

The proposed order is based on Judge Halpern's model protective order and retains its overall structure and framework. The revisions are limited and intended to clarify designation mechanics, discovery use, and post-disposition handling of materials in a manner consistent with Rule 26(c), particularly given the posture of this case. A brief cover letter (draft) to chambers accompanies the proposed order hereto to summarize the clarifications for the Court.

If the proposed order and cover letter to chambers is acceptable, please indicate your approval so that it may be executed by the Parties and submitted to the Court. If you have any specific concerns or proposed edits, I am available to discuss them in an effort to reach a stipulated form promptly.

Thank you for your time and cooperation.

Best Regards,

Jeffrey Thomas Pirzinger

(914) 497-1104

**From:** Jeffrey Thomas Pirzinger <░░░░░░░░░░░░░>
**Sent:** Tuesday, January 6, 2026 5:20 PM
**To:** Makenzie P. Leh <makenzie.leh@bipc.com>
**Cc:** Andrew G. Hope <andrew.hope@bipc.com>
**Subject:** Re: Pirzinger v. Trans Union, LLC - 25-cv-1760 - Proposed Stipulated Confidentiality Agreement and Protective Order

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

**From:** Jeffrey Thomas Pirzinger ░░░░░░░░░░░░░>
**Sent:** Tuesday, February 3, 2026 5:06 PM
**To:** Makenzie P. Leh <makenzie.leh@bipc.com>
**Cc:** Andrew G. Hope <andrew.hope@bipc.com>

**Subject:** RE: Pirzinger v. Trans Union, LLC - 25-cv-1760 - Proposed Stipulated Confidentiality Agreement and Protective Order

---

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.