# Buchanan

**Andrew G. Hope**
(215) 665-5322
andrew.hope@bipc.com

640 Fifth Avenue
9th Floor
New York, NY  10019-6102
T 212 440 4400
F 212 440 4401

March 5, 2026

**VIA ECF**

Hon. Judith C. McCarthy, Chief Magistrate Judge
The Hon. Charles L. Brieant Jr. Federal Building
300 Quarropas Street
White Plains, NY 10601-4150

     **RE:**   *Jeffrey Thomas Pirzinger v. Transunion LLC,*  Case No.: 7:25-cv-01760-PMH

Dear Judge McCarthy:

     My firm represents the Defendant, Trans Union, LLC ("TransUnion") in the above-captioned matter. In accordance with Your Honor's Individual Practice 2(A) and Local Civil Rule 37.2, TransUnion respectfully submits this Pre-Motion Letter requesting a conference concerning an anticipated Motion to Compel the discovery responses of Plaintiff, Jeffrey Thomas Pirzinger ("Plaintiff"). TransUnion also requests this conference to discuss the parties' disputes over the language of the Confidentiality Order. TransUnion certifies that the parties have met and conferred on both issues in compliance with Fed. R. Civ. P. 37(a)(1) but have been unable to reach a resolution.

**Plaintiff's Discovery Responses:**

     On January 6, 2026, TransUnion served its first set of interrogatories and first requests for production of documents. A showing of inaccuracy is an essential element of a claim under the FCRA, and Plaintiff's Complaint fails to specify why the information reported on Plaintiff's credit report was inaccurate. Therefore, Interrogatory No. 6 requested that Plaintiff identify the specific inaccuracies that Plaintiff claims TransUnion is reporting on his credit file and state the basis for the allegations that the reporting is inaccurate.

     Plaintiff served responses and objections to the Interrogatories on January 7, 2026, objecting to TransUnion's requests as overbroad and unduly burdensome. Plaintiff also argued that discovery into "unrelated credit activity would be cumulative, unduly burdensome, and not probative of any pleaded claim or defense" and referred TransUnion to the allegations in the Second Amended Complaint.

March 5, 2026
Page - 2 -

On February 10, 2026, TransUnion served Plaintiff with a Rule 37 Letter outlining the deficiencies in Plaintiff's discovery responses and requesting Plaintiff's availability for a meet and confer.[1] Plaintiff responded to TransUnion's Rule 37 letter and argued that Rule 26(e) does not impose an obligation to "supplement based on a requesting party's evolving preferences or continued review." In an effort to resolve the outstanding discovery issues, TransUnion sent Plaintiff a follow-up letter on February 13, 2026, reiterating the specific deficiencies and stating that the requests were already included in TransUnion's original interrogatory requests, which Plaintiff did not fully answer.

On February 27, 2026, Plaintiff responded to some of the outstanding discovery requests. However, regarding the request for proof of inaccuracies, Plaintiff stated that he disputes the "reported items of information because the balances, amounts past due, delinquency indicators, and status designations did not reflect Plaintiff's records and understanding of the accounts at the time of the dispute." TransUnion sent another letter to Plaintiff on March 3, 2026, reiterating that the requested information is relevant, discoverable, and necessary to understand the allegations in the Second Amended Complaint. Plaintiff responded the same day, stating that he does not possess "creditor-originated accounting records, internal furnisher documentation, or other third-party materials" beyond what has already been produced. A true and correct copy of the parties' email exchange is attached hereto as Exhibit A.

During the parties' Rule 37 correspondence, TransUnion has asked Plaintiff to specifically state, for each of the 35 alleged inaccuracies, why he believes those tradelines are being reported inaccurately and to provide supporting documentation. For example, for the disputed accounts where Plaintiff claims an incorrect balance is being reported, TransUnion requested information regarding (i) what Plaintiff believes to be the correct balance; (ii) whether the amount reflected in the tradelines include charges that Plaintiff did not make or approve; (iii) whether the reported balance fails to reflect payments that Plaintiff made but were not properly credited; and (iv) the specific documents or other information within Plaintiff's possession or knowledge that form the basis of these claims.

In other words, TransUnion seeks to understand what Plaintiff claims is inaccurate about the reporting on his accounts and why. This information is straightforward and plainly discoverable. Indeed, Plaintiff bears the burden of establishing an inaccuracy as a threshold matter to recovery under the FCRA. *See Mader v. Experian*, 56 F.4th 264, 269 (2d Cir. 2023) ("[T]o prevail on a section 1681e claim against a consumer reporting agency, it is necessary for a plaintiff to establish, among other things, that a credit report contained an inaccuracy."); *see also Lichtman v. Chase Bank USA, N.A.*, No. 18-cv-10960, 2020 WL 1989486, at *4 (S.D.N.Y. Apr. 27, 2020) ("A prerequisite for any FCRA claim is that the challenged credit information is incomplete or inaccurate."). Further, a plaintiff must "identify the specific information on [his] credit report that is inaccurate and explain why the identified information is inaccurate." *Phipps v. Experian*, No. 20-CV-3368, 2020 U.S. Dist. LEXIS 105879, 2020 WL 3268488, *3 (S.D.N.Y. June 16, 2020).

---

[1] Plaintiff has continually refused to meet and confer telephonically but instead requested to confer via email.

March 5, 2026
Page - 3 -

As TransUnion has repeatedly made clear to Plaintiff, proof of inaccuracy is crucial to a resolution of this matter. TransUnion is unable to meaningfully engage in negotiation of a potential settlement or otherwise prepare its defense in the absence of such information. However, notwithstanding repeated efforts to meet and confer, Plaintiff has failed to provide any of the referenced "records" in his discovery responses or to explain his "understanding of the accounts." Instead, Plaintiff continues to steadfastly and mistakenly insist that the central issue is whether TransUnion conducted a reasonable reinvestigation of his disputes.

**Confidentiality Order:**

At the Rule 26 Conference, the parties agreed to utilize Judge Halpern's model protective order. Plaintiff sent TransUnion the model order with additional edits including proposed language that Plaintiff may retain an archival copy of the Confidential Discovery Material "solely for purposes of record-keeping, this action, any appeal, and enforcement of any judgment or order, and that such archival copy shall remain subject to the Protective Order." The model protective order already addresses a possible appeal, requiring the return or destruction of confidential materials "[w]ithin sixty (60) days of the final disposition of this action — including all appeals." Since Plaintiff is proceeding *pro se*, TransUnion rejected his request to maintain a "working file" but agreed to permit Plaintiff to retain a copy of any confidential settlement agreement, should the case settle, for enforcement purposes. However, this proposal was unacceptable to Plaintiff.

TransUnion also has reason to believe that Plaintiff is utilizing Artificial Intelligence to draft pleadings and correspondence in this matter and proposed insertion of language in the model protective order that would prohibit the upload of any confidential materials to a generative AI platform. TransUnion's goal in doing so is to prevent the assimilation of its confidential and proprietary information into publicly accessible large language models. Plaintiff rejected the proposed language as "broader than necessary and impos[ing] technical requirements that may not be within a party's control." A copy of the draft Confidentiality Order, with TransUnion's edits shown in track changes, is attached hereto as Exhibit B.

Accordingly, TransUnion requires the Court's intervention and respectfully requests a conference to resolve these discovery disputes.

Respectfully,

Andrew G. Hope

cc: Jeffrey Thomas Pirzinger (via email)

Encl.

# EXHIBIT A

## Makenzie P. Leh

| | |
|---|---|
| **From:** | ████████████████████ |
| **Sent:** | Tuesday, March 3, 2026 7:03 PM |
| **To:** | Makenzie P. Leh |
| **Cc:** | Andrew G. Hope |
| **Subject:** | RE: Pirzinger v. Trans Union, LLC – 25-cv-1760 - Plaintiff's First Requests for Production and First Interrogatories |
| **Attachments:** | 2026-03-03 Plaintiff Reply to Defendant Response to Plaintiff Rule 37 Letter Response.pdf |
| **FilingIndicator:** | -1 |

Andrew,

Please see attached reply correspondence. Thanks.

Respectfully,

Jeffrey Thomas Pirzinger

Pro Se Plaintiff

On Tuesday, March 3rd, 2026 at 3:19 PM, Makenzie P. Leh <makenzie.leh@bipc.com> wrote:

Jeffrey,

Please see attached Letter from TransUnion in response to your February 17, 2026, Correspondence. Thanks.

Kenzie

**Makenzie P. Leh**

**Associate**

Two Liberty Place

50 S. 16th Street, Suite 3200

Philadelphia, PA19102-2555

215 665 5342 (o)

makenzie.leh@bipc.com

# Buchanan

vCard | Bio | BIPC.com | Twitter | LinkedIn

Andrew,

Please see attached correspondence. Thanks.

Respectfully,

Jeffrey Thomas Pirzinger

Pro Se Plaintiff

On Friday, February 13th, 2026 at 5:13 PM, Makenzie P. Leh <makenzie.leh@bipc.com> wrote:

> Jeffrey,

> Please see attached correspondence. Thanks.

Kenzie

**Makenzie P. Leh**

**Associate**

Two Liberty Place

50 S. 16th Street, Suite 3200

Philadelphia, PA19102-2555

215 665 5342 (o)

makenzie.leh@bipc.com

# Buchanan

vCard | Bio | BIPC.com | Twitter | LinkedIn

Andrew,

Attached please find Plaintiff's written response to Defendant's February 10, 2026 Rule 37 letter regarding discovery responses.

Plaintiff is engaging in the meet-and-confer process in good faith pursuant to Rule 37(a)(1) and elects to proceed in writing to preserve an accurate record. Please review the attached letter and advise if Defendant wishes to continue the meet-and-confer process in writing consistent with the framework set forth therein.

Respectfully,

Jeffrey Thomas Pirzinger
Pro Se Plaintiff

On Tuesday, February 10th, 2026 at 9:56 AM, Makenzie P. Leh
<makenzie.leh@bipc.com> wrote:

> Jeffrey,
>
>
> Received. Please see attached for Rule 37 Letter regarding your
> discovery responses. Thanks.
>
>
> Kenzie
>
>
> **Makenzie P. Leh**
>
> **Associate**
>
>
> Two Liberty Place
>
> 50 S. 16th Street, Suite 3200
>
> Philadelphia, PA19102-2555
>
> 215 665 5342 (o)
>
> makenzie.leh@bipc.com
>
>
>
> # Buchanan
>
> vCard | Bio | BIPC.com | Twitter | LinkedIn

Counsel:

Please find enclosed Plaintiff Jeffrey Thomas Pirzinger's First
Requests for Production of Documents and Plaintiff's First
Interrogatories directed to Defendant Trans Union LLC, served

pursuant to the Federal Rules of Civil Procedure and the Court's Civil Case Discovery Plan and Scheduling Order entered February 4, 2026.

Plaintiff looks forward to Defendant's responses in accordance with the Federal Rules. If you believe any request requires clarification or raises an issue appropriate for discussion, please advise.

Nothing herein is intended to waive any rights, objections, or privileges.

Sincerely,

Jeffrey Thomas Pirzinger
Pro Se Plaintiff

---

**From:** Jeffrey Thomas Pirzinger

**Sent:** Tuesday, February 10, 2026 12:10 AM
**To:** Makenzie P. Leh <makenzie.leh@bipc.com>
**Cc:** Andrew G. Hope <andrew.hope@bipc.com>
**Subject:** Pirzinger v. Trans Union, LLC - 25-cv-1760 - Plaintiff's First Requests for Production and First Interrogatories

---

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

---

**From:**

**Sent:** Tuesday, February 10, 2026 6:49 PM
**To:** Andrew G. Hope <andrew.hope@bipc.com>
**Cc:** Makenzie P. Leh <makenzie.leh@bipc.com>
**Subject:** RE: Pirzinger v. Trans Union, LLC - 25-cv-1760 - Plaintiff's First Requests for Production and First Interrogatories

---

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

**From:** ███████████████████████████

**Sent:** Tuesday, February 17, 2026 12:06 PM

**To:** Andrew G. Hope <andrew.hope@bipc.com>

**Cc:** Makenzie P. Leh <makenzie.leh@bipc.com>

**Subject:** RE: Pirzinger v. Trans Union, LLC - 25-cv-1760 - Plaintiff's First Requests for Production and First Interrogatories

CONFIDENTIAL/PRIVILEGED INFORMATION: This e-mail message (including any attachments) is a private communication sent by a law firm and may contain confidential, legally privileged or protected information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited and may be unlawful. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Jeffrey Thomas Pirzinger,<br><br>        Plaintiff(s),<br><br>- against -<br><br>TransUnion, LLC<br><br>        Defendant(s). | **STIPULATED CONFIDENTIALITY AGREEMENT AND <u>PROTECTIVE ORDER</u>**<br><br>25 - Civ - 01760 (PMH) |

PHILIP M. HALPERN, United States District Judge:

WHEREAS, all the parties to this action (collectively the "Parties" and individually a "Party") request that this Court issue a protective order pursuant to Federal Rule of Civil Procedure 26(c) to protect the confidentiality of nonpublic and competitively sensitive information that they may need to disclose in connection with discovery in this action;

WHEREAS, the Parties, through counsel, agree to the following terms; and

WHEREAS, this Court finds good cause exists for issuance of an appropriately tailored confidentiality order governing the pretrial phase of this action,

IT IS HEREBY ORDERED that any person subject to this Order – including without limitation the Parties to this action (including their respective corporate parents, successors, and assigns), their representatives, agents, experts and consultants, all third parties providing discovery in this action, and all other interested persons with actual or constructive notice of this Order — will adhere to the following terms, upon pain of contempt:

1.      With respect to "Discovery Material" (i.e., information of any kind produced or disclosed in the course of discovery in this action) that a person has designated as

"Confidential" pursuant to this Order, no person subject to this Order may disclose such Confidential Discovery Material to anyone else except as this Order expressly permits:

2.    The Party or person producing or disclosing Discovery Material ("Producing Party") may designate as Confidential only the portion of such material that it reasonably and in good faith believes consists of:

(a)    previously non-disclosed financial information (including without limitation profitability reports or estimates, percentage fees, design fees, royalty rates, minimum guarantee payments, sales reports, and sale margins);

(b)    previously non-disclosed material relating to ownership or control of any non-public company;

(c)    previously non-disclosed business plans, product-development information, or marketing plans;

(d)    any information of a personal or intimate nature regarding any individual; or

(e)    any other category of information this Court subsequently affords confidential status.

3.    With respect to any Discovery Material other than deposition transcripts and exhibits, the Producing Party or its counsel may designate only those portions of such material as "Confidential" that it reasonably and in good faith believes qualify for protection under this Order, by: (a) stamping or otherwise clearly marking the designated portion as "Confidential" in a manner that will not interfere with legibility or audibility; and (b) producing for future public use another copy of such Discovery Material with the confidential information redacted.

2

4.      A Producing Party or its counsel may designate only those portions of deposition transcripts or exhibits as Confidential Discovery Material that it reasonably and in good faith believes qualify for protection under this Order, either by:

(a) indicating on the record during the deposition that a question calls for Confidential information, in which case the reporter will bind the transcript of the designated testimony in a separate volume marked accordingly; or

(b) notifying the reporter and all counsel of record, in writing, within thirty (30) days after the deposition, of the specific pages and lines to be designated as Confidential.

During the thirty-day period following a deposition, the entire transcript shall be treated as Confidential only pending final, portion-specific designations.

5.      If at any time before the trial of this action a Producing Party realizes that it should have designated as Confidential some portion(s) of Discovery Material that it previously produced without limitation, the Producing Party may so designate such material by apprising all prior recipients in writing. Thereafter, this Court and all persons subject to this Order will treat such designated portion(s) of the Discovery Material as Confidential; provided, however, that any such retroactive designation shall not apply to Discovery Material that has already been filed with the Court, referenced in pleadings, or relied upon in motion practice prior to the designation.

6.      Nothing contained in this Order will be construed as: (a) a waiver by a Party or person of its right to object to any discovery request; (b) a waiver of any privilege or protection; or (c) a ruling regarding the admissibility at trial of any document, testimony, or other evidence.

7.      Where a Producing Party has designated Discovery Material as

Confidential, other persons subject to this Order may disclose such information only to the following persons:

(a)     the Parties to this action, their insurers, and counsel to their insurers;

(b)     counsel retained specifically for this action, including any paralegal, clerical, or other assistant that such outside counsel employs and assigns to this matter;

(c)     outside vendors or service providers (such as copy-service providers and document-management consultants) that counsel hire and assign to this matter;

(d)     any mediator or arbitrator that the Parties engage in this matter or that this Court appoints, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(e)     as to any document, its author, its addressee, and any other person indicated on the face of the document as having received a copy;

(f)     any witness who counsel for a Party in good faith believes may be called to testify at trial or deposition in this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(g)     any person a Party retains to serve as an expert witness or otherwise provide specialized advice to counsel in connection with this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(h)     stenographers engaged to transcribe depositions the Parties conduct in this action; and

(i)    this Court, including any appellate court, its support personnel, and court

reporters.

8.    Before disclosing any Confidential Discovery Material to any person

referred to in subparagraphs 7(d), 7(f), or 7(g) above, counsel must provide a copy of this Order

to such person, who must sign a Non-Disclosure Agreement in the form annexed as an Exhibit

hereto stating that he or she has read this Order and agrees to be bound by its terms. Said

counsel must retain each signed Non-Disclosure Agreement, hold it in escrow, and produce it to

opposing counsel either before such person is permitted to testify (at deposition or trial) or at the

conclusion of the case, whichever comes first.

9.    In accordance with Rule 5 of this Court's Individual Practices, any

party filing documents under seal must simultaneously file with the Court a letter brief and

supporting declaration justifying – on a particularized basis – the continued sealing of such

documents. The parties should be aware that the Court will unseal documents if it is unable to

make "specific, on the record findings . . . demonstrating that closure is essential to preserve

higher values and is narrowly tailored to serve that interest." *Lugosch v. Pyramid Co. of

Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).

10.    The Court also retains discretion whether to afford confidential treatment

to any Discovery Material designated as Confidential and submitted to the Court in connection

with any motion, application, or proceeding that may result in an order and/or decision by the

Court. All persons are hereby placed on notice that the Court is unlikely to seal or otherwise

afford confidential treatment to any Discovery Material introduced in evidence at trial, even if

such material has previously been sealed or designated as Confidential.

11.     In filing Confidential Discovery Material with this Court, or filing portions of any pleadings, motions, or other papers that disclose such Confidential Discovery Material ("Confidential Court Submission"), the Parties shall publicly file a redacted copy of the Confidential Court Submission via the Electronic Case Filing System. The Parties shall file an unredacted copy of the Confidential Court Submission under seal with the Clerk of this Court, and the Parties shall serve this Court and opposing counsel with unredacted courtesy copies of the Confidential Court Submission.

12.     Any Party who objects to any designation of confidentiality may at any time before trial serve upon counsel for the Producing Party a written notice stating with particularity the grounds of the objection. If the Parties cannot reach agreement promptly, counsel for all affected Parties shall present the dispute to the Court in accordance with paragraph 4(D) of this Court's Individual Practices. The Producing Party bears the burden of demonstrating good cause for the confidentiality designation.

13.     Any Party who requests additional limits on disclosure (such as "attorneys' eyes only" in extraordinary circumstances), may at any time before the trial of this action serve upon counsel for the recipient Parties a written notice stating with particularity the grounds of the request. If the Parties cannot reach agreement promptly, counsel for all affected Parties will address their dispute to this Court in accordance with paragraph 4(D) of this Court's Individual Practices. No "attorneys' eyes only" designation shall apply to materials produced to a pro se litigant absent further order of the Court.

14.     Recipients of Confidential Discovery Material under this Order may use such material solely for purposes of prosecuting or defending this action, including but not limited to amended pleadings, motion practice, evidentiary submissions, trial, and any appeals, ~~and any later-filed action, proceeding, or amendment arising out of the same nucleus~~

of operative facts, and not for any business, commercial, or competitive purpose.

15.     Nothing in this Order will prevent any Party from producing any Confidential Discovery Material in its possession in response to a lawful subpoena or other compulsory process, or if required to produce by law or by any government agency having jurisdiction, provided that such Party gives written notice to the Producing Party as soon as reasonably possible, and, if permitted by the time allowed under the request, at least ten (10) days before any disclosure. Upon receiving such notice, the Producing Party will bear the burden of opposing compliance with the subpoena, compulsory process, or legal notice if it deems such opposition appropriate. Nothing in this Order shall be construed to prohibit the voluntary disclosure of Confidential Discovery Material to governmental or regulatory authorities acting within their lawful jurisdiction.

16.     Each person who has access to Discovery Material designated as Confidential pursuant to this Order must take all due precautions to prevent the unauthorized or inadvertent disclosure of such material.

17.     If, in connection with this litigation, a party inadvertently discloses information subject to a claim of attorney-client privilege or attorney work product protection ("Inadvertently Disclosed Information"), such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection with respect to the Inadvertently Disclosed Information and its subject matter.

18.     If a disclosing party makes a claim of inadvertent disclosure, the receiving party shall, within five business days, return or destroy all copies of the Inadvertently Disclosed Information, and provide a certification of counsel that all such information has been returned or destroyed.

19.     Within five business days of the notification that such Inadvertently

7

Disclosed Information has been returned or destroyed, the disclosing party shall produce a privilege log with respect to the Inadvertently Disclosed Information.

19.20.  If a disclosing party inadvertently discloses information that should have been designated Confidential, the party shall have 30 days to amend the designation, provided that any corrected designation applies prospectively from the date of written notice, does not apply to materials previously filed with the Court, used in motion practice or disclosed prior to receipt of notice, and does not subject any party to sanctions for disclosures made before notice.

20.21.  The receiving party may move the Court for an Order compelling production of the Inadvertently Disclosed Information. The motion shall be filed under seal, and shall not assert as a ground for entering such an Order the fact or circumstances of the inadvertent production.

21.22.  The disclosing party retains the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Nothing in this Order shall limit the right of any party to request an *in camera* review of the Inadvertently Disclosed Information.

22.23.  Within sixty (60) days of the final disposition of this action — including all appeals — all recipients of Confidential Discovery Material must either return such material, including all copies thereof, to the Producing Party, or, upon permission of the Producing Party, destroy such material, including all copies thereof. In either event, by the sixty-day deadline, the recipient must certify its return or destruction by submitting a written certification to the Producing Party affirming that it has not retained any copies, abstracts, compilations, summaries, or other forms of reproducing or capturing any Confidential Discovery Material.

Notwithstanding the foregoing, Plaintiff, including pro se litigants, may

8

~~retain copies of discovery materials reasonably necessary for record-keeping, enforcement,~~
~~appeals, related proceedings, or compliance with legal obligations.~~

~~Notwithstanding this provision, the attorneys that the Parties have~~
~~specifically retained for this action may retain an archival copy of all pleadings, motion~~
~~papers, transcripts, expert reports, legal memoranda, correspondence, or attorney work~~
~~product, even if such materials contain Confidential Discovery Material. Any such archival~~
~~copies that contain or constitute Confidential Discovery Material remain subject to this Order.~~

23.24.  This Order shall be construed narrowly and applied only to the extent necessary to protect legitimately confidential information, and shall not be interpreted to impair any Party's ability to prosecute or defend this action, amend pleadings, present evidence, or seek appropriate relief.

24.25.  This Order will survive the termination of the litigation and will continue to be binding upon all persons to whom Confidential Discovery Material is produced or disclosed.

25.26.  This Court will retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

26.27.  Common Interest Materials covered by this Agreement shall not be submitted to any open Generative AI tool or large language model that is available to the public (for example, ChatGPT, Claude, Gemini, *etc.*).  Prior to submitting any Common Interest Materials to a closed Generative AI tool or large language model (for example, a Generative AI tool it owns or licenses or is otherwise not available to the public), the submitting Party must ensure the Generative AI tool's settings: a) prevent disclosure of Common Interest Materials to third parties, including without limitation other users or developers of the Generative AI tool; b) prevent the Generative AI tool from utilizing Common Interest Materials in any way unrelated to this Action, including, but not limited to,

9

training its Generative AI model or other purposes; c) prevent the Generative AI tool from commingling the Common Interest Materials with the data of any other customers or making derivative use of the Common Interest Materials; d) provide that the Generative AI tool's vendor may only access the Common Interest Materials for its limited role to process the data; and e) allow for the deletion or destruction of any Common Interest Materials supplied to it or contained in responses generated by it.

SO STIPULATED AND AGREED.

_____        _____

Dated:                                                              Dated:

Dated: New York, New York

SO ORDERED.

_____
Philip M. Halpern
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Plaintiff(s), | **NON-DISCLOSURE AGREEMENT** |
| - against - | |
| | ____Civ._____(PMH) |
| Defendant(s). | |

I,_____, acknowledge that I have read and

understand the Protective Order in this action governing the non-disclosure of those portions of

Discovery Material that have been designated as Confidential. I agree that I will not disclose

such Confidential Discovery Material to anyone other than for purposes of this litigation, and

that at the conclusion of the litigation, I will return all discovery information to the Party or

attorney from whom I received it, subject to the retention provisions of Paragraph 22 of the

Protective Order. By acknowledging these obligations under the Protective Order, I understand

that I am submitting myself to the jurisdiction of the United States District Court for the

Southern District of New York for the purpose of any issue or dispute arising hereunder and that

my willful violation of any term of the Protective Order could subject me to punishment for

contempt of Court.

_____

Dated: