**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)**

| | |
|---|---|
| JEFFREY THOMAS PIRZINGER<br><br>Plaintiff,<br><br>vs.<br><br>TRANS UNION, LLC,<br><br>Defendant. | Case No. 7:25-cv-01760-PMH |

**DEFENDANT TRANS UNION, LLC'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, Trans Union LLC ("Trans Union"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 56, Local Rule 56.1, and Rule 4(E)(viii) of the Court's Individual Practices, files its Statement of Material Facts in Support of its Motion for Summary Judgment, and states as follows:

## FACTS APPLICABLE TO ALL CLAIMS

### A. Procedural History

1. On March 3, 2025, Plaintiff filed a Complaint against Trans Union for alleged violations of 15 U.S.C. § 1681i(a)(1)(A), 15 U.S.C. § 1681o(a)(6)(A) and 15 U.S.C. § 1681e(b). *See generally* ECF No. 1.

2. On April 23, 2025, Plaintiff filed a First Amended Complaint against Trans Union, which alleged the same FCRA violations as the original Complaint but included additional information regarding certain alleged inaccuracies. *See generally* ECF Nos. 9, 10.

3. On June 16, 2025, Trans Union filed a Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim. *See generally* ECF No. 17.

4. On November 17, 2025, the Court granted Trans Union's Motion to Dismiss, stating that "Defendant argues that Plaintiff fails to properly plead an inaccuracy in his credit report, an essential predicate for any FCRA claim. The Court agrees." *See generally* ECF No. 33.

5. The Court permitted Plaintiff to further amend his Complaint. *See id.*

6. On December 9, 2025, Plaintiff filed a Second Amended Complaint alleging that Trans Union violated 15 U.S.C. § 1681i(a)(1)(A) for failing to conduct a reinvestigation and 15 U.S.C. § 1681i(a)(6)(A) for failing to provide reinvestigation results. In this Second Amended Complaint, Plaintiff listed each disputed item including what "Trans Union Reported," "Plaintiff's Correct Information" and the "Basis of Dispute." *See generally* ECF No. 34.

7. In his Second Amended Complaint, Plaintiff alleges that on December 26, 2024, Plaintiff executed a "Revocation of Consent" to Trans Union, which stated that Plaintiff did not authorize Trans Union to send any disclosures, notices or communications electronically to Plaintiff and that all future communications should be sent to Plaintiff's address. *See id.* at ¶ 9.

8. The Second Amended Complaint further alleges that, after receiving a copy of his consumer disclosure, Plaintiff sent a written communication to Trans Union on January 2, 2025, disputing thirty-five items on information listed on the disclosure. *See id*. at ¶¶ 11-12.

9. Plaintiff's Second Amended Complaint states that on January 8, 2025, Trans Union sent Plaintiff a letter with the subject line "Re: Dispute Status" stating that Plaintiff submissions were "illegible and interminable." Plaintiff states that the letter did not mention anything regarding the thirty-five disputed items. *See id*. at ¶ 16.

10. Plaintiff further alleges that, after sending the communication of the disputed items, Plaintiff did not receive any written reinvestigation results at his mailing address nor did he receive

electronic communications after December 30, 2024, "and did not authorize electronic communications after that date." *See id*. at ¶¶ 20-21.

11. Plaintiff seeks damages, such as actual, statutory and punitive damages for Trans Union's alleged failure to properly investigate his dispute. *See id*. at ¶¶ 34-40.

**B. Plaintiff's Alleged Inaccuracies in His Dispute Letters**

12. On November 8, 2024, Plaintiff mailed a letter to Trans Union, which was received on November 14, 2024 (the "November 2024 Letter"), a true and correct copy of which is attached hereto as **Exhibit 1**.

13. The November 2024 Letter disputed the ELAN FIN SVCS/FIDELITY account reporting on Plaintiff's Trans Union credit report. *See id.*

14. The November 2024 Letter states that "Jeffrey Pirzinger is an ens legis entity, a Consumer and a Person." *Id*. Plaintiff clarified that the person known as Jeffrey Pirzinger is a "fictitious entity, which is also defined as a consumer under Congress." Excerpts of Plaintiff's Deposition Transcript are attached hereto as **Exhibit 2** at 18:5-10.

15. When asked about Plaintiff as an "entity" during his deposition, Plaintiff testified that God brought him into the world on December 5, 1979. However, "The State of New York brought Jeffrey Pirzinger, [] as the consumer, into existence on December 12, 1979, which is effectuated by the birth certificate, which is the registration of the name into their computer system." *Id.* at 22:12-20.

16. The November 2024 Letter further states that "Consumer Jeffrey Pirzinger does not own these accounts now or in the past; therefore, the accounts do not belong to Consumer Jeffrey Pirzinger." *See* Ex. 1.

17. The November 2024 Letter further states that "Consumer Jeffrey Pirzinger is not an agent of ELAN FIN SCVS-FIDELITY (417903000929****) ("ELAN"), and thus, Consumer Jeffrey Pirzinger was not authorized to open these accounts." *Id.*

18. In Plaintiff's deposition, he clarified the basis for this dispute, which is that ELAN was stealing the identity of Jeffrey, the consumer, and distributing the information to Trans Union, "which is an inaccuracy." *See* Ex. 2 at 26:1-6. In other words, ELAN is an identity thief. *See id.* at 108:1-10 ("[Elan] is reporting that Jeffrey Pirzinger opened an account; that's why it's -- that's why it is appearing in the Trans Union system, because that's what Elan is communicating; when in theory, it's not Jeffrey Pirzinger's account; it's Elan's account. They're the owner.").

19. Plaintiff alleges that the "consumer, the protected party, Jeffrey Pirzinger, the entity that was created, does not own" the accounts at issue. *Id.* at 18:18-21.

20. Plaintiff further testified that "these accounts allegedly reside in Elan Financial Corporation entity, and only they have control and power to make changes into their records." *Id.* at 20:23-25 – 21:1-2. Therefore, according to Plaintiff, because the "name 'Jeffrey Pirzinger' is not an agent for Elan Financial Fidelity. They have no power, no control, no authority, no nothing." *Id.* at 21:3-5. Plaintiff further testified that "its an impossibility for Jeffrey Pirzinger to open the account, if they don't have access or control to their systems, books, ledgers, computers." *Id.* at 21:12-17; *see also* 25:25-26:6 ("If anyone opened the account, it was Elan Financial. Therefore, the theory was that Elan Financial was stealing the identity of Jeffrey Thomas Pirzinger, and distributing the information to Trans Union, which is an inaccuracy, because Jeffrey Thomas Pirzinger, or Jeffrey Pirzinger here, could not have opened the account on Elan Financial's books.").

21. The November 2024 Letter also attached a copy of the Federal Trade Commission Identify Theft Report (the "FTC Report") regarding the ELAN account. *See* Ex. 1. The FTC Report states that the total fraudulent amount was $21,216, and that the fraud began in March of 2012 but was not discovered until October of 2024. *See id.*

22. On November 16, 2024, in response to the November 2024 Letter disputing the ELAN account, Trans Union in accordance with its policies and procedures, reviewed Plaintiff's dispute and requested additional information from Plaintiff to process the dispute. A copy of Trans Union's response was mailed to Plaintiff, a true and correct copy of which is attached hereto as **Exhibit 3**.

23. When asked whether Plaintiff has proof that someone opened the ELAN account without his authorization, he responded, "I do not have proof." *Id.* at 81:6-9.

24. On December 26, 2024, Plaintiff mailed a "Revocation of Consent" Letter to Trans Union, which was received on January 7, 2025 (the "December 2024 Letter"), a true and correct copy of which is attached hereto as **Exhibit 4.**

25. The December 2024 Letter stated "I, hereby revoke all previously granted consent for any and all communication to or with me, the consumer, via electronic means." *Id.*

26. The December 2024 Letter further states that "any future communication regarding disputes, consumer reports, other disclosures or notices related to my consumer file must be sent in paper format only to my designated mailing address." *Id.*

27. On January 2, 2025, Plaintiff mailed written correspondence to Trans Union, which was received on January 9, 2025 (the "January 2025 Letter"). A true and correct copy of the January 2, 2025, Dispute is attached hereto as **Exhibit 5.**

28. In his January 2025 Letter, Plaintiff alleges that 35 items appearing on his Trans Union credit report are inaccurate, without including any explanation as to why these items are inaccurate or how they should be reporting. *See id.* Specifically, Plaintiff disputed the ELAN account (417903000929****), the TBOM-FORTIVA account (765650209727****) and the TD Bank account (***1360). *See id.*

29. In the January 2025 Letter, Plaintiff did not state that the ELAN account was opened as a result of identity theft because he "wasn't interested in fighting a losing battle" so he "took a different route January 2nd." *See* Ex. 2 at 113:5-18.

30. On January 8, 2025, in response to the December 26, 2024, Revocation of Consent Letter, Trans Union, in accordance with its policies and procedures, reviewed Plaintiff's Letter, determined there was not enough identifying information to process the request, and sent Plaintiff a "Request Unclear Letter," a true and correct copy of which is attached hereto as **Exhibit 6.**

31. Trans Union's response to Plaintiff's letter states that "After reviewing your correspondence, we are unable to process your request because we were unable to determine the nature of your request or your request was illegible." *Id.*

32. This Letter was in direct response to Plaintiff's December 26, 2024, Correspondence, not in response to Plaintiff's January 2, 2026, dispute. *See* Exs. 5, 6.

33. Plaintiff confirmed receipt of the January 8, 2025, Request Unclear Letter. *See* ECF No. 34 at ¶¶ 16-18 ("Plaintiff contacted Trans Union by telephone after receiving the January 8th letter.").

34. On January 9, 2025, after receiving Plaintiff's January 2025 Letter, Trans Union, in accordance with its policies and procedures, initiated a reinvestigation of the disputed reporting

of the ELAN, TBOM-FORTIVA and TD Bank accounts. A true and correct copy of the ACDV responses are attached hereto as **Exhibit 7.**

35. ELAN, TBOM-FORTIVA, and TD Bank responded to Trans Union's ACDV request. ELAN updated the "Rating" and the "Historical Trended Data." TBOM-FORTIVA updated the "Date Updated," "Maximum Delinquency," "Rating" and "Historical Trended Data." TD Bank updated the "Date Updated," "High Balance," "Remarks," "Maximum Delinquency," "Rating," and "Historical Trended Data." *See id***.**

36. On or about January 23, 2025, Trans Union sent the results of its reinvestigation via mail to Plaintiff within the 30-day period prescribed under FCRA § 1681i(a)(1)(A). A true and correct copy of the January 23, 2025, Reinvestigation Results is attached hereto as **Exhibit 8.**

37. Because Trans Union was unable to properly process Plaintiff's 'Revocation of Consent' correspondence, and because Plaintiff did not follow up with a second request to revoke electronic consent—despite confirming receipt of the initial response—Trans Union also sent Plaintiff his dispute results via electronic mail. *See* CRS Documents, Bates Labeled Pirzinger_Trans Union_Discovery_001013.

38. Plaintiff did not send Trans Union any additional disputes refuting the accuracy of the reported tradelines of the ELAN, TBOM-FORTIVA, and TD Bank accounts nor did Plaintiff attempt to revoke electronic consent again. *See generally* Second Amended Compl.

## TRANS UNION'S DEFENSES

### A. Discovery Has Not Revealed Any Inaccuracies in Trans Union's Reporting

39. On January 7, 2026, Trans Union served Plaintiff with discovery requests, including Interrogatories and Requests for Production of Documents, a true and correct copy of which are attached hereto as **Exhibit 9**.

40. Specifically, Interrogatory No. 6 requested that Plaintiff "identify each and every inaccuracy you contend exists or ever existed in any consumer report or disclosure prepared by Trans Union, including the 35 alleged inaccuracies identified in your Second Amended Complaint, or any other consumer reporting agency, which forms the basis of this suit or any other claims you believe you have against Trans Union or any other person or entity." *Id.* at Interrogatory No. 6.

41. Additionally, Request for Production No. 22 requested "All documents which prove the alleged inaccuracies identified in the Complaint." *Id.* at Request for Production No. 22.

42. In a letter dated March 3, 2026, Plaintiff stated that he has produced all documents in his possession relevant to the disputed items, including his January 2, 2025, written dispute and consumer disclosure. A true and correct copy of the March 3, 2026, Letter is attached as **Exhibit 10**.

43. Plaintiff further wrote that he "does not possess creditor-originated accounting records, internal furnisher documentation, or other third-party materials beyond what has already been produced." *Id*.

44. On March 24, 2026, Plaintiff sent Trans Union a letter to indicate that he was supplementing his document request. The letter attached an affidavit, which included correspondence from ELAN stating that "Elan Financial Services had elected to close the account ending in 0853 effective February 13, 2024." A true and correct copy of the ELAN Letter is attached hereto as **Exhibit 11.**

45. On March 31, 2026, the Court held a Discovery Conference, during which Plaintiff represented "that there are no further documents in his possession, custody or control concerning the alleged inaccuracies in Plaintiff's credit report as alleged in the Second Amended Complaint

(Doc. 34) other than the affidavit which defenses counsel acknowledged receipt of." *See* ECF No. 57.

46. Additionally, in Plaintiff's deposition, he stated that "It's not up to me to prove to Trans Union what was or was not accurate. All I had to do was raise a dispute, and then they had the obligation, according to Congress's creating of the Fair Credit Reporting Act." Ex. 2 at 34:24-25 - 35:1-3. Plaintiff further testified that this "isn't about accuracy or inaccuracy; its about, did they perform a reasonable reinvestigation." *Id.* at 114:11-13.

47. Plaintiff also testified that out of the 35 alleged inaccuracies, "I think it boiled down to three that I was able to provide clear documentation proving a potential inaccuracy." *Id.* at 72:19-22.

48. Plaintiff consistently confirmed in his deposition that he has no basis for 32 out of the 35 alleged inaccuracies. Specifically, Plaintiff confirmed that he is not alleging that the disputed items are actually inaccurate just merely alleging that he disputed them as inaccurate. *See id.* at 101:2-11. He further stated, "This isn't about accuracy or inaccuracy; it's about, did the perform a reasonable reinvestigation." *Id.* at 114:11-13. Plaintiff stated, "Because I had no basis, that's irrelevant to whether they were supposed to do a reasonable reinvestigation or not. The FCRA doesn't require a basis." *Id*. at 146:22-25.

49. Plaintiff's understanding of the FCRA largely comes from Facebook and YouTube. *See id*. at 55:8-15.

50. Regarding the first disputed item (pay status: charged off), Plaintiff claims that the ELAN account is "not charged off." *See* ECF No. 34 at pgs. 6-7. When asked whether Plaintiff has any documentation or evidence to show that ELAN did not, in fact, charge-off this account, Plaintiff responded "No, I don't have access to their records. So I don't know what they have and

what they don't have." Ex. 2 at 75:2-7. Plaintiff further stated that the "only documentation I provided to Trans Union was this dispute communication here; nothing more, nothing less. Everything else, they have from the furnisher, which was their obligation to clarify." *Id.* at 75:10-14.

51. Regarding the second disputed item (original charge off: $18,799), Plaintiff again claims that the ELAN account is "not charged off." *See* ECF No. 34 at p. 6. When asked the basis for his claim that the account was not charged off, Plaintiff stated "I don't have a basis for that claim." Ex. 2 at 79:19-22. He further stated that he does not have any documentation or evidence to show that Elan did not charge off the account. *See id*. at 75:2-7.

52. Regarding the third disputed item (commentary: maximum delinquency of 120 days in 07/2024 and in 08/2024), Plaintiff claims that the information is inaccurate as he was not delinquent. *See* ECF No. 34 at p. 7. Plaintiff claims that because you cannot be "120 days late in two months," the reporting is pro se accurate, despite not providing any proof of payments made during this time period or any other document to show that the reporting is inaccurate. *See* Ex. 2 at 80:3-25 and 81:1-5.

53. Regarding the fourth disputed item (high balance: $21,551 from 10/2024 to 11/2024), Plaintiff claims that the amount is inaccurate. *See* ECF No. 34 at p. 7. When asked the basis for his claim that the amount is inaccurate, Plaintiff stated "I didn't have a basis for the claim." Ex. 2 at 84:9-23.

54. Regarding the fifth disputed item (status: $21,551 past due), Plaintiff claims that the amount past due is inaccurate. *See* ECF No. 34 at p. 7. When asked the basis for his claim that the amount past due is inaccurate, Plaintiff stated "I don't have the basis right in front of me right now." Ex. 2 at 86:20-24.

55. When asked what the basis for the disputed items six through eight is, Plaintiff responded “I don’t recall.” *Id.* at 88:1-5, 88:6-13, 88:21-25-89:1.

56. When asked what the basis for the disputed nine through twelve is (Ratings “5/2024 - 60,” “6/2024 – 90,” “7/2024- 120” and “8/2024 - 120”), Plaintiff responded, “I don’t recall.” *Id.* at 89:2-9. Additionally, when asked what other document Plaintiff would look at to support his allegations that the payments were not late, Plaintiff responded “I don’t have – I definitely don’t have any other basis, if it’s not on the credit report, to show why it is not late.” *Id.* at 89:11-16.

57. Regarding disputed items thirteen through fourteen, when asked the basis for his claim that the account was inaccurate because it was not charged off, Plaintiff responded “I don’t have a basis for that.” *Id.* at 89:22-25 – 90:1.

58. Regarding disputed items fifteen through sixteen, Plaintiff agreed that there is no basis for the claimed inaccuracies regarding the amount and further stated “the fact that the account was -- had no unpaid balance, and was not charged off.” *Id*. at 90:22-25 – 91:1.

59. Regarding the seventeenth disputed item (balance: $1,864), Plaintiff claims that the TBOM/FORTIVA account amount is inaccurate. *See* ECF No. 34 at p. 9. When asked the basis for the claim that the amount is inaccurate, Plaintiff responded, “I don’t recall the basis.” Ex. 2 at 91:7-10. Additionally, when asked whether Plaintiff had any documentation saying the balance was lower than $1,864, Plaintiff responded, “Only if it exists on the credit report, nothing else.” *Id.* at 91:7-15.

60. Regarding the eighteenth disputed item (pay status: account 90 days past due), Plaintiff claims that the TBOM/FORTIVA account is inaccurate because it is not past due. *See* ECF No. 34 at p. 9. When asked the basis for his claim that the amount is inaccurate, Plaintiff responded, “I don’t recall – I don’t recall that I have a basis for that.” Ex. 2 at 94:19-25 – 95:1.

61. Regarding the nineteenth disputed item (terms: $110 per month), Plaintiff claims that the payment term amount for the TBOM/FORTIVA account is inaccurate. *See* ECF No. 34 at p. 10. When asked what the accurate amount for the terms is, Plaintiff responded, "I don't recall what that would be" and when asked the basis for his claim that the term amount is inaccurate, Plaintiff responded, "I don't – I don't know if I have a basis for that one." Ex. 2 at 95:2-13.

62. Regarding the twentieth disputed item (commentary: maximum delinquency of 90 days in 12/2024 for $112), Plaintiff claims that the TBOM/FORTIVA account is reporting inaccurately because there is no delinquency. *See* ECF No. 34 at p. 10. When asked what the basis for this allegation is, Plaintiff responded, "I'd have to look at the credit report again, but I have a feeling that there was an inconsistency with the date and amounts, and that they didn't line up." Ex. 2 at 95:14-24.

63. Regarding the twenty-first disputed item (past due: $112), Plaintiff claims the TBOM/FORTIVA account had a past due balance of $0. *See* ECF No. 34 at p. 10. When asked the basis for his claim that the past due amount was zero dollars, Plaintiff responded "I don't know that I have a basis. I'd have to look at the credit report." Ex. 2 at 96:3-7.

64. Regarding the twenty-second disputed item (rating 11/2024 – 30), Plaintiff claims that the payment was not late in November for the TBOM/FORTIVA account. *See* ECF No. 34 at p. 10. When asked the basis for his claim that the payment was not due, Plaintiff responded "I don't recall the basis. I would have to review the prior documentation sent to you." Plaintiff confirmed that it was not an account statement, but rather a letter of clarification. *See* Ex. 2 at 96:8-25 – 97:1.

65. Regarding the twenty-third disputed item (pay status: account 90 days past due), Plaintiff alleges that the TBOM/FORTIVA account was not past due. *See* ECF No. 34 at p. 10.

When asked the basis for this, Plaintiff responded "I don't recall if I have a basis." Ex. 2 at 101:14-21.

66. Regarding the twenty-fourth disputed item (terms: $416 per month), Plaintiff claims that the payment term amount for the TBOM/FORTIVA account is inaccurate. *See* ECF No. 34 at p. 10. When asked the basis for this, Plaintiff responded "I don't know if I have a basis." Ex. 2 at 102:1-3.

67. Regarding the twenty-fifth disputed item (maximum delinquency of 90 days in 12/2024 for $1,221), Plaintiff claims that the reporting is inaccurate because there was no delinquency for the TD BANK USA/TARGET account. *See* ECF No. 34 at p. 10. When asked the basis for this, Plaintiff responded "I don't know if I have a basis." Ex. 2 at 102:3-12.

68. Regarding the twenty-sixth disputed item (remarks: closed by credit grantor), Plaintiff claims that the TD BANK USA/TARGET account commentary is inaccurate. *See* ECF No. 34 at p. 11. When asked the basis for this, Plaintiff responded "I didn't close the account." Ex. 2 at 102:25 – 103:1.

69. When asked the basis for disputed items twenty-seven through thirty, Plaintiff responded either "I don't know if I have a basis for that" or "I don't have a basis." *Id.* at 103:2-25 - 104:1-5.

70. Finally, Plaintiff stated "I don't' know if I have a basis for Items 31 through 35. But the basis does exist for whatever I previously sent you documentation on and mentioned in the hearing with the Judge, the conference call." *Id.* at 104:11-15.

71. Additionally, when asked whether Plaintiff "made allegations in a signed complaint that these accounts were inaccurate, without any basis," Plaintiff responded, "for many of them." *Id.* at 97:6-10.

72. Plaintiff testified that he did not review any documents or information, such as credit card statements, bank records, etc., in preparing to draft the Complaint. *See id.* at 44:6-11. He stated that he only reviewed the credit report from Trans Union. *See id.*

73. During Plaintiff's deposition, he was asked whether he sought to amend his complaint to withdraw the allegations that he made without any sort of basis. Plaintiff responded "No, I did not do that, because I believe by that time, it would have been the fourth amended -- or third -- fourth rendition." *Id.* at 97:16-23. Plaintiff's belief is that under the Second Circuit, he only needs to prove at least one of the alleged inaccuracies that he is claiming in the Complaint. *Id.* at 99:8-12.

74. On April 2, 2026, Plaintiff filed a Letter with the Court regarding "Clarification of Disputed Tradeline Information Following March 31, 2026, Conference." *See* ECF No. 58. In this Letter, Plaintiff clarified his proof of inaccuracy for the three out of the 35 disputed items. *See id.*

75. The April 2, 2026, Letter stated that Plaintiff "does not present new claims or documents, but instead clarifies issues preciously identify in Plaintiff's January 2, 2025, dispute and operative pleading." *Id.*

76. Regarding the ELAN tradeline, Plaintiff states that the "12/20/2024 (pre-dispute) and 1//23/2025 (post-reinvestigation) reports reflect an 'Original Charge-Off' amount of $18,779 while also stating that the 'unpaid balance is charged off,' with a reported unpaid balance of $21,551 for October and November 2024." *Id.*

77. Regarding the same ELAN tradeline, it reflects the remark "'Account Closed by Consumer' in connection with a charge-off status." *Id.*

78. Lastly, regarding the TBOM/FORTIVA tradeline, "the reports reflect a maximum delinquency of 90 days (and, following reinvestigation, 120 days) in December 2024, while the

payment history grid reflects only a 30-day delinquency as of November 2024 and contains no December 2024 entry." *Id.*

79. According to Plaintiff's testimony, the information in the above letter provides the basis for three of his disputed claims. He has no basis for the other 32 disputed claims. *See* Ex. 2 at 72:19-22.

80. Besides the ELAN letter, Plaintiff has not produced any other documents to support his allegations. *See* Exs. 10, 11.

**B. Plaintiff's Alleged Damages Are Insufficient and Not Tied to Trans Union's Reporting**

81. Plaintiff claims that, as a consequence of Trans Union's alleged statutory violations and resulting credit denials, he has experienced stress, anxiety, and emotional distress, but has not sought medical or mental health treatment for these injuries. A true and correct copy of Plaintiff's Answers to Interrogatories is attached hereto as **Exhibit 12.**

82. Plaintiff also claims that has "loss of credit opportunity, rental automobile costs incurred as a result of credit denial, out-of-pocket expenses." *Id.*

83. Plaintiff has not produced any proof of rental automobile costs or out-of-pocket expenses. *See* Exs. 10, 11.

84. Plaintiff provided one credit denial. On February 22, 2025, Plaintiff attempted to purchase a 2025 GLS450W4 Cirrus Silver Metallic Mercedes Benz at a purchase price of $95,865. *See* ECF No. 35 at p. 54.

85. Plaintiff testified that he went into Mercedes Benz looking for "a hundred percent financing." Ex. 2 at 130:11-12.

86. Plaintiff was denied credit from Mercedes Benz of New Rochele based on Trans Union's reporting. The denial letter states, "If you would like a statement of specific reasons why your application was denied, please contact our Finance Director." *See* ECF No. 35 at 54-55.

87. On March 9, 2025, Plaintiff received a "Notice of Action Taken and Statement of Reasons" from Merecedes-Benz Financial Services. The reasons for the denial include: (1) FICO below minimum required, (2) Proportion of balances to credit limits on bank/national revolving or other revolving accounts is too high, (3) too few accounts currently paid as agreed and (4) time since delinquency is too recent or unknown. *See id.* at pgs. 56-57. Plaintiff's credit score at the time was 563. *See id.*

88. At the time of the deposition, Plaintiff was not aware what his credit score was. *See* Ex. 2 at 114:6-7.

89. Plaintiff has not provided any testimony or evidence as to what his credit score was prior to the disputes he submitted to Trans Union beginning in November 2024. *See* Exs. 10, 11 and Ex. 2 at 114:6-10.

90. When asked how many accounts on his credit report were paid as agreed, Plaintiff responded "I don't know." *See* Ex. 2 at 151:7-9.

91. When asked what the time of his most recent delinquency was, Plaintiff responded, "I don't know." *Id.* at 151:13-15.

92. When asked whether he was delinquent on any of his accounts, Plaintiff responded "I don't know." *Id.* at 17-19.

93. On March 28, 2025, Plaintiff received a letter from Mercedes-Benz with the subject line "Request for Information Following Adverse Action Notice Dates 02/22/2025." The results of the application were as follows:

- ***Chase*** – Declined
- ***Wells Fargo*** – Declined
- ***Mercedes-Benz Financial Services*** – Declined
- ***Capital One Auto Finance*** – Counter Offer. Down payment of $67,000 and payment not to exceed $800 per month.
- ***Santander Auto Finance*** – Approved. 13.95% finance rate and a $49,000 down payment.

*See* ECF No. 35 at p. 58.

94. On March 4, 2025, Wells Fargo sent Plaintiff a Letter regarding the application submitted for the "Mercedes Benz of New Rochel on 02/22/2025." The Letter states that Wells Fargo was unable to "offer you credit on the terms you requested for the following reason(s): LexiNexis Risk Solutions consumer report frozen." *See id*. at p. 59. Nowhere in the letter does Wells Fargo indicate that it denied Plaintiff a loan amount due to Trans Union's reporting of the ELAN, TBOM/FORTIVA or TB Bank accounts. *See id.*

95. On March 5, 2025, Chase sent Plaintiff a letter listing the "reasons for Denial of Credit," which included: (1) Too many recent requests for new credit with others, (2) length of time since last derogatory account(s), (3) insufficient income relative to loan amount requested, and (4) value of vehicle is insufficient relative to requested amount." *See id*. at p. 60. Nowhere in the letter does Chase indicate that it denied Plaintiff a loan amount due to Trans Union's reporting of the ELAN, TBOM/FORTIVA or TB Bank accounts. *See id.*

96. When asked how Trans Union reporting the ELAN account as "closed by consumer" related to the denial from Mercedes, Plaintiff stated, "I don't know how – how that comment, the fact that it was closed by whom, affects the credit score. You'd have to talk to Trans

Union or whoever came up with the credit score that Mercedes Benz relied on." Ex. 2 at 157:20-24.

97. Plaintiff agreed that whether himself or ELAN closed the account has nothing to do with the proportion of balances to credit limits, too few accounts currently agreed as paid, and time since last delinquency, which were all reasons for the Mercedes denial. *See id.* at 160:17-25 – 161:1-3.

98. Plaintiff testified that there is income that he received in 2024 that was not included in his IRS filing. *See id.* at 133:1-7. Additionally, Plaintiff testified that he makes roughly $200,000 a year but that he cannot provide any specific source of income for 2024. *See id.* at 132:5-7; 137: 19-20

99. Plaintiff believes that certain payments to the IRS are voluntary. *See id*. at 152:20-23.

100. Plaintiff did not monitor his credit score regularly. *Id.* at 115:18-20.

101. Plaintiff began seeing a therapist in February/March of 2026, nearly a year after filing this lawsuit, but did not include any evidence relating to his condition or treatment in his discovery responses. *See id.* at 116:20-25 - 117:1-19.

102. Plaintiff testified that he sees his therapist every two to three weeks. When asked whether he talks to his therapist about Trans Union specifically, Trans Union responded, "Probably not specifically about Trans Union, but the situation in general." *Id.* at 119:17-25. Plaintiff is not taking any medication for any of the emotional distress he is claiming. *See id.* at 118:11-13.

**C. Trans Union's Complied With its Policies and Procedure for Enduring Furnisher Reliability**

103. Trans Union conducted a reasonable reinvestigation into Plaintiff's January 2, 2025, dispute and sent the reinvestigation results within the time mandated by the FCRA. *See* Trans Union's Document Production, Bates Labeled Pirzinger_Trans Union_Discovery_001533 – 001548.

104. Trans Union reasonably relied on this information provided by ELAN, TBOM-FORTIVA, and TD Bank USA as the furnishers. *See* Exhibit 7.

105. Trans Union maintains policies and procedures to process disputes and other correspondence from consumers related to their Trans Union consumer credit files. *See* Trans Union's Document Production, Bates Labeled Pirzinger_Trans Union_Discovery_001598 – 001613.

106. Trans Union reviewed Plaintiff's December 2024 Letter and, due to the correspondence requested more information, which Plaintiff failed to provide. *See* Exs. 4, 5 and Ex. 2 at 47:8-13.

107. Trans Union complied with its reasonable reinvestigation requirements under 15 U.S.C. § 1681i(a)(1)(A) of the FCRA after receiving Plaintiff's January 2025 Dispute. *See* Exs. 7, 8.

108. In fact, Plaintiff agreed that Trans Union complied with its reinvestigation requirements as he stated in his deposition that "Had I gotten that document [January 23, 2025 Reinvestigation Results], there probably wouldn't have been a lawsuit filed." Ex. 2 at 51: 5-6.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Andrew G. Hope*
Andrew G. Hope, Esq.
Makenzie P. Leh, Esq. (admitted *pro hac vice*)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
Tel: 215-665-8700 | Fax: 215-665-8760
andrew.hope@bipc.com
Makenzie.leh@bipc.com

*Counsel for Defendant Trans Union, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify on this 17th day of August, 2026, I filed a true and correct copy of the foregoing through the Court's CM/ECF system, which was sent to Pro Se Plaintiff via electronic mail.

*/s/ Andrew G. Hope*_________
Andrew G. Hope, Esq.