**BUCHANAN INGERSOLL & ROONEY PC**
Andrew G. Hope, Esq. (NY ID No. 4913547)
Makenzie P. Leh, Esq. (Admitted *Pro Hac Vice*)
640 5th Avenue, 9th Floor
New York, New York, 10019
(215) 665 5322
andrew.hope@bipc.com
makenzie.leh@bipc.com
*Counsel for Trans Union, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)**

JEFFREY THOMAS PIRZINGER,

Plaintiff,

vs.

TRANS UNION, LLC,

Defendant.

Case No. 7:25-cv-01760-PMH

*(Redacted - Public Filing)*

---

**DEFENDANT TRANS UNION, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 3

III. STANDARD OF REVIEW .......... 8

IV. ARGUMENT .......... 9

A. Plaintiff Has Failed to Establish that Trans Union Reported Inaccurate Information in Support of His 1681i Claim. .......... 9

1. The ELAN Account .......... 10

2. The TBOM/FORTIVA Account .......... 12

B. Plaintiff Has Not and Cannot Establish that Trans Union Failed to Conduct a Reasonable Reinvestigation or Failed to Provide Him with Reinvestigation Results .......... 13

1. Trans Union's Investigation of the January 2, 2025 Dispute .......... 14

C. Plaintiff Has Failed to Present Any Proof of Damages. .......... 18

1. Plaintiff's Credit Denial Was Not Premised on Trans Union's Reporting of the Disputed Tradelines. .......... 18

2. Plaintiff Has Failed to Present Sufficient Evidence of Emotional Distress. .......... 20

D. Plaintiff Presents No Evidence of Malice or Conscious Disregard to Support a Claim for Punitive Damages. .......... 22

V. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Coughlin*,
64 F.3d 77 (2d Cir.1995)....................9

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015)....................22

*Burns v. Bank of Am.*,
655 F. Supp. 2d 240 (S.D.N.Y. 2008), aff'd, 360 F. App'x 255 (2d Cir. 2010)................18, 21

*Caltabiano v. BSB Bank & Tr. Co.*,
387 F. Supp. 2d 135 (E.D.N.Y. 2005)....................21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................8

*Cohen v. Equifax Info. Servs., LLC*,
827 Fed. App'x. 14 (2d Cir. 2020)....................11

*Cruel v. Experian, et al.*,
No. 22-5236, 2023 WL 4140828 (E.D.Pa. June 22, 2023)....................12

*George v. Equifax*,
No. 06–CV–971, 2010 WL 3937308 (E.D.N.Y. Oct. 5, 2010)....................22

*Jones v. Experian Information Solutions*,
982 F. Supp. 2d 268 (S.D.N.Y. 2013)....................14

*Lichtman v. Chase Bank USA, N.A.*,
No. 18-CV-10960 (CS), 2020 WL 1989486 (S.D.N.Y. Apr. 27, 2020)....................9, 13

*Neclerio v. Trans Union, LLC*,
983 F. Supp. 2d 199 (D. Conn. 2013)....................21

*Patrolmen's Benevolent Ass'n of the City of New York v. City of New York*,
310 F.3d 43 (2d Cir. 2002)....................3, 20, 21

*Phoenix Ins. Co. v. Tasch*,
306 A.D.2d 288 (N.Y. App. Div. 2d Dep't 2003)....................17

*Podell v. Citicorp Diners Club, Inc.*,
914 F. Supp. 2d 1025 (S.D.N.Y. 1996)....................13, 14

*Rodriguez v. City of N.Y.*,
72 F.3d 1051 (2d Cir.1995)....................8

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007)....................22

*Shimon v. Equifax Info. Servs. LLC*,
431 F. Supp. 3d 115 (E.D.N.Y. 2020), *aff'd*, 994 F.3d 88 (2d Cir. 2021)....................2, 9, 13

*Suluki v. Credit One Bank, NA*,
138 F.4th 709 (2d Cir. 2025)....................14, 18

*Trans Union, LLC v. Ramirez*,
594 U.S. 413 (2021)....................18

*Williams-Steele v. Trans Union*,
No. 12 CIV 0310 (GBD)(JCF), 2015 WL 576714 (S.D.N.Y. Feb. 10, 2015), *aff'd sub nom. Williams-Steele v. Trans Union,* 642 F. App'x 72 (2d Cir. 2016)....................1, 11, 19

*Wolk v. Kodak*,
840 F. Supp. 2d 724 (S.D.N.Y. 2012)....................8, 9

**Statutes**

15 U.S.C. § 1681 *et seq.*....................1

15 U.S.C. § 1681i....................2, 9, 13, 14

15 U.S.C. § 1681i(a)(1)(A)....................*passim*

15 U.S.C. § 1681i(a)(6)(A)....................1, 2

**Rules**

Fed. R. Civ. P. 56(a)....................8

## I. INTRODUCTION

In his Second Amended Complaint, Plaintiff Jeffrey Thomas Pirzinger ("Plaintiff") seeks to recover under Sections 1681i(a)(1)(A) and 1681i(a)(6)(A) of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") based on his allegations that Defendant Trans Union, LLC ("Trans Union") failed to conduct a reasonable investigation of 35 separate disputed items on his credit report (Count I) and further failed to provide him with written results of the reinvestigation (Count II).

Plaintiff's lawsuit is predicated on his own mistaken beliefs that (1) the person known as Jeffrey Pirzinger is a "fictitious entity, which is also defined as a consumer under Congress"; (2) "the consumer, the protected party, Jeffrey Pirzinger, the entity that was created, does not own the accounts at issue"; and (3) these accounts were opened by and owned by the furnishers, one of which, ELAN Financial Services, "was stealing the identity of Jeffrey Thomas Pirzinger, and distributing the information to Trans Union, which is an inaccuracy, because Jeffrey Thomas Pirzinger, or Jeffrey Pirzinger here, could not have opened the account on Elan Financial's books." *See* Statement of Material Facts ("SOMF") at ¶¶ 14, 18-19; *see also* Plf. Dep. Tr., Ex. 2 at 18:5-10, 18:18-21, 25:25-26:6 ("Exhibit 2"). This does not give rise to liability under the FCRA.

For the past 18 months[1], Plaintiff has unnecessarily dragged this case to summary judgment despite abandoning the vast majority of his disputes and having admitted during his deposition and in direct correspondence with the Court that he has "proof" of only <u>three</u> out of the 35 alleged inaccuracies. None of these alleged "proofs" meet the standard for an actionable FCRA claim, which requires that the disputed reporting must be inaccurate or misleading in such a way that it could impact "Plaintiff's credit worthiness or eligibility for credit." *See Williams-Steele v. Trans*

1 Despite adamantly pursuing his claims against Trans Union, Plaintiff failed to respond to Trans Union's Pre-Motion Letter requesting a conference regarding an anticipated Motion for Summary Judgment.

*Union*, No. 12 CIV 0310 (GBD)(JCF), 2015 WL 576714, at *2 (S.D.N.Y. Feb. 10, 2015), *aff'd sub nom. Williams-Steele v. Trans Union*, 642 F. Apax 72 (2d Cir. 2016). Indeed, to prevail under either 15 U.S.C. § 1681i claim, Plaintiff must demonstrate that the information reported by Trans Union was inaccurate. *See Shimon v. Equifax Info. Servs. LLC*, 431 F. Supp. 3d 115, 122 (E.D.N.Y. 2020), *aff'd*, 994 F.3d 88 (2d Cir. 2021). Despite this strict requirement, Plaintiff freely admits that he failed to conduct any factual investigation into whether the alleged items were actually inaccurate before filing suit. Plaintiff has presented no evidence supporting his claims of inaccuracy, relying solely on his own misinterpretation of Trans Union's documents and the misguided belief that the reporting on the accounts is inherently inconsistent. As such, Plaintiff's FCRA claims cannot survive.

Moreover, even if Plaintiff could establish there was an inaccuracy (which he cannot), Trans Union conducted a reasonable reinvestigation under 15 U.S.C. § 1681i(a)(1)(A) and provided Plaintiff with the results as required under 15 U.S.C. § 1681i(a)(6)(A). In fact, Plaintiff himself admits that Trans Union's investigation was reasonable, and he has no evidence to support the assertion that he did not receive his reinvestigation results. To the contrary, the only evidence in this matter establishes that Trans Union mailed Plaintiff a copy of his results to the address where he has lived for the past six years. Again, Plaintiff cannot proceed to trial under these facts.

Plaintiff's claims must also fail for the additional reason that he is unable to show that Trans Union's alleged violation of Sections 1681i(a)(1)(A) and 1681i(a)(6)(A) resulted in any damages. Specifically, though Plaintiff claims that he was denied financing for an auto purchase, the record evidence establishes that none of the three purported inaccuracies impacted the lender's ultimate credit decision. Nor has Plaintiff offered any evidence beyond his own subjective testimony of his claimed emotional distress, which, "standing alone, is generally insufficient to

sustain an award of emotional distress damages." *See Patrolmen's Benevolent Ass'n of the City of New York v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002). Finally, even assuming, *arguendo*, that Trans Union's conduct was negligent, no reasonable factfinder could conclude that Trans Union willfully violated the FCRA such as would support a claim for punitive damages. Willfulness requires a showing that a consumer reporting agency knowingly and intentionally committed an act in conscious disregard of a plaintiff's rights. There is no such evidence here.

Accordingly, as explained below, the Court should grant this Motion and enter judgment in Trans Union's favor, as there are no genuine issues of material fact.

## II. FACTUAL BACKGROUND

Plaintiff's claims are premised on a series of disputes and other communications with Trans Union throughout late 2024 and early 2025. On November 8, 2024, Plaintiff mailed Trans Union an incomprehensible dispute letter regarding his ELAN Financial Services account. *See* SOMF at ¶ 12; *see also* September 29, 2026, Declaration of Tamaya Tucker ¶ 33 ("Tucker Decl."); November 8, 2025, Letter ("Exhibit 1"). The November 2024 Letter stated, "Jeffrey Pirzinger is an ens legis entity, a Consumer and a Person." *See* SOMF at ¶ 14; *see generally* Ex. 1. The November 2024 Letter also included an FTC Identity Theft Report indicating that an account opened in Plaintiff's name at ELAN was fraudulent. *See* SOMF at ¶ 21; *see generally* Ex. 1. The dispute noted that ELAN itself was the identity thief, which Plaintiff confirmed in his deposition testimony:

> Q. I'm sorry. Who was the identity thief?
>
> A. Elan Financial in this case, because they're reporting that Jeffrey Pirzinger opened an account; that's why it's – that's why it is appearing in the Trans Union system, because that's what Elan is communicating; when in theory, it's not Jeffrey Pirzinger's account; it's Elan's account. They're the owner.

SOMF at ¶ 18; *see* Plf. Dep. Tr., Ex. 2 at 108:1-10. Trans Union responded to the November 2024 Letter on December 4, 2024. *See* SOMF at ¶ 22; *see* Tucker Decl. at ¶ 36. Trans Union, in accordance with its policies and procedures, reviewed Plaintiff's dispute, conducted a reinvestigation, and sent an ACDV to ELAN asking to verify the account. *See* SOMF at ¶ 22; *see* Tucker Decl. at ¶ 34. In response, ELAN verified its reporting of the account and Trans Union sent Plaintiff the reinvestigation results. *See* SOMF at ¶ 22; *see also* Tucker Decl. at ¶¶ 35-36; December 4, 2024, Response ("Exhibit 3"). Plaintiff did not provide any additional identifying information or a statement describing his situation. *See* SOMF at ¶ 22; *see also* Plf. Dep. Tr., Ex. 2 at 113:5-18. Nor did Plaintiff reassert his fraud claims in subsequent correspondence with Trans Union, because he saw this identity theft dispute as a "losing battle." *See* SOMF at ¶ 29; *see also* Plf. Dep. Tr., Ex. 2 at 113:5-18.

On December 26, 2024, Plaintiff mailed Trans Union a letter stating, "I, hereby revoke all previously granted consent for any and all communication to or with me, the consumer, via electronic means." *See* SOMF at ¶¶ 24-25; *see also* Tucker Decl. at ¶ 37; December 26, 2024, Revocation Letter ("Exhibit 4"). On January 8, 2025, in response to the December 2024 Letter, Trans Union, in accordance with its policies and procedures, reviewed Plaintiff's Letter, determined there was not enough identifying information to process the request, and sent Plaintiff a Request Unclear Letter. *See* SOMF at ¶¶ 30-31; *see also* Tucker Decl. at ¶ 38; January 8, 2025, Response Letter ("Exhibit 6").

On January 2, 2025, Plaintiff sent Trans Union a third letter, identifying 35[2] alleged inaccuracies on his credit report pertaining to the balances, amounts past due, dates of delinquency, amounts charged off, and closure of three accounts: the ELAN SVCS-Fidelity account

---

[2] Plaintiff has since withdrawn his allegations regarding 32 of the 35 claimed inaccuracies. *See* Plf. Dep. Tr., Ex. 2 at 72:19-22; ECF Nos. 34-35.

(417903000929****), the TBOM-FORTIVA account (765650209727****), and the TD Bank USA–Target Card account (***1360). *See* SOMF at ¶¶ 27-28; *see also* Tucker Decl. at ¶ 39; January 2, 2025, Dispute ("Exhibit 5").

[redacted]

[redacted]

In responding to Plaintiff's January 2, 2025 dispute, Trans Union, in accordance with its policies and procedures, initiated a reinvestigation of the disputed accounts and informed the furnishers that Plaintiff claimed the accounts were inaccurate. *See* SOMF at ¶ 34; *see also* Tucker Decl. at ¶ 40; ACDV Responses ("Exhibit 7"). After receiving an ACDV response from the furnishers that verified the disputed reporting as accurate, on January 23, 2025, Trans Union sent the results of its investigation to Plaintiff within the 30-day period prescribed under FCRA § 1681i(a)(1)(A). *See* SOMF at ¶ 36; *see also* Tucker Decl. at ¶ 42; January 23, 2025, Reinvestigation Results ("Exhibit 8"). Though Plaintiff references other correspondence with Trans Union in the Second Amended Complaint, his January 2, 2025, dispute and Trans Union's response to that dispute form the basis of the claims asserted in Counts I and II.

On March 31, 2026, the Court held a discovery conference, during which Plaintiff represented that he had no documents in his possession to support his claims beyond the dispute letters and documents produced by Trans Union in this action. *See* SOMF at ¶ 45; *see also* ECF No. 57. On April 2, 2026, Plaintiff submitted a letter following the March 31, 2026, discovery conference to clarify discrete factual issues concerning certain tradelines, consistent with the Court's guidance regarding the identification of specific inaccuracies." *See* SOMF at ¶¶ 74-75; *see also* April 2, 2026, Letter ("Exhibit 11."). "The letter does not present new claims or documents," but instead attempts to clarify "issues previously identified in Plaintiff's January 2, 2025, dispute and operative pleading." *Id*.

The April 2, 2026, letter identifies three specific inaccuracies, two of which are entirely premised on Plaintiff's misinterpretation of his credit report:

> [W]ith respect to the ELAN FINANCIAL SERVICES tradeline, the 12/20/2024 (pre-dispute) and 1/23/2025 (post-reinvestigation) reports reflect an "Original Charge-Off" amount of $18,779 while also stating that the "unpaid balance is charged off," with a reported unpaid balance of $21,551 for October and

> November 2024. The reports provide no explanation reconciling the difference between these figures, presenting inconsistent information regarding the amount characterized as charged off, without any disclosed basis for reconciliation.
>
> * * *
>
> [W]ith respect to the TBOM/FORTIVA tradeline, the reports reflect a maximum delinquency of 90 days (and, following reinvestigation, 120 days) in December 2024, while the payment history grid reflects only a 30-day delinquency as of November 2024 and contains no December 2024 entry. The reported delinquency progression cannot be reconciled on its face, as it implies a jump from 30 days late to 90 or 120 days late without corresponding intermediate reporting or a December entry in the grid.

*See* SOMF at ¶¶ 76-78; *see also* Ex. 11. The letter further states that the same ELAN tradeline reflects the remark "Account Closed by Consumer" in connection with a charge-off status, which is inconsistent with correspondence from ELAN indicating that the account closure was initiated by the creditor. *Id*. Plaintiff has both implicitly and expressly withdrawn his allegations regarding 32 of the 35 claimed inaccuracies, having testified at his deposition that his claims against Trans Union "boiled down to three that I was able to provide clear documentation proving a potential inaccuracy." SOMF at ¶ 47; *see* Plf. Dep. Tr., Ex. 2 at 72:19-22.

Plaintiff claims to have suffered actual damages, including the loss of credit opportunities, denial of vehicle financing, out-of-pocket expenses, and emotional distress. *See* SOMF at ¶ 81; *see also* Plf. Answ. to Interrog. at No. 10 ("Exhibit 13"). As proof of these claimed damages, Plaintiff has presented evidence of one credit denial: for the attempted purchase of a 2025 Cirrus Silver Metallic Mercedes-Benz GLS450W4 on February 22, 2025, for which Plaintiff sought 100% financing of the $95,865 purchase price. *See* SOMF at ¶¶ 84-85; *see also* ECF No. 35 at p. 54; Plf. Dep. Tr., Ex. 2 at 143:15-21. On March 9, 2025, Plaintiff received a "Notice of Action Taken and Statement of Reasons" from Mercedes-Benz Financial Services. The reasons for the denial of credit include: "(1) FICO below minimum required, (2) proportion of balances to credit limits on bank/national revolving or other revolving accounts is too high, (3) too few accounts currently

paid as agreed, and (4) time since delinquency is too recent or unknown." SOMF at ¶ 87; *see also* ECF No. 35 at pp. 56-57. None of these reasons for denial relate to the three claimed inaccuracies that Plaintiff has identified. *See* SOMF at ¶¶ 76-78.

In support of his claim for emotional distress, Plaintiff testified that he began seeing a therapist in February/March of 2026, nearly a year after filing this lawsuit. *See* SOMF at ¶ 101; *see also* Plf. Dep. Tr., Ex. 2 at 116:20-25–117:1-19. However, Plaintiff did not produce any documentary evidence relating to his diagnosis, condition, symptoms, or treatment, nor identified any third-party witnesses with relevant knowledge in his discovery responses. *See id.* [redacted]

## III. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where, as here, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Wolk v. Kodak*, 840 F. Supp. 2d 724, 736 (S.D.N.Y. 2012) ("Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").

The party moving for summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." *Rodriguez v. City of N.Y.*, 72 F.3d 1051, 1060-1061 (2d Cir.1995). The court may find

that summary judgment is appropriate when the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case." *Wolk*, 840 F. Supp. 2d at 736. In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995) (internal citations and quotation marks omitted).

## IV. ARGUMENT

### A. Plaintiff Has Failed to Establish that Trans Union Reported Inaccurate Information in Support of His 1681i Claim.

"A prerequisite for any FCRA claim is that the challenged credit information is incomplete or inaccurate." *Lichtman v. Chase Bank USA, N.A.*, No. 18-CV-10960 (CS), 2020 WL 1989486, at *4 (S.D.N.Y. Apr. 27, 2020); *see also Shimon*, 431 F. Supp. 3d at 122 ("A plaintiff asserting claims under § 1681i must demonstrate that the disputed information is inaccurate in order to prevail on allegations that a consumer reporting agency had failed to reasonably reinvestigate a disputed item."). Plaintiff has failed to make any such showing here.

In the Second Amended Complaint, Plaintiff alleges, in conclusory fashion, nearly three dozen inaccuracies in his Trans Union credit file. *See* SAC at pp. 6-12 (ECF No. 34). Questioned as to the factual basis of these averments, Plaintiff admitted that he made no inquiry before signing and submitting his pleading, explaining that he is not alleging that each of the disputed items are actually inaccurate—merely that he disputed them as inaccurate in his correspondence with Trans Union. *See* SOMF at ¶¶ 48, 72; *see also* Plf. Dep. Tr., Ex. 2 at 44:6-11, 101:2-11. Plaintiff further testified, "This isn't about accuracy or inaccuracy," and "Because I had no basis, that's irrelevant to whether [Trans Union is] supposed to do a reasonable reinvestigation or not. The FCRA doesn't

require a basis." *See* SOMF at ¶ 48; *see also* Plf. Dep. Tr., Ex. 2 at 114:11-13; 146:22-25. Nevertheless, having abandoned 32 of the 35 purported inaccuracies identified in the January 2, 2025, dispute letter and Second Amended Complaint, Plaintiff now claims that three inaccuracies support recovery under the FCRA: two pertaining to the ELAN Financial Services account and one pertaining to the TBOM-FORTIVA account on his credit file. *See* SOMF at ¶¶ 76-79; *see also* ECF No. 58; Plf. Dep. Tr., Ex. 2 at 72:19-22.

1. <u>The ELAN Account</u>

Plaintiff initially disputed the ELAN account as fraudulent in a letter, dated November 8, 2024, accusing ELAN of identity theft based on his idiosyncratic, hyper-technical, and, ultimately, misguided understanding of consumer credit that he obtained from "Facebook and YouTube." *See* SOMF at ¶ 49; *see also* Plf. Dep. Tr., Ex. 2 at 55:8-15. Trans Union responded to the November 2024 Letter verifying and certifying that the account was accurately reporting. *See* SOMF at ¶ 22; *see also* Tucker Decl. at ¶ 34; Ex. 3. Though invited to provide a statement or any additional information to assist in resolution of the dispute, Plaintiff chose not to do so, abandoning his fraud claims against ELAN as a "losing battle." *See* SOMF at ¶ 29; Plf. Dep. Tr., Ex. 2 at 113:5-18. Instead, in a letter dated January 2, 2025, Plaintiff opted to dispute the balance and charge-off amounts reporting on the ELAN account. *See* SOMF at ¶¶ 27-28; *see also* Tucker Decl. at ¶ 39; Ex. 5. During discovery in this matter, Plaintiff further clarified the dispute as follows:

> [W]ith respect to the ELAN FINANCIAL SERVICES tradeline, the 12/20/2024 (pre-dispute) and 1/23/2025 (post-reinvestigation) reports reflect an "Original Charge-Off" amount of $18,779 while also stating that the "unpaid balance is charged off," with a reported unpaid balance of $21,551 for October and November 2024.

*See* SOMF at ¶¶ 76-78; *see also* Ex. 11. Because his credit report provides "no explanation reconciling the difference between these figures," Plaintiff considers this sufficient proof of inaccuracy. *See id.* Plaintiff is mistaken. Indeed, an increase in the account balance after a charge-

off is not inherently inconsistent and the discrepancy between a charge-off balance of $18,779 and a reported unpaid balance of $21,551 does not, in itself, constitute an inaccuracy under the FCRA. *See* Tucker Decl. at ¶ 46. Plaintiff has acknowledged that he had no independent basis for this dispute, testifying, "It's not up to me to prove to Trans Union what was or was not accurate. All I had to do was raise a dispute." *See* SOMF at ¶ 46; *see also* Plf. Dep. Tr., Ex. 2 at 34:24-25–35:1-3. Plaintiff further admitted under oath that he had not consulted any statements or other documents and, therefore, had no knowledge of what the unpaid balance on the account was or should have been. *See* SOMF at ¶ 51; *see also* Plf. Dep. Tr., Ex. 2 at 79:19-22. Nor has Plaintiff presented any documentation or evidence to show that ELAN did not charge off the account. *See* SOMF at ¶ 51; *see also* Plf. Dep. Tr., Ex. 2 at 75:2-7.

Plaintiff further contends that "the same ELAN tradeline reflects the remark 'Account Closed by Consumer' in connection with a charge-off status," which is inconsistent with "correspondence from ELAN indicating that the account closure was initiated by the creditor." *See* SOMF at ¶¶ 76-78; *see also* Ex. 11. True, Plaintiff has produced a letter from ELAN, dated February 15, 2024, informing Plaintiff that "Elan Financial Services has elected to close your credit card account(s) referenced above in accordance with the terms and conditions of your Cardmember Agreement." *See* SOMF at ¶ 44; *see also* February 2024 ELAN Letter ("Exhibit 12"). However, the Second Circuit has held that such a frivolous inaccuracy, which does not impact a consumer's creditworthiness, is not a basis for recovery under the FCRA. *See, e.g., Williams-Steele*, No. 12 CIV 0310 (GBD)(JCF), 2015 WL 576714, at *2 (holding that disputed reporting had "no bearing on Plaintiff's credit worthiness or eligibility for credit, and therefore the alleged inaccuracies are not actionable"); *Cohen v. Equifax Info. Servs., LLC*, 827 Fed. App'x. 14, 17 (2d Cir. 2020) (holding that plaintiff's inaccurate contact information cannot give rise to FCRA

liability); *Cruel v. Experian, et al.*, No. 22-5236, 2023 WL 4140828, at *3 (E.D.Pa. June 22, 2023) ("[T]he Court agrees with Defendants' argument that minor inconsistencies regarding Plaintiff's middle initial or employer's name do not bear on Plaintiff's creditworthiness from the perspective of a creditor.").

Here, Plaintiff offers no explanation, let alone any evidence, as to how the potential error regarding the closure of his ELAN account impacted his creditworthiness. Indeed, Plaintiff himself admits that whether the ELAN account was closed by Plaintiff or by ELAN had no bearing on the credit decision by Mercedes-Benz, which is his only proof of damages in this matter. *See* SOMF at ¶ 97; *see also* Plf. Dep. Tr., Ex. 2 at 160:17–25161:1-3. Consequently, Plaintiff cannot establish an actionable inaccuracy regarding the reporting on his ELAN account.

2. The TBOM/FORTIVA Account

Regarding the reporting on his TBOM/FORTIVA account, Plaintiff claims:

> [W]ith respect to the TBOM/FORTIVA tradeline, the reports reflect a maximum delinquency of 90 days (and, following reinvestigation, 120 days) in December 2024, while the payment history grid reflects only a 30-day delinquency as of November 2024 and contains no December 2024 entry.

*See* SOMF at ¶¶ 76-78; *see also* Ex. 11. Plaintiff asserts that "The reported delinquency progression cannot be reconciled on its face, as it implies a jump from 30 days late to 90 or 120 days late without corresponding intermediate reporting or a December entry in the grid." *Id.* Once again, Plaintiff is mistaken.

As an initial matter, Plaintiff's consumer disclosure shows the account reporting 30 days late as of 09/2024, 60 days late as of 10/2024, 90 days late as of 11/2024, and 120 days late as of 12/2024. *See* SOMF at ¶ 78; *see also* Tucker Decl. at ¶ 48; Ex. 9. Separately and in any event, were the account to have been reported as Plaintiff claims, this is **not** evidence of any inherent inaccuracy. [redacted]

[redacted]

Moreover, Plaintiff has not provided any documentation indicating he was not late or did make payments from October 2024 through January 2025. *See* SOMF at ¶¶ 64, 67; *see also* Plf. Dep. Tr., Ex. 2 at 96:8-25–97:1, 102:3-12. Indeed, as with the ELAN account, Plaintiff testified that he has no factual basis for the claim that the TBOM/FORTIVA is not delinquent or was paid on more recently than the dates that Trans Union reported, relying solely on his own April 2, 2026, letter of "clarification" to the Court as "proof." *See* SOMF at ¶¶ 60, 74-75; *see also* Plf. Dep. Tr., Ex. 2 at 94:19-25–95:2-24. Therefore, Plaintiff has failed to satisfy his threshold burden by establishing an inaccuracy relating to either the disputed ELAN or TBOM/FORTIVA tradelines. *See Lichtman*, 2020 WL 1989486, at *4; *see also Shimon*, 431 F. Supp. 3d at 122. Accordingly, summary judgment should be granted in Trans Union's favor.

### B. Plaintiff Has Not and Cannot Establish that Trans Union Failed to Conduct a Reasonable Reinvestigation or Failed to Provide Him with Reinvestigation Results.

Even assuming that Plaintiff has met his threshold burden of showing that his credit report contains an inaccuracy (which he has not), his claims under § 1681i in Counts I and II nevertheless still fail because the record firmly establishes that Trans Union conducted a reasonable reinvestigation and mailed Plaintiff his investigation results.

The FCRA is not a strict liability statute, and inaccurate reporting alone does not give rise to liability. *See Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 2d 1025, 1032 (S.D.N.Y. 1996). Rather, to prevail on a claim under § 1681i, a plaintiff must show that: (1) the plaintiff disputed the information; (2) the information was inaccurate; and (3) the credit reporting agency's reinvestigation was unreasonable. *See Jones v. Experian Information Solutions*, 982 F. Supp. 2d

268, 272-73 (S.D.N.Y. 2013). Notwithstanding Plaintiff's claims to the contrary, the burden is on the plaintiff to prove that a credit reporting agency did not complete a reasonable reinvestigation under the FCRA. *See Podell*, 914 F. Supp. 2d at 1032 (discussing that the consumer plaintiff bears the burden of proving that a credit reporting agency acted negligently with respect to investigating and deleting inaccurate information). The statutory framework under 15 U.S.C. § 1681i requires that a plaintiff establish a foundational showing of inaccuracy before challenging the adequacy of the reinvestigation, which includes whether the agency followed the specific procedural requirements outlined in the statute, such as conducting the reinvestigation within 30 days, properly notifying furnishers of the dispute, and considering all relevant documentation provided by the consumer.

Setting aside Plaintiff's failure to establish an actionable inaccuracy, the record further demonstrates that Trans Union complied with its reasonable reinvestigation requirements under 15 U.S.C. § 1681i(a)(1)(A). Though generally implicating issues of fact, the Second Circuit has nevertheless held that summary judgment is appropriate "where no reasonable factfinder could conclude that the investigation was unreasonable." *Suluki v. Credit One Bank, NA*, 138 F.4th 709, 720 (2d Cir. 2025) (affirming grant of summary judgment). Summary judgment is likewise appropriate in situations where a "there is no genuine dispute of material fact about whether a reasonable investigation would have revealed the inaccuracy of the disputed information" because in such situations there is no "nexus" between the purportedly unreasonable investigation and the claimed accuracy giving rise to the plaintiff's damages. *Id.*

1. <u>Trans Union's Investigation of the January 2, 2025 Dispute</u>

Trans Union requires that all consumer dispute requests be processed in accordance with an established set of reinvestigation policies and procedures. *See* Tucker Decl. at ¶ 16. [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

On January 2, 2025, Plaintiff mailed written correspondence to Trans Union disputing the ELAN, TBOM-FORTIVA, and TD Bank accounts claiming that the items were inaccurately reporting on his credit file. *See* SOMF at ¶ 27; *see also* Tucker Decl. at ¶ 39; Ex. 5. In response to this dispute, Trans Union followed its normal business procedures and performed a reinvestigation as required by the FCRA, contacting ELAN, TBOM-FORTIVA, and TD Bank on January 9, 2025, via ACDV and further notifying the furnishers that Plaintiff claims the accounts are reporting inaccurately. *See* SOMF at ¶¶ 34; *see also* Tucker Decl. at ¶ 40; Ex. 7.

ELAN, TBOM-FORTIVA, and TD Bank responded to Trans Union's reinvestigation on January 14, 2025, January 23, 2025, and January 16, 2025, respectively. SOMF at ¶ 35; Tucker Decl. at ¶ 41; Ex. 7. Specifically, ELAN updated the "Rating" and the "Historical Trended Data." TBOM-FORTIVA updated the "Date Updated," "Maximum Delinquency," "Rating" and "Historical Trended Data." TD Bank updated the "Date Updated," "High Balance," "Remarks," "Maximum Delinquency," "Rating," and "Historical Trended Data." *See id.* Finally, after completing its investigation, Trans Union sent the results of its reinvestigation to Plaintiff on January 23, 2025, including a letter explaining its reinvestigation procedures. *See* SOMF at ¶ 36; *see also* Tucker Decl. at ¶ 42; Ex. 8.

Here, the record firmly demonstrates that Trans Union engaged in a reasonable investigation of the January 2, 2025, dispute and notified Plaintiff of the results of this investigation as required by Sections 1681i(a)(1)(A) and 1681i(a)(6)(A). Plaintiff offers no

evidence to dispute these facts. To the contrary, Plaintiff expressed his apparent agreement that Trans Union had complied with its reinvestigation obligations, stating in his deposition that "Had I gotten that document [the January 23, 2025 Reinvestigation Results], there probably wouldn't have been a lawsuit filed." *See* SOMF at ¶ 108; *see also* Plf. Dep. Tr., Ex. 2 at 51: 5-6. While Plaintiff contends that Trans Union failed to provide him with his reinvestigation results, the evidence demonstrates otherwise. Indeed, on or about January 23, 2025, Trans Union sent the results of its reinvestigation via mail to Plaintiff within the 30-day period prescribed under FCRA § 1681i(a)(1)(A). *See* SOMF ¶ 36; Tucker Decl. at ¶ 42; Ex. 8. The results were mailed to [redacted], Mamaroneck, New York, 10543, where Plaintiff has lived for the last six years. *See* SOMF at ¶ 37; *see also* Tucker Decl. at ¶ 43; Ex. 9.

Under New York law, a party is entitled to a rebuttable presumption of receipt based on proof of regular mailing. *See Phoenix Ins. Co. v. Tasch*, 306 A.D.2d 288, 288 (N.Y. App. Div. 2d Dep't 2003). Thus, Plaintiff has failed to establish any genuine issue of material fact that Trans Union did not reasonably reinvestigate Plaintiff's January 2025 dispute or provide him with the results of the investigation as alleged in Counts I and II of the Second Amended Complaint.

Moreover, Plaintiff's own evidence (or lack thereof) establishes that there is no "nexus" between his conclusory allegations that Trans Union's investigation was unreasonable and the claimed inaccuracies forming the basis of his Complaint. If Plaintiff himself is in possession of no statements or other corroborating documents that definitively establish an inaccuracy in the reporting of the ELAN or TBOM-FORTIVA accounts, it stands to reason Trans Union could not be expected to unearth such proof. Accordingly, even a purportedly "reasonable investigation would not have yielded a different result" and judgment should be entered in favor of Trans Union and against Plaintiff for this additional reason. *See Suluki*, 138 F.4th at 720.

### C. Plaintiff Has Failed to Present Any Proof of Damages.

#### 1. Plaintiff's Credit Denial Was Not Premised on Trans Union's Reporting of the Disputed Tradelines.

Even if Plaintiff could establish an actionable inaccuracy under the FCRA, which he cannot, Plaintiff did not suffer the required concrete harm to maintain his claims. The Supreme Court in *Trans Union, LLC v. Ramirez*, 594 U.S. 413 (2021), clarified that the presence of an inaccuracy in a credit report, without disclosure to a third party or resulting in adverse credit actions, does not constitute a concrete injury. Additionally, "[t]o obtain an award of actual damages under the FCRA, a plaintiff must present evidence of a ***causal relation*** between the violation of the statute and the loss of credit, or some other harm." *See Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008), aff'd, 360 F. App'x 255 (2d Cir. 2010) (emphasis added). The Second Circuit confirmed that summary judgment is appropriate where plaintiff failed to show causation between the harm alleged and defendants' alleged FCRA violations. *Suluki*, 138 F.4th at 724. Here, Plaintiff has suffered no actual damages caused by Trans Union, and without that proof, his claims cannot survive summary judgment.

Plaintiff has presented evidence of one credit denial from Mercedes-Benz. SOMF at ¶¶ 84-85; ECF No. 35 at p. 54; Plf. Dep. Tr., Ex. 2 at 143:15-21. This denial occurred on February 22, 2025, in response to Plaintiff's request for 100% financing to purchase a 2025 Mercedes-Benz GLS450W4 with a $95,865 MSRP. *See id.* Plaintiff has confirmed that this adverse credit decision by Mercedes-Benz represents his only proof of damages and that other documents reflecting credit denials that were produced in discovery do not support his claims against Trans Union:

> Q. [E]ssentially, your sole basis here is that Mercedes, the one application that you made to Mercedes, for -- Mercedes Benz Financial, is the sole basis for your credit denial? That is -- you know, you provided these documents to us.
>
> A. Right.

> Q. So I just want to make sure that these [other] documents that you provided are irrelevant. Is that Right?
>
> A. Pretty much, except for the Mercedes one.

*See* SOMF at ¶ 84; *see also* Plf. Dep. Tr., Ex. 2 at 143:16-144:1.

On March 9, 2025, Plaintiff received a "Notice of Action Taken and Statement of Reasons" from Mercedes-Benz Financial Services. The reasons for the denial include: "(1) FICO below minimum required, (2) proportion of balances to credit limits on bank/national revolving or other revolving accounts is too high, (3) too few accounts currently paid as agreed and (4) time since delinquency is too recent or unknown." SOMF at ¶ 87; ECF No. 35 at pp. 56-57. None of these reasons for denial relate to the three claimed inaccuracies that Plaintiff has identified with respect to Trans Union's reporting on the ELAN and TBOM/FORTIVA accounts, instead referring to independent features of Plaintiff's broader credit profile. *See* SOMF at ¶¶ 76-78; *see also* ECF No. 58.

The only documentary evidence that Plaintiff has produced in support of his claimed inaccuracies is the correspondence from ELAN indicating that ELAN, not Plaintiff, closed his account. *See* SOMF at ¶ 44; *see also* Ex. 12. However, an inaccuracy that does not impact a consumer's creditworthiness is not a basis for recovery under the FCRA. *See Williams-Steele*, 2015 WL 576714, at *2. Here, Plaintiff himself acknowledges that whether the ELAN account was closed by Plaintiff or by ELAN has no bearing on the adverse credit decision by Mercedes-Benz. *See* SOMF at ¶ 97; *see also* Plf. Dep. Tr., Ex. 2 at 160:17-25–161:1-3. Specifically, when asked how Trans Union reporting the ELAN account as "closed by consumer" related to the Mercedes-Benz denial, Plaintiff testified, "I don't know how—how that comment, the fact that it was closed by whom, affects the credit score. You'd have to talk to Trans Union or whoever came up with the credit score that Mercedes-Benz relied on." *See* SOMF at ¶ 96; *see also* Plf. Dep. Tr.,

Ex. 2 at 157:20-24. Plaintiff himself did not attempt to depose any employee from Trans Union or Mercedes-Benz on this or any other topic during discovery in this matter.

Plaintiff further testified that he did not monitor his credit score during the relevant time period and has acknowledged that whether Plaintiff or ELAN closed the account has nothing to do with the proportion of balances to credit limits, too few accounts currently agreed as paid, and time since last delinquency, which were all reasons cited by Mercedes-Benz. *See* SOMF at ¶¶ 97, 100; *see also* Plf. Dep. Tr., Ex. 2 at 115:18-20, 160:17-25–161:1-3. Nor has Plaintiff offered any explanation as to how any of the other disputed information furnished by ELAN or TBOM/FORTIVA may have factored into Mercedes-Benz's denial. Indeed, Plaintiff has no independent knowledge or documentation regarding the balance on his revolving accounts, how many accounts were paid as agreed, or the dates of any delinquency such as would support his naked assertion that Trans Union's reporting was in any way inaccurate. *See* SOMF at ¶¶ 90-92; *see also* Plf. Dep. Tr., Ex. 2 at 151:7-15, 17-19.[3]

2. Plaintiff Has Failed to Present Sufficient Evidence of Emotional Distress.

Plaintiff's claim of emotional distress is also legally insufficient, as he has not provided any actual support or evidence to substantiate this claim. Although a consumer may recover damages for emotional distress under the FCRA, he must present sufficient, objective evidence to warrant such recovery. *Patrolmen's Benevolent Ass'n of the City of New York v. City of New York*, 310 F.3d 43, 53 (2d Cir. 2002). "A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages." *Id*. at 55; *see also Caltabiano v. BSB Bank & Tr. Co.*, 387 F. Supp. 2d 135, 142 (E.D.N.Y. 2005) ("To demonstrate an actual injury,

[3] It also bears noting that Plaintiff was offered financing by two other lenders, which he declined. Capital One Auto Finance offered financing with a down payment of $67,000 and payment not to exceed $800 per month, while Santander Auto Finance approved Plaintiff for a loan at 13.95% and with a $49,000 down payment. *See* SOMF at ¶ 93; *see also* ECF No. 35 at p. 58.

a plaintiff generally cannot rely solely on subjective testimony but must set forth 'other evidence that such an injury occurred.'"); *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 251 (S.D.N.Y. 2008) (discussing how a plaintiff must "produce more than conclusory allegations" to recover for emotional distress under the FCRA). Here, Plaintiff has not presented any documentary or expert evidence regarding his claimed emotional distress, offering only his own subjective and self-serving testimony. *See* SOMF at ¶¶ 101-102; *see also* Plf. Dep. Tr., Ex. 2 at 116:20-25–117:1-19, 119:17-25, and 118:11-13.

Courts in the Second Circuit have also considered the timing of a consumer's decision to seek treatment as a significant—and sometimes dispositive—factor in assessing credibility and causation. *See Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199 (D. Conn. 2013); *see also Caltabiano*, 387 F. Supp. 2d at 142 ("Prior to the commencement of this lawsuit, the plaintiff did not seek any psychiatric care [redacted]

[redacted] Consequently, as with his credit denial

claim, Plaintiff's conclusory and unsupported allegations of emotional distress are wholly insufficient to establish damages under the FCRA.

**D. Plaintiff Presents No Evidence of Malice or Conscious Disregard to Support a Claim for Punitive Damages.**

Finally, even if Plaintiff could show a negligent violation of the FCRA in this case, which, for the multiple reasons detailed above, he has failed to do, he still is not entitled to punitive damages given the absence of any evidence of willful conduct by Trans Union. To recover punitive damages under the FCRA, Plaintiff must demonstrate that Trans Union knowingly and intentionally committed an act in conscious disregard of Plaintiff's rights. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007). "[W]illfulness is a high standard, requiring knowing or reckless disregard of the FCRA's requirements." *Berry v. Schulman*, 807 F.3d 600, 605 (4th Cir. 2015). "This typically occurs in cases where credit reporting agencies 'intentionally misled consumers or concealed information from them.'" *George v. Equifax*, No. 06-CV-971, 2010 WL 3937308, at *2 (E.D.N.Y. Oct. 5, 2010).

Though seeking punitive damages in his Second Amended Complaint, Plaintiff has failed to identify any alleged conduct by Trans Union that would rise to the level of willfulness, let alone present evidence of such conduct. Indeed, Plaintiff offers no documents or testimony that would establish inaccurate reporting, dispute handling, or other conduct amounting to willful misrepresentations or concealments. On the contrary, all the evidence in the record demonstrates that Trans Union fulfilled its duties under the FCRA to ensure accurate reporting and to conduct a reasonable reinvestigation of Plaintiff's disputes. *See* SOMF at ¶¶ 107-108; *see also* Tucker Decl. at ¶ 50. Accordingly, there is no genuine issue of material fact on the issue of willfulness, and judgment should therefore be entered against Plaintiff and in favor of Trans Union on the claim for punitive damages.

## V. **CONCLUSION**

For all the foregoing reasons, Trans Union respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's Second Amended Complaint in its entirety, with prejudice.

Dated: September 30, 2026

**BUCHANAN INGERSOLL & ROONEY PC**

By: */s/ Andrew G. Hope*
Andrew G. Hope, Esq. (NY ID No. 4913547)
Makenzie P. Leh, Esq. (Admitted *Pro Hac Vice*)
640 5th Avenue, 9th Floor
New York, New York, 10019
(215) 665 5322
andrew.hope@bipc.com
makenzie.leh@bipc.com
*Counsel for Trans Union, LLC*