**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)**

---

JEFFREY THOMAS PIRZINGER,

Plaintiff,

vs.

TRANS UNION, LLC,

Defendant.

Case No. 7:25-cv-01760-PMH

*(Redacted - Public Filing)*

---

**DECLARATION OF TAMAYA TUCKER**

---

I, Tamaya Tucker, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a Specialist I in the Litigation Support department of Trans Union, LLC ("Trans Union"), am authorized to make this Declaration on its behalf and have personal knowledge of the matters contained herein.

2. On behalf of Trans Union, I make this Declaration in support of Trans Union's Motion For Summary Judgment (the "Motion"), and for the purpose of introducing copies of documents that may be considered in connection with the Motion.

3. Trans Union is a "consumer reporting agency" ("CRA") as that term is defined by the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681a(f).

4. Trans Union maintains active credit files for over 200 million consumers, and those files include billions of individual pieces of data.

5. Virtually every action undertaken by Trans Union is designed to ensure that Trans Union maintains reasonable procedures to assure the maximum possible accuracy of the data in its files. Information is accepted only from reliable furnishers under contract to provide accurate data.

6. Trans Union maintains billions of pieces of data in the form of consumer files on its computer system and has spent decades developing and perfecting its procedures.

7. Trans Union has hundreds if not thousands of procedures in place, all designed to assure the maximum possible accuracy of the information contained in its consumer files.

8. Trans Union takes a comprehensive, collaborative team approach to processing and maintaining its consumer credit data to assure the maximum possible accuracy of its consumer reports.

9. [redacted]

10. [redacted].

11. [redacted].

12. [redacted].

13. [redacted].

14. [redacted].

15. [redacted].

16. [redacted].

17. [redacted]

18. [redacted].

19. [redacted]

20. [redacted]

21. [redacted]

22. [redacted]

23. [redacted]

24. [redacted]

25. [redacted]

26. [redacted].

27. [redacted]

28. [redacted].

29. [redacted].

30. [redacted].

31. [redacted]

[redacted]

32. Trans Union has, at all times, maintained reasonable procedures to assure the maximum possible accuracy of the information appearing in Plaintiff's Trans Union credit file.

33. In a letter dated November 8, 2024, Plaintiff disputed his ELAN FIN SVCS/FIDELITY ("ELAN") account via mail, attaching a copy of a Federal Trade Commission Identify Theft Report, claiming that the Consumer, Jeffrey Pirzinger, did not own the accounts and therefore, the accounts do not belong to him. A true and correct of the November 8, 2024 letter is attached hereto as **Exhibit 1**.

34. In response to the dispute, Trans Union, as required, followed its normal business procedures and performed a reinvestigation under the FCRA by contacting ELAN through an Automated Consumer Dispute Verification form ("ACDV"), providing ELAN with a complete copy of the dispute and further notifying ELAN that Plaintiff "[c]laims true identity fraud, account fraudulently opened. Provide or confirm complete ID." A copy of the reinvestigation and Trans Union's response was mailed to Plaintiff, a true and correct copy of which is attached hereto as **Exhibit 3**.

35. ELAN responded to Trans Union's reinvestigation on November 22, 2024, by verifying and certifying to Trans Union that the account was accurately reporting. *See id*.

36. On December 4, 2024, Trans Union sent the results of its reinvestigation, including a letter explaining its reinvestigation procedures, to Plaintiff within the 30-day period prescribed under FCRA § 1681i(a)(1)(A), which stated that the account was reporting accurately, consistent with the information provided by ELAN. *See id.*

37. In a letter dated December 26, 2024, Plaintiff indicated a "Revocation of Consent," revoking his consent to any communications with Trans Union via electronic means. A true and correct copy of the December 26, 2024 letter is attached hereto as **Exhibit 4.**

38. On January 8, 2025, in response to the December 26, 2024, Revocation of Consent Letter, Trans Union, in accordance with its policies and procedures, reviewed Plaintiff's Letter, determined there was not enough identifying information to process the request, and sent Plaintiff a "Request Unclear Letter." Letter was in direct response to Plaintiff's December 26, 2024, Correspondence, not in response to Plaintiff's January 2, 2026, dispute. A true and correct copy of the Request Unclear Letter is attached hereto as **Exhibit 6**.

39. In a letter dated January 2, 2025, Plaintiff disputed the ELAN, TBOM-FORTIVA and TD Bank accounts, claiming that the items were inaccurately reporting on his Trans Union credit report. A true and correct copy of the January 2, 2025, letter is attached hereto as **Exhibit 5**.

40. In response to this dispute, Trans Union, as required, followed its normal business procedures and performed a reinvestigation under the FCRA by contacting ELAN, TBOM-FORTIVA and TD Bank via ACDV, notifying the furnishers that Plaintiff claims the accounts are reporting inaccurately. A true and correct copy of the ACDV responses are attached hereto as **Exhibit 7.**

41. ELAN, TBOM-FORTIVA and TD Bank responded to Trans Union's reinvestigation on January 14, 2025, January 23, 2025, and January 16, 2024, respectively, by verifying and certifying to Trans Union that the accounts were accurately reporting. Specifically, ELAN updated the "Rating" and the "Historical Trended Data." TBOM-FORTIVA updated the "Date Updated," "Maximum Delinquency," "Rating" and "Historical Trended Data." TD Bank

updated the "Date Updated," "High Balance," "Remarks," "Maximum Delinquency," "Rating," and "Historical Trended Data." *See id.*

42. On January 23, 2025, Trans Union sent the results of its reinvestigation, including a letter explaining its reinvestigation procedures, to Plaintiff within the 30-day period prescribed under FCRA § 1681i(a)(1)(A), which stated that the account was reporting accurately, consistent with the information provided by the furnishers. A true and correct copy of the January 23, 2025, Reinvestigation Results is attached hereto as **Exhibit 8.**

43. Because Trans Union was unable to properly process Plaintiff's "Revocation of Consent" correspondence, and because Plaintiff did not follow up with a second request to revoke electronic consent—despite confirming receipt of the initial response—Trans Union also sent Plaintiff his dispute results via electronic mail, a true and correct copy of which is attached hereto as **Exhibit 9.**

44. Plaintiff did not send Trans Union any additional disputes refuting the accuracy of the reported tradelines of the ELAN, TBOM-FORTIVA, and TD Bank accounts nor did Plaintiff attempt to revoke electronic consent again.

45. Trans Union's reporting on Plaintiff's ELAN account reflects an Original Charge-Off amount of $18,779 and an unpaid balance of $21,551 for October and November 2024. *See* Ex. 9.

46. An increase in the account balance after a charge-off is not inherently inconsistent and the discrepancy between a charge-off balance of $18,779 and a reported unpaid balance of $21,551 on Plaintiff's ELAN account has been verified as accurate by the furnisher.

47. [redacted]

[redacted]

48. [redacted]

49. [redacted]

50. Trans Union has, at all times, maintained reasonable procedures to assure the maximum possible accuracy of the information appearing in Plaintiff's Trans Union credit file and conducted a reasonable reinvestigation of each of Plaintiff's disputes.

**I AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE FOREGOING REPRESENTATIONS ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF.**

Dated: September 30, 2026

Tamaya Tucker

Tamaya Tucker
Specialist I, Litigation Support