FILED
U.S. DISTRICT COURT
2026 OCT 30 PM 1:44
S.D. OF N.Y.W.P.

**Jeffrey Thomas Pirzinger**
135 Beechwood Dr
Mamaroneck, NY 10543
T: (914) 497-1104
F: (914) 412-0456
*Plaintiff, Pro Se*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)**

---

JEFFREY THOMAS PIRZINGER,

Plaintiff,

vs.

TRANS UNION LLC,

Defendant.

Case No. 7:25-cv-01760-PMH

---

**PLAINTIFF'S JEFFREY THOMAS PIRZINGER'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................ 4

II. FACTUAL BACKGROUND ........................................................ 4

III. SUMMARY JUDGMENT STANDARD ........................................................ 6

IV. GENUINE ISSUES OF MATERIAL FACT CONCERNING THE REINVESTIGATION ........................................................ 6

V. GENUINE ISSUES OF MATERIAL FACT CONCERNING NOTIFICATION OF REINVESTIGATION RESULTS ........................................................ 8

VI. DAMAGES ........................................................ 9

VII. WILLFUL VIOLATIONS OF THE FCRA ........................................................ 11

VIII. CONCLUSION ........................................................ 12

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 247-52, 252-56 (1986) .......... 6

*Casella v. Equifax Credit Information Services*,
56 F.3d 469, 474-75 (2d Cir. 1995) .......... 9, 10

*Celotex Corp. v. Catrett*,
477 U.S. 317, 322-26 (1986) .......... 6

*Guimond v. Trans Union Credit Information Co.*,
45 F.3d 1329, 1333 (9th Cir. 1995) .......... 9

*Mader v. Experian Info. Sols., Inc.*,
56 F.4th 264, 269-70 (2d Cir. 2023) .......... 7

*Safeco Ins. Co. of America v. Burr*,
551 U.S. 47, 56-60 (2007) .......... 11

*Sessa v. Trans Union, LLC*,
74 F.4th 38, 42-43 (2d Cir. 2023) .......... 7

*Thompson v. San Antonio Retail Merchants Ass'n*,
682 F.2d 509, 513-14 (5th Cir. 1982) .......... 9, 10

**Statutes**

15 U.S.C. § 1681i(a)(1)(A) .......... 4, 7, 12

15 U.S.C. § 1681i(a)(6)(A) .......... 4, 9, 12

15 U.S.C. § 1681i(a)(2)(A) .......... 7

15 U.S.C. § 1681n .......... 9

15 U.S.C. § 1681o .......... 9

**Rules**

Fed. R. Civ. P. 56(a) .......... 6

Rule 56 .......... 9, 12

## I - PRELIMINARY STATEMENT

Plaintiff opposes summary judgment on two distinct claims: whether Trans Union conducted a reasonable reinvestigation under 15 U.S.C. § 1681i(a)(1)(A), and whether it complied with 15 U.S.C. § 1681i(a)(6)(A) in notifying Plaintiff of the results. Plaintiff narrows his focus to a specific, documentary dispute over the ELAN tradeline's 'Account Closed by Consumer' remark and the separate dispute concerning the method of results delivery. Plaintiff does not contend that the existence of a dispute alone proves a violation, that Trans Union failed to initiate any reinvestigation, or that the ELAN closure remark has been shown to alter a credit score.

## II - FACTUAL BACKGROUND

The December 20, 2024 Trans Union disclosure reported the ELAN account as 'Account Closed by Consumer.' Plaintiff's January 2, 2025 dispute challenged that characterization. ELAN's February 15, 2024 letter states that ELAN elected to close an account effective February 13, 2024. Plaintiff authenticated the letter and discussed the discrepancy at his deposition. Plaintiff's Deposition ("Dep.") 156:13-157:19; Defendant's Local Civil Rule 56.1 Statement ("DEF. 56.1 STMT.") ¶ 44; Defendant's Exhibit ("Def Ex.") 12. The ELAN letter was first furnished to Trans Union through counsel in March 2026, after the disputed January 2025 reinvestigation; Plaintiff does not assert that Trans Union possessed it in January 2025. The differently masked account identifiers refer to the same ELAN account, as demonstrated by Plaintiff's sworn affidavit, supplemental declaration, and supporting documentary evidence. Pirzinger ELAN Aff. ¶¶ 11-12; Pirzinger Supp. Decl. ¶¶ 2-5; Ex. D.

Plaintiff's December 26, 2024 correspondence revoked consent to electronic communications. His January 2, 2025 dispute expressly reiterated that revocation, directing that reinvestigation results be mailed to his stated address and transmitted by no other means. The dispute further revoked any prior authorizations for alternative delivery, expressly identifying email, electronic portals, and telephone communications. See Def. Ex. 4-5; Second Amended Complaint Exhibit Index ("SAC") ECF No. 35 at 3-36, Ex. A-B. Although Trans Union asserts that it received the January 2 dispute on January 9, 2025 DEF. 56.1 STMT. ¶ 27, Federal Express delivery records establish delivery on January 6, 2025, accompanied by a delivery acknowledgment bearing the signature of Y. Johnson. SAC ECF No. 35 at 30, Ex. C. Trans Union admits receiving and processing the January dispute and sending ACDVs. DEF. 56.1 STMT. ¶¶ 27, 34-35. Trans Union's January 8, 2025 "Request Unclear" letter bears the reference "Re: Dispute Status." DEF. 56.1 STMT. ¶¶ 30-32. Plaintiff's December 26, 2024 correspondence concerned revocation of electronic communication consent and did not identify any credit-reporting dispute. By contrast, Plaintiff's January 2, 2025 correspondence expressly disputed information in his credit report and, according to the Federal Express delivery records, had been delivered to Trans Union on January 6, 2025. SAC ECF No. 35 at 30, Ex. C.

Defendant's DEF. 56.1 STMT. ¶ 36 asserts that results were mailed on or about January 23, 2025, whereas DEF. 56.1 STMT. ¶ 37 expressly acknowledges electronic transmission. Plaintiff attests under penalty of perjury that he did not receive the January 23, 2025 reinvestigation results by postal mail. See Pirzinger Decl. ¶¶ 2-3; Def. Ex. 8 ECF No. 73-8 at 2-17. Whether a properly addressed paper notice was actually mailed requires assessment of the evidence of mailing, not merely whether a copy of the results was generated.

The record contains evidence that Plaintiff applied for vehicle financing following Trans Union's January 2025 reinvestigation, that Mercedes-Benz identified credit-score and credit-profile factors in its financing decision, and that Plaintiff did not obtain the financing requested. Plaintiff's deposition identifies the specific credit characteristics relied upon by the lender, including reported balances and payment-history factors that Plaintiff contends were disputed.

Plaintiff testified to stress, anxiety, and emotional distress; treatment began approximately February or March 2026; he had not previously sought therapy; and he attended sessions every two or three weeks as of the deposition. Dep. 116:15-120:21.

## III - SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court views the evidence and draws all justifiable inferences in the nonmovant's favor, while conclusory allegations and speculation cannot substitute for evidence sufficient to establish a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-52, 252-56 (1986). Where the nonmovant bears the burden of proof at trial, the nonmovant must identify evidence sufficient to establish each essential element of the claim, including injury and causation where required by the substantive law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986).

## IV - GENUINE ISSUES OF MATERIAL FACT CONCERNING THE REINVESTIGATION

The challenged remark concerns who elected to close the account, a factual proposition capable of objective verification. Trans Union's consumer report attributed closure to Plaintiff, whereas ELAN's February 15, 2024 correspondence states that ELAN elected to close the

account effective February 13, 2024. Dep. 156:13-157:19; DEF. 56.1 STMT. ¶ 44; Ex. 12 ECF No. 73-12 at 2. The differently masked account identifiers refer to the same ELAN account, as established by Plaintiff's sworn affidavit, supplemental declaration, and supporting documentary evidence. Pirzinger ELAN Aff. ¶¶ 11-12; Pirzinger Supp. Decl. ¶¶ 2-5; Ex. D.

Under 15 U.S.C. § 1681i(a)(1)(A), a consumer reporting agency receiving notice of a dispute must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate. The Second Circuit has recognized that an actionable reporting inaccuracy must be objectively and readily verifiable. *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269-70 (2d Cir. 2023); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42-43 (2d Cir. 2023). The disputed account-closure designation concerns a historical fact capable of verification, rather than an unresolved legal question.

Plaintiff expressly disputed the reported "Account Closed by Consumer" designation, stating that he did not close the account. Def. Ex. 7 ECF No. 73-7 at 2, the ACDV upon which Trans Union relies as evidence of its reinvestigation, describes the dispute as "Claims Account Closed" and requests verification of the Compliance Condition Code, Special Comment Code, and Date Closed. Def. Ex. 7 ECF No. 73-7 at 2. The ACDV does not expressly communicate Plaintiff's specific allegation that he did not initiate the account closure. The distinction is significant because verification that an account was closed does not necessarily resolve which party elected to close it.

15 U.S.C. § 1681i(a)(2)(A) requires a consumer reporting agency to provide the furnisher with notice of the dispute, including all relevant information regarding the dispute received from the consumer. The content of Def. Ex. 7, ECF No. 73-7 at 2 is therefore relevant to evaluating the reasonableness of Trans Union's reinvestigation under § 1681i(a)(1)(A). The ACDV offered

by Defendant does not itself demonstrate that Plaintiff's specific allegation concerning who initiated the account closure was communicated to the furnisher.

Trans Union acknowledges transmitting ACDVs, receiving furnisher responses, and updating the tradelines. DEF. 56.1 STMT. ¶¶ 34-35. Plaintiff does not contend that reliance on a furnisher's verification is categorically unreasonable or that Trans Union possessed ELAN's February 15, 2024 correspondence during the January 2025 reinvestigation. Rather, Plaintiff contends that the discrepancy between the specific allegation raised in his dispute and the description reflected in Defendant's ACDV, together with the resulting verification of the challenged tradeline, raises a genuine issue of material fact concerning whether Trans Union's reinvestigation reasonably addressed the particular factual inaccuracy Plaintiff identified.

## V - GENUINE ISSUES OF MATERIAL FACT CONCERNING NOTIFICATION OF REINVESTIGATION RESULTS

Although Defendant asserts in its Rule 56.1 Statement ¶ 36 that it mailed the January 23, 2025 reinvestigation results, the supporting Tucker Declaration ("Tucker Decl.") ¶ 42, ECF No. 72 at 7, does not expressly attest that those results were deposited in the United States mail, identify a postal mailing date, describe a mailing procedure, or identify a mailing record. Tucker Decl. ¶ 42, ECF No. 72 at 7, states only that the results were sent, while Tucker Decl. ¶ 43, ECF No. 72 at 7, expressly acknowledges electronic transmission. Plaintiff attests under penalty of perjury that he did not receive the results by postal mail. See Pirzinger Decl. ¶¶ 2-3. Defendant's assertion of postal mailing must therefore be evaluated against the actual evidence of dispatch.

Def. Ex. 9, ECF No. 73-9 at 2, expressly records that the January 23, 2025 reinvestigation results were transmitted by electronic mail. Although the exhibit also contains a field labeled "Mailed To Consumer At," that field identifies Plaintiff's postal address without independently

documenting physical mailing. Tucker Decl. ¶¶ 42-43 likewise do not expressly identify a postal mailing date, mailing procedure, or record of physical dispatch. The distinction between a recorded electronic transmission and an asserted postal mailing is material to determining whether Defendant complied with the notification requirements of 15 U.S.C. § 1681i(a)(6)(A).

The January 2, 2025 dispute contains a renewed express revocation of electronic consent and an instruction that reinvestigation results be delivered exclusively by postal mail. Def. Ex. 5, ECF No. 73-5 at 3. This provides documentary evidence contrary to Defendant's assertion in DEF. 56.1 STMT. ¶¶ 37-38 that Plaintiff did not again attempt to revoke consent to electronic communications. Plaintiff's sworn denial of postal receipt, Defendant's documented electronic transmission, the absence of express proof of physical dispatch in the cited declaration, and Plaintiff's repeated written revocations collectively provide an evidentiary basis for disputing Defendant's assertion that compliant written notice was mailed. Plaintiff respectfully submits that these disputed facts must be evaluated under Rule 56, with all reasonable inferences drawn in his favor.

**VI - DAMAGES**

The Fair Credit Reporting Act ("FCRA") provides remedies for both willful and negligent violations. Under 15 U.S.C. § 1681n, a consumer may recover statutory damages for a willful violation, subject to the applicable statutory requirements. Under 15 U.S.C. § 1681o, a consumer may recover actual damages sustained as a result of a negligent violation.

The Second Circuit recognizes that actual damages under the Fair Credit Reporting Act may include humiliation and mental distress even without out-of-pocket economic loss. *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 474-75 (2d Cir. 1995) (citing *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995), and *Thompson v. San*

*Antonio Retail Merchants Ass'n*, 682 F.2d 509, 513-14 (5th Cir. 1982)). Such damages require proof that the claimed injury resulted from the defendant's actionable conduct. *Casella*, 56 F.3d at 475. In *Guimond*, the Ninth Circuit rejected the proposition that a denial of credit is a prerequisite to FCRA recovery, while *Thompson* illustrates that a plaintiff's testimony concerning emotional distress, considered alongside the circumstances of inaccurate reporting and credit denials, may support an award of actual damages.

The record contains evidence that Plaintiff applied for vehicle financing following Trans Union's January 2025 reinvestigation, that Mercedes-Benz identified credit-score and credit-profile factors in its financing decision, and that Plaintiff did not obtain the financing requested. Plaintiff's deposition identifies the specific credit characteristics relied upon by the lender, including reported balances and payment-history factors that Plaintiff contends were disputed. Dep. 121-123, 128-130, 143-145.

Plaintiff's sworn deposition testimony provides evidence of emotional distress associated with his dispute with Trans Union. When questioned concerning his previously disclosed stress, anxiety, and emotional distress arising from Trans Union's alleged statutory violations and resulting credit denials, Plaintiff confirmed that he had sought psychological treatment. Dep. 116-117. Plaintiff further testified that, although he had experienced stress and anxiety previously, he had not experienced them to the same degree before his disputes with Trans Union and had never previously sought therapy. Dep. 118. Plaintiff explained the time required to seek professional help and testified that he continued attending therapy approximately every two or three weeks. Dep. 119.

This sworn testimony goes beyond a generalized assertion of emotional distress. Plaintiff identifies specific circumstances concerning the increased severity of his stress and anxiety, his

subsequent decision to seek psychological treatment, and his continued attendance at therapy. Dep. 116:15-120:21. Considered together with the documentary evidence and circumstances of Defendant's alleged statutory violations, this testimony supports Plaintiff's claim for actual damages under the FCRA and provides an evidentiary basis for a reasonable factfinder to assess whether Defendant's actionable conduct caused Plaintiff's emotional distress. At summary judgment, the Court must consider that testimony and the surrounding record in the light most favorable to Plaintiff, drawing all reasonable inferences supported by the evidence in his favor.

**VII - <u>WILLFUL VIOLATIONS OF THE FCRA</u>**

Willfulness under the FCRA encompasses knowing violations and reckless disregard of statutory obligations. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 56-60 (2007). Plaintiff's willfulness claim rests on Trans Union's receipt of repeated written revocations of Plaintiff's consent to electronic communications and Trans Union's subsequent transmission of the reinvestigation results by electronic mail.

Plaintiff first revoked electronic consent in writing on December 26, 2024, expressly directing that future communications, including dispute results, be transmitted exclusively by postal mail. Def. Ex. 4, ECF No. 73-4 at 2-12. Plaintiff reiterated that revocation and paper-mail instruction in his January 2, 2025 dispute, delivered to Trans Union by Federal Express on January 6, 2025. See SECOND AMENDED COMPLAINT EXHIBIT INDEX, ECF No. 35 at 30 (FedEx Proof of Delivery). Notwithstanding these written instructions, Defendant's own Exhibit 9, ECF No. 73-9 at 2, expressly records that the January 23, 2025 reinvestigation results were transmitted by electronic mail. Tucker Decl. ¶ 43.

Although Defendant's Exhibit 9, ECF No. 73-9 at 2, contains a field labeled "Mailed To Consumer At," identifying Plaintiff's postal address, that field does not independently establish

actual dispatch through the United States mail. Tucker Decl. ¶¶ 42-43 likewise do not expressly identify a postal mailing date, mailing procedure, or record of physical dispatch. Viewed together, Plaintiff's repeated written revocations, documented delivery of the renewed instructions, Defendant's recorded electronic transmission, and the disputed evidence of postal mailing raise a genuine issue of material fact concerning whether Defendant knowingly or recklessly disregarded the notification requirements of 15 U.S.C. § 1681i(a)(6)(A). That provision permits notification by means other than postal mail only when authorized by the consumer for that purpose. Plaintiff contends that his express written revocations withdrew any previously granted authorization for electronic delivery before Defendant transmitted the January 23, 2025 reinvestigation results by electronic mail. The issue is therefore not merely whether Defendant transmitted the results, but whether it did so through a method authorized under the statute after receiving Plaintiff's written revocations.

**VIII - <u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Trans Union LLC's Motion for Summary Judgment. The record presents genuine disputes of material fact concerning the accuracy of the ELAN account-closure characterization, the reasonableness of Defendant's reinvestigation under 15 U.S.C. § 1681i(a)(1)(A), and Defendant's compliance with the reinvestigation-notification requirements of 15 U.S.C. § 1681i(a)(6)(A). Defendant's own exhibits, Plaintiff's written correspondence, documentary evidence of delivery, and sworn testimony provide evidentiary grounds for Plaintiff's opposition. Plaintiff respectfully requests that these disputed matters be resolved under the applicable Rule 56 standard, with all reasonable inferences drawn in his favor.

Respectfully submitted,

Dated: October 30, 2026

*Jeffrey Thomas Pirzinger*

Jeffrey Thomas Pirzinger
135 Beechwood Dr
Mamaroneck, NY 10543
T: (914) 497-1104
F: (914) 412-0456
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)**

JEFFREY THOMAS PIRZINGER, Case No. 7:25-cv-01760-PMH

Plaintiff,

vs.

TRANS UNION LLC,

Defendant.

## PLAINTIFF'S RESPONSES TO DEFENDANT'S LOCAL CIVIL RULE 56.1 STATEMENT

**¶ 1. Defendant's assertion:** On March 3, 2025, Plaintiff filed a Complaint against Trans Union for alleged violations of 15 U.S.C. § 1681i(a)(1)(A), 15 U.S.C. § 1681o(a)(6)(A) and 15 U.S.C. § 1681e(b). See generally ECF No. 1.

**Plaintiff's response:** Admitted that Plaintiff filed the Complaint on March 3, 2025, asserting claims against Defendant Trans Union LLC under 15 U.S.C. §§ 1681i(a)(1)(A), 1681i(a)(6)(A), and 1681e(b). Defendant's citation to 15 U.S.C. § 1681o(a)(6)(A) is incorrect. The Complaint identifies 15 U.S.C. § 1681i(a)(6)(A) as the statutory basis for Count II. ECF No. 1 ¶¶ 17-26.

**¶ 2. Defendant's assertion:** On April 23, 2025, Plaintiff filed a First Amended Complaint against Trans Union, which alleged the same FCRA violations as the original Complaint but included additional information regarding certain alleged inaccuracies. See generally ECF Nos. 9, 10.

**Plaintiff's response:** Admitted that Plaintiff filed the First Amended Complaint on April 23, 2025, asserting the same three FCRA claims as the original Complaint under 15 U.S.C. §§ 1681i(a)(1)(A), 1681i(a)(6)(A), and 1681e(b), and providing additional factual detail concerning certain disputed inaccuracies. ECF Nos. 9, 10.

**¶ 3.** Admitted.

**¶ 4.** Admitted.

**¶ 5.** Admitted.

**¶ 6. Defendant's assertion:** On December 9, 2025, Plaintiff filed a Second Amended Complaint alleging that Trans Union violated 15 U.S.C. § 1681i(a)(1)(A) for failing to conduct a reinvestigation and 15 U.S.C. § 1681i(a)(6)(A) for failing to provide reinvestigation results. In this Second Amended Complaint, Plaintiff listed each disputed item including what "Trans Union Reported," "Plaintiff's Correct Information" and the "Basis of Dispute." See generally ECF No. 34.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that he filed the Second Amended Complaint on December 9, 2025, asserting claims under 15 U.S.C. §§ 1681i(a)(1)(A) and 1681i(a)(6)(A), and identifying disputed items under the headings "Trans Union Reported," "Plaintiff's Correct Information," and "Basis of Dispute." Plaintiff disputes Defendant's characterization of the § 1681i(a)(1)(A) claim insofar as it suggests that the claim is limited to a complete failure to conduct a reinvestigation. Plaintiff's claim encompasses Defendant's alleged failure to conduct a reasonable reinvestigation of the disputed information, as required by § 1681i(a)(1)(A). ECF No. 34.

**¶ 7.** Admitted.

**¶ 8.** Admitted.

**¶ 9. Defendant's assertion:** Plaintiff's Second Amended Complaint states that on January 8, 2025, Trans Union sent Plaintiff a letter with the subject line "Re: Dispute Status" stating that Plaintiff submissions were "illegible and interminable." Plaintiff states that the letter did not mention anything regarding the thirty-five disputed items. See id. at ¶ 16.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that his Second Amended Complaint describes Defendant's January 8, 2025 correspondence and alleges that the letter did not address the 35 disputed items. Plaintiff notes that Defendant's assertion incorrectly uses the word "interminable" rather than "undeterminable." ECF No. 34 ¶ 16; Def. Ex. 6.

¶ **10.** Admitted.

¶ **11.** Admitted.

¶ **12.** Admitted.

¶ **13.** Admitted.

¶ **14.** Admitted.

¶ **15.** Admitted.

¶ **16.** Admitted.

¶ **17.** Admitted.

¶ **18. Defendant's assertion:** In Plaintiff's deposition, he clarified the basis for this dispute, which is that ELAN was stealing the identity of Jeffrey, the consumer, and distributing the information to Trans Union, "which is an inaccuracy." See Ex. 2 at 26:1-6. In other words, ELAN is an identity thief. See id. at 108:1-10 ("I'm sorry. Who was the identity thief?" "[Elan] is reporting that Jeffrey Pirzinger opened an account; that's why it's -- that's why it is appearing in the Trans Union system, because that's what Elan is communicating; when in theory, it's not Jeffrey Pirzinger's account; it's Elan's account. They're the owner.").

**Plaintiff's response:** Admitted that Plaintiff gave the quoted deposition testimony. Plaintiff disputes Defendant's characterization of that testimony insofar as it purports to establish that the sole basis of Plaintiff's disputed credit-reporting inaccuracies was an allegation of identity theft by ELAN. Ex. 2 at 26:1-6, 108:1-10.

¶ **19.** Admitted.

¶ **20. Defendant's assertion:** Plaintiff further testified that "these accounts allegedly reside in Elan Financial Corporation entity, and only they have control and power to make changes into their records." Id. at 20:23-25 - 21:1-2. Therefore, according to Plaintiff, because the "name 'Jeffrey Pirzinger' is not an agent for Elan Financial Fidelity. They have no power, no control, no authority,

no nothing." Id. at 21:3-5. Plaintiff further testified that "its an impossibility for Jeffrey Pirzinger to open the account, if they don't have access or control to their systems, books, ledgers, computers." Id. at 21:12-17; see also 25:25-26:6 ("If anyone opened the account, it was Elan Financial. Therefore, the theory was that Elan Financial was stealing the identity of Jeffrey Thomas Pirzinger, and distributing the information to Trans Union, which is an inaccuracy, because Jeffrey Thomas Pirzinger, or Jeffrey Pirzinger here, could not have opened the account on Elan Financial's books.").

**Plaintiff's response:** Admitted that Plaintiff gave the quoted deposition testimony. Plaintiff disputes any characterization of that testimony as establishing that his credit-reporting disputes were limited to allegations concerning account ownership, authority to open accounts, or identity theft. Ex. 2 at 20:23-21:17, 25:25-26:6.

**¶ 21.** Admitted.

**¶ 22. Defendant's assertion:** On November 22, 2024, in response to the November 2024 Letter disputing the ELAN account, Trans Union in accordance with its policies and procedures, reviewed Plaintiff's dispute, conducted a reinvestigation and sent an ACDV to ELAN asking to verify the account. In response, ELAN verified its reporting of the account and Trans Union sent Plaintiff the reinvestigation results on December 4, 2024. A copy of the reinvestigation and Trans Union's response was mailed to Plaintiff, a true and correct copy of which is attached hereto as Exhibit 3.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that Defendant represents that it transmitted an ACDV to ELAN, received a verification response, and generated reinvestigation results dated December 4, 2024. Plaintiff disputes Defendant's characterization that these actions necessarily constituted a reasonable reinvestigation or established compliance with its obligations under the FCRA. Plaintiff further does not admit that the referenced reinvestigation results were actually deposited in the mail or received by Plaintiff merely because Defendant produced a copy of the correspondence. See Ex. 3.

¶ **23.** Admitted.

¶ **24. Defendant's assertion:** On December 26, 2024, Plaintiff mailed a "Revocation of Consent" Letter to Trans Union, which was received on January 7, 2025 (the "December 2024 Letter"), a true and correct copy of which is attached hereto as Exhibit 4.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that he sent a Revocation of Consent dated December 26, 2024, to Defendant. Plaintiff disputes Defendant's assertion that the revocation was received on January 7, 2025. The FedEx delivery confirmation establishes that the correspondence was delivered on December 30, 2024, and signed for by G. Grey. ECF No. 35, at 28.

¶ **25.** Admitted.

¶ **26.** Admitted.

¶ **27. Defendant's assertion:** On January 2, 2025, Plaintiff mailed written correspondence to Trans Union, which was received on January 9, 2025 (the "January 2025 Letter"). A true and correct copy of the January 2, 2025, Dispute is attached hereto as Exhibit 5.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that he mailed written correspondence dated January 2, 2025, to Defendant. Plaintiff disputes Defendant's assertion that the correspondence was received on January 9, 2025. The FedEx delivery confirmation establishes that the correspondence was delivered on January 6, 2025, and signed for by Y. Johnson. ECF No. 35, at 30.

¶ **28. Defendant's assertion:** In his January 2025 Letter, Plaintiff alleges that 35 items appearing on his Trans Union credit report are inaccurate, without including any explanation as to why these items are inaccurate or how they should be reporting. See id. Specifically, Plaintiff disputed the ELAN account (417903000929****), the TBOM-FORTIVA account (765650209727****) and the TD Bank account (***1360). See id.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that his January 2, 2025 correspondence disputed 35 items concerning the ELAN, TBOM-FORTIVA, and TD Bank accounts. Plaintiff disputes Defendant's assertion that the correspondence provided no explanation of the alleged inaccuracies. The dispute letter presented the 35 disputed items in a table containing five columns: "Disputed Item Number," "Furnisher," "Account Number," "Inaccurate Item," and "Reason (why the item was inaccurate)." The correspondence thus identified the specific information challenged and provided a stated reason for each dispute. Ex. 5.

**¶ 29.** Admitted.

**¶ 30. Defendant's assertion:** On January 8, 2025, in response to the December 26, 2024, Revocation of Consent Letter, Trans Union, in accordance with its policies and procedures, reviewed Plaintiff's Letter, determined there was not enough identifying information to process the request, and sent Plaintiff a "Request Unclear Letter," a true and correct copy of which is attached hereto as Exhibit 6.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that Defendant issued a January 8, 2025 letter bearing the reference "Re: Dispute Status" and stating that it was unable to process a request. Def. Ex. 6. Plaintiff disputes Defendant's assertion that the letter responded to his December 26, 2024 revocation of electronic consent, that the revocation lacked sufficient identifying information, and that Defendant acted in accordance with its policies and procedures. Plaintiff testified that the December 26 correspondence was not a dispute and expressly rejected Defendant's suggestion that the January 8 letter responded to that correspondence. Dep. 62:12-25. The December 26 correspondence expressly revoked consent to electronic communications, whereas Plaintiff's January 2, 2025 correspondence disputed credit-reporting information and was delivered by FedEx on January 6, 2025. Def. Exs. 4-6; ECF No. 35, at 30.

¶ **31. Defendant's assertion:** Trans Union's response to Plaintiff's letter states that "After reviewing your correspondence, we are unable to process your request because we were unable to determine the nature of your request or your request was illegible." See id.

**Plaintiff's response:** Admitted that Defendant's January 8, 2025 correspondence contains the quoted statement. Def. Ex. 6. Plaintiff does not admit that the statement establishes which of Plaintiff's prior communications prompted Defendant's response or that either communication was illegible or insufficiently clear.

¶ **32. Defendant's assertion:** This Letter was in direct response to Plaintiff's December 26, 2024, Correspondence, not in response to Plaintiff's January 2, 2026, dispute. See Exs. 5, 6.

**Plaintiff's response:** Disputed. Plaintiff expressly testified that he understood Defendant's January 8, 2025 letter, bearing the reference "Re: Dispute Status," to concern his January 2, 2025 dispute rather than his December 26, 2024 revocation of electronic consent. When asked whether the January 8 letter could have responded to the December 26 correspondence, Plaintiff answered, "No, because the December 26th communication was not a dispute." Dep. 62:12-25. Plaintiff's January 2 dispute was delivered by FedEx on January 6, 2025. ECF No. 35, at 30.

¶ **33. Defendant's assertion:** Plaintiff confirmed receipt of the January 8, 2025, Request Unclear Letter. See ECF No. 34 at ¶¶ 16-18 ("Plaintiff contacted Trans Union by telephone after receiving the January 8th letter.").

**Plaintiff's response:** Admitted that Plaintiff received Defendant's January 8, 2025 "Request Unclear" letter. To clarify the chronology, the telephone communication referenced in Plaintiff's Second Amended Complaint occurred on July 1, 2025, after Plaintiff filed his original complaint on March 3, 2025. See ECF No. 35, at 35.

¶ **34. Defendant's assertion:** On January 9, 2025, after receiving Plaintiff's January 2025 Letter, Trans Union, in accordance with its policies and procedures, initiated a reinvestigation of the

disputed reporting of the ELAN, TBOM-FORTIVA and TD Bank accounts. A true and correct copy of the ACDV responses are attached hereto as Exhibit 7.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits only that Defendant's Exhibit 7 contains ACDV records concerning the ELAN, TBOM-FORTIVA, and TD Bank accounts. Plaintiff disputes Defendant's assertion that those records establish that Defendant conducted a reasonable reinvestigation of the specific inaccuracies identified in Plaintiff's January 2, 2025 dispute or acted in accordance with its policies and procedures. The existence of ACDV records does not, standing alone, establish that Defendant reasonably investigated the particular information challenged by Plaintiff. Def. Exs. 5, 7. Plaintiff further notes that his January 2, 2025 dispute was delivered by FedEx on January 6, 2025, before Defendant's asserted January 9 initiation date. ECF No. 35, at 30.

**¶ 35. Defendant's assertion:** ELAN, TBOM-FORTIVA, and TD Bank responded to Trans Union's ACDV request. ELAN updated the "Rating" and the "Historical Trended Data." TBOM-FORTIVA updated the "Date Updated," "Maximum Delinquency," "Rating" and "Historical Trended Data." TD Bank updated the "Date Updated," "High Balance," "Remarks," "Maximum Delinquency," "Rating," and "Historical Trended Data." See id.

**Plaintiff's response:** Admitted that Defendant's Exhibit 7 reflects furnisher responses and the identified data-field updates. Disputed insofar as Defendant suggests those responses establish a reasonable reinvestigation of the specific inaccuracies identified in Plaintiff's January 2, 2025 dispute. Def. Exs. 5, 7.

**¶ 36. Defendant's assertion:** On or about January 23, 2025, Trans Union sent the results of its reinvestigation via mail to Plaintiff within the 30-day period prescribed under FCRA § 1681i(a)(1)(A). A true and correct copy of the January 23, 2025, Reinvestigation Results is attached hereto as Exhibit 8.

**Plaintiff's response:** Disputed in part. Plaintiff acknowledges that Defendant's Exhibit 8 contains a copy of the January 23, 2025 reinvestigation results but disputes Defendant's assertion that those results were mailed to Plaintiff. Plaintiff declares under penalty of perjury that he has never received those results by United States postal mail, including as of October 27, 2026. See Pirzinger Decl. ¶¶ 2-3. Defendant's supporting declaration does not expressly attest that the results were deposited in the United States mail or identify a postal mailing date, mailing procedure, or mailing record. Tucker Decl. ¶¶ 42-43. Defendant's Exhibit 9 expressly records electronic transmission of the results; its field labeled "Mailed To Consumer At" identifies a postal address but does not independently document physical dispatch. Def. Ex. 9. The existence of the results document in Exhibit 8 does not, standing alone, establish that it was mailed to Plaintiff.

**¶ 37. Defendant's assertion:** Because Trans Union was unable to properly process Plaintiff's 'Revocation of Consent' correspondence, and because Plaintiff did not follow up with a second request to revoke electronic consent—despite confirming receipt of the initial response—Trans Union also sent Plaintiff his dispute results via electronic mail. A true and correct copy of Trans Union's CRS Documents is attached hereto as Exhibit 9.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that Defendant's Exhibit 9 records electronic transmission of the January 23, 2025 reinvestigation results. Plaintiff disputes Defendant's assertion that it was unable to properly process his December 26, 2024 revocation of electronic consent and that Plaintiff failed to submit a subsequent revocation. Defendant's own Exhibit 5 contains Plaintiff's January 2, 2025 written dispute, which expressly renewed his revocation of consent to electronic communications and directed that reinvestigation results be delivered exclusively by postal mail. Def. Exs. 4-5. Defendant nevertheless transmitted the results electronically. Def. Ex. 9; Tucker Decl. ¶ 43.

¶ **38. Defendant's assertion:** Plaintiff did not send Trans Union any additional disputes refuting the accuracy of the reported tradelines of the ELAN, TBOM-FORTIVA, and TD Bank accounts nor did Plaintiff attempt to revoke electronic consent again. (Doc. No. 34).

**Plaintiff's response:** Admitted that Plaintiff submitted no additional credit-reporting disputes after January 2, 2025. Disputed insofar as Defendant suggests Plaintiff never reiterated his December 26, 2024 revocation of electronic consent. Plaintiff expressly renewed that revocation and directed postal-mail delivery in his January 2, 2025 dispute. Plaintiff does not contend he submitted another revocation thereafter. Def. Exs. 4–5.

¶ **39.** Admitted.

¶ **40.** Admitted.

¶ **41.** Admitted.

¶ **42.** Admitted.

¶ **43.** Admitted.

¶ **44.** Admitted.

¶ **45.** Admitted.

¶ **46. Defendant's assertion:** Additionally, in Plaintiff's deposition, he stated that "It's not up to me to prove to Trans Union what was or was not accurate. All I had to do was raise a dispute, and then they had the obligation, according to Congress's creating of the Fair Credit Reporting Act." Ex. 2 at 34:24- 25 - 35:1-3. Plaintiff further testified that this "isn't about accuracy or inaccuracy; its about, did they perform a reasonable reinvestigation." Id. at 114:11-13.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that he made the quoted statements during his deposition. Dep. 34:24-35:3, 114:11-13. Plaintiff disputes any characterization of those statements as a concession that the accuracy of the challenged credit reporting is immaterial or that Plaintiff abandoned his allegations of inaccurate reporting. Plaintiff's testimony addressed

Defendant's statutory obligation to conduct a reasonable reinvestigation after receiving notice of disputed information, rather than placing the burden of conducting that reinvestigation upon the consumer.

¶ 47. **Defendant's assertion:** Plaintiff also testified that out of the 35 alleged inaccuracies, "I think it boiled down to three that I was able to provide clear documentation proving a potential inaccuracy." Id. at 72:19-22.

**Plaintiff's response:** Admitted that Plaintiff made the quoted statement during his deposition. Dep. 72:19-22. Plaintiff's testimony concerned the number of disputed items for which he was able to provide clear documentary evidence of a potential inaccuracy. It did not constitute a withdrawal of the remaining disputed items or an admission that those items were accurately reported.

¶ 48. **Defendant's assertion:** Plaintiff consistently confirmed in his deposition that he has no basis for 32 out of the 35 alleged inaccuracies. Specifically, Plaintiff confirmed that he is not alleging that the disputed items are actually inaccurate just merely alleging that he disputed them as inaccurate. See id. at 101:2-11. He further stated, "This isn't about accuracy or inaccuracy; it's about, did the perform a reasonable reinvestigation." Id. at 114:11-13. Plaintiff stated, "Because I had no basis, that's irrelevant to whether they were supposed to do a reasonable reinvestigation or not. The FCRA doesn't require a basis." Id. at 146:22-25.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that he made the quoted statements during his deposition but disputes Defendant's characterization that he consistently confirmed having no basis for 32 of the 35 disputed items or conceded that those items were accurately reported. At Dep. 101:2-11, Plaintiff explained that, although he initially disputed the reported information without independently proving each inaccuracy, he understood that he would need to establish at least one inaccuracy to prevail and testified that he subsequently obtained supporting evidence. Plaintiff's statements at Dep. 114:11-13 and 146:22-25 concerned Defendant's

obligation to conduct a reasonable reinvestigation upon receiving notice of disputed information. Plaintiff's testimony concerning the limits of his personal knowledge and available documentation did not constitute an admission that the challenged reporting was accurate or a withdrawal of his allegations of inaccuracy. See Dep. 101:2-11, 114:11-13, 146:22-25; Def. Ex. 12.

**¶ 49. Defendant's assertion:** Plaintiff's understanding of the FCRA largely comes from Facebook and YouTube. See id. at 55:8-15.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that he testified that he decided to pursue litigation after reviewing Facebook and YouTube. Plaintiff disputes Defendant's characterization that his understanding of the FCRA largely derives from those sources. The cited testimony concerns Plaintiff's decision to pursue litigation, not the extent or sources of his understanding of the FCRA. Dep. 55:8-15.

**¶ 50. Defendant's assertion:** Regarding the first disputed item (pay status: charged off), Plaintiff claims that the ELAN account is "not charged off." See ECF No. 34 at pgs. 6-7. When asked whether Plaintiff has any documentation or evidence to show that ELAN did not, in fact, charge-off this account, Plaintiff responded "No, I don't have access to their records. So I don't know what they have and what they don't have." Ex. 2 at 75:2-7. Plaintiff further stated that the "only documentation I provided to Trans Union was this dispute communication here; nothing more, nothing less. Everything else, they have from the furnisher, which was their obligation to clarify." Id. at 75:10- 14.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that his January 2, 2025 written dispute challenged the reported charge-off status of the ELAN account and that he made the quoted statements during his deposition. Plaintiff testified that he lacked access to ELAN's internal records and had not provided Trans Union with independent documentation establishing that the account was not charged off. Dep. 75:2-14. Plaintiff disputes any characterization of that

testimony as an admission that the reported charge-off status was accurate. His testimony distinguished his lack of access to the furnisher's records from Defendant's obligation to reasonably reinvestigate the disputed information. Def. Ex. 5; Dep. 75:2-14.

**¶ 51. Defendant's assertion:** Regarding the second disputed item (original charge off: $18,799), Plaintiff again claims that the ELAN account is "not charged off." See ECF No. 34 at p. 6. When asked the basis for his claim that the account was not charged off, Plaintiff stated "I don't have a basis for that claim." Ex. 2 at 79:19-22. He further stated that he does not have any documentation or evidence to show that Elan did not charge off the account. See id. at 75:2-7.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that his January 2, 2025 dispute challenged the reported original charge-off amount of $18,779 on the ELAN account, rather than the $18,799 stated in Defendant's assertion, and that he testified he lacked an independent factual basis or documentation establishing that the account had not been charged off. Dep. 75:2-7, 79:19-22. Plaintiff disputes any characterization of that testimony as an admission that the reported charge-off status or amount was accurate. Plaintiff's testimony concerned the limits of his personal knowledge and access to ELAN's account records, not an independent verification of the information reported by Defendant. Def. Ex. 5; Dep. 75:2-7, 79:19-22.

**¶ 52. Defendant's assertion:** Regarding the third disputed item (commentary: maximum delinquency of 120 days in 07/2024 and in 08/2024), Plaintiff claims that the information is inaccurate as he was not delinquent. See ECF No. 34 at p. 7. Plaintiff claims that because you cannot be "120 days late in two months," the reporting is pro se accurate, despite not providing any proof of payments made during this time period or any other document to show that the reporting is inaccurate. See Ex. 2 at 80:3-25 and 81:1-5.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that he challenged the reporting of a maximum delinquency of 120 days in both July and August 2024 and testified that he

did not possess documentation establishing payments during that period. Plaintiff disputes any characterization that his testimony established the accuracy of the reported delinquency. Plaintiff questioned how the same maximum delinquency could be reported in consecutive months and acknowledged that he lacked access to the underlying account information necessary to independently verify the reporting. Dep. 80:3-25, 81:1-5. Plaintiff's inability to produce payment records does not, standing alone, establish that the challenged information was accurate.

¶ **53. Defendant's assertion:** Regarding the fourth disputed item (high balance: $21,551 from 10/2024 to 11/2024), Plaintiff claims that the amount is inaccurate. See ECF No. 34 at p. 7. When asked the basis for his claim that the amount is inaccurate, Plaintiff stated "I didn't have a basis for the claim." Ex. 2 at 84:9-23.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that his January 2, 2025 dispute challenged the reported ELAN high balance of $21,551 and that he testified he did not know the correct balance and lacked an independent factual basis for alleging that the reported amount was inaccurate. Dep. 84:9-23. Plaintiff disputes any characterization of that testimony as an admission that the reported high balance was accurate. Plaintiff explained that he disputed the amount so that Defendant could investigate and determine its accuracy. Dep. 84:1-23.

¶ **54. Defendant's assertion:** Regarding the fifth disputed item (status: $21,551 past due), Plaintiff claims that the amount past due is inaccurate. See ECF No. 34 at p. 7. When asked the basis for his claim that the amount past due is inaccurate, Plaintiff stated "I don't have the basis right in front of me right now." Ex. 2 at 86:20-24.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that his January 2, 2025 dispute challenged the reported ELAN past-due amount of $21,551 and that he made the quoted statement during his deposition. Plaintiff disputes any characterization that the quoted statement, standing alone, fully represents his testimony. Plaintiff explained that he did not have his prior

written discovery responses available during questioning and did not wish to contradict information previously provided in writing. Plaintiff subsequently stated that he lacked a basis for this particular item while reiterating his reliance on the existing written discovery record. Dep. 85:19-87:25.

**¶ 55. Defendant's assertion:** When asked what the basis for the disputed items six through eight is, Plaintiff responded "I don't recall." Id. at 88:1-5, 88:6-13, 88:21-25-89:1.

**Plaintiff's response:** Admitted that Plaintiff testified he did not recall the bases for disputed items 6 through 8 at the time of his deposition. Plaintiff further explained that he would need to review his previously submitted written discovery materials to provide an accurate answer and offered to identify which disputed items were supported by those materials. Dep. 88:1-89:1.

**¶ 56. Defendant's assertion:** When asked what the basis for the disputed nine through twelve is (Ratings "5/2024 - 60," "6/2024 - 90," "7/2024- 120" and "8/2024 - 120"), Plaintiff responded, "I don't recall." Id. at 89:2-9. Additionally, when asked what other document Plaintiff would look at to support his allegations that the payments were not late, Plaintiff responded "I don't have - I definitely don't have any other basis, if it's not on the credit report, to show why it is not late." Id. at 89:11-16.

**Plaintiff's response:** Admitted that Plaintiff made the quoted statements during his deposition. Plaintiff further testified that he would need to review the credit report to determine whether a basis existed for the challenged payment ratings. Dep. 89:2-16.

**¶ 57.** Admitted.

**¶ 58. Defendant's assertion:** Regarding disputed items fifteen through sixteen, Plaintiff agreed that there is no basis for the claimed inaccuracies regarding the amount and further stated "the fact that the account was -- had no unpaid balance, and was not charged off." Id. at 90:22-25 - 91:1.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that he testified he lacked a basis for the allegations concerning the unpaid balance and charge-off status associated with

disputed items 15 and 16. Plaintiff disputes any characterization that he lacked a basis for challenging the reported designation that the ELAN account was closed by the consumer. Plaintiff expressly testified that he did not close the account and identified his sworn testimony and affidavit as the basis for that allegation. Dep. 90:2-91:1. Pirzinger ELAN Aff. ¶¶ 13-14.

ELAN's own correspondence subsequently produced in discovery states that ELAN elected to close the account effective February 13, 2024. Pirzinger ELAN Aff. Ex. C; Def. Ex. 12.

**¶ 59. Defendant's assertion:** Regarding the seventeenth disputed item (balance: $1,864), Plaintiff claims that the TBOM/FORTIVA account amount is inaccurate. See ECF No. 34 at p. 9. When asked the basis for the claim that the amount is inaccurate, Plaintiff responded, "I don't recall the basis." Ex. 2 at 91:7- 10. Additionally, when asked whether Plaintiff had any documentation saying the balance was lower than $1,864, Plaintiff responded, "Only if it exists on the credit report, nothing else." Id. at 91:7-15.

**Plaintiff's response:** Admitted that Plaintiff made the quoted statements during his deposition. Plaintiff further testified that he would need to review his previously submitted written materials to recall the basis for challenging the reported TBOM/FORTIVA balance of $1,864. Dep. 91:7-15.

**¶ 60.** Admitted.

**¶ 61.** Admitted.

**¶ 62.** Admitted.

**¶ 63.** Admitted.

**¶ 64.** Admitted.

**¶ 65.** Admitted.

**¶ 66. Defendant's assertion:** Regarding the twenty-fourth disputed item (terms: $416 per month), Plaintiff claims that the payment term amount for the TBOM/FORTIVA account is inaccurate. See

ECF No. 34 at p. 10. When asked the basis for this, Plaintiff responded "I don't know if I have a basis." Ex. 2 at 102:1-3.

**Plaintiff's response:** Admitted that Plaintiff testified that he did not know whether he had a basis for challenging the disputed monthly payment amount. Plaintiff notes that the cited deposition testimony identifies the amount as $461, rather than $416. Dep. 101:22-102:3.

**¶ 67.** Admitted.

**¶ 68. Defendant's assertion:** Regarding the twenty-sixth disputed item (remarks: closed by credit grantor), Plaintiff claims that the TD BANK USA/TARGET account commentary is inaccurate. See ECF No. 34 at p. 11. When asked the basis for this, Plaintiff responded "I didn't close the account." Ex. 2 at 102:25 - 103:1.

**Plaintiff's response:** Admitted that Plaintiff challenged the reported "Closed by credit grantor" remark concerning the TD BANK USA/TARGET account and testified that he did not close the account. Dep. 102:13-103:1.

**¶ 69.** Admitted.

**¶ 70.** Admitted.

**¶ 71.** Admitted.

**¶ 72.** Admitted.

**¶ 73. Defendant's assertion:** During Plaintiff's deposition, he was asked whether he sought to amend his complaint to withdraw the allegations that he made without any sort of basis. Plaintiff responded "No, I did not do that, because I believe by that time, it would have been the fourth amended -- or third -- fourth rendition." Id. at 97:16-23. Plaintiff's belief is that under the Second Circuit, he only needs to prove at least one of the alleged inaccuracies that he is claiming in the Complaint. Id. at 99:8-12.

**Plaintiff's response:** Admitted that Plaintiff made the quoted statement concerning his decision not to amend the complaint again and testified regarding his understanding of the legal requirements applicable to his claims. Plaintiff further testified that he had previously identified three disputed items for which he believed supporting evidence existed and had communicated that position during the litigation. Dep. 97:16-99:23.

**¶ 74.** Admitted.

**¶ 75.** Admitted.

**¶ 76.** Admitted.

**¶ 77.** Admitted.

**¶ 78.** Admitted.

**¶ 79. Defendant's assertion:** According to Plaintiff's testimony, the information in the above letter provides the basis for three of his disputed claims. He has no basis for the other 32 disputed claims. See Ex. 2 at 72:19-22.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that he testified that, of the 35 disputed items, he was able to provide clear documentation demonstrating a potential inaccuracy for three items. Dep. 72:19-23. Plaintiff disputes Defendant's characterization that this testimony establishes he had no basis whatsoever for the remaining 32 disputed items. The cited testimony addresses the extent of the documentary evidence Plaintiff was able to provide, not an affirmative determination that the remaining reported information was accurate. Dep. 72:15-25.

**¶ 80. Defendant's assertion:** Besides the ELAN letter, Plaintiff has not produced any other documents to support his allegations. See Exs. 10-12.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that the ELAN correspondence was produced during discovery and that he did not produce additional creditor-originated account records substantiating the disputed balances and payment histories. Plaintiff

disputes Defendant's broader assertion that no other documents support his allegations. Defendant's own exhibits include Plaintiff's January 2, 2025 written dispute identifying 35 challenged items, the consumer-report information at issue, and records concerning Defendant's handling of that dispute and transmission of the reinvestigation results. Def. Exs. 5, 7-9. These documents are relevant to Plaintiff's claims concerning the adequacy of Defendant's reinvestigation and the manner in which the results were communicated.

**¶ 81. Defendant's assertion:** Plaintiff claims that, as a consequence of Trans Union's alleged statutory violations and resulting credit denials, he has experienced stress, anxiety, and emotional distress, but has not sought medical or mental health treatment for these injuries. A true and correct copy of Plaintiff's Answers to Interrogatories is attached hereto as Exhibit 13.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that his interrogatory answers described stress, anxiety, and emotional distress allegedly resulting from Defendant's statutory violations and related credit denials, and stated that he had not sought medical or mental-health treatment. Plaintiff disputes Defendant's assertion insofar as it represents that he has not sought such treatment. At his June 8, 2026 deposition, Plaintiff testified under oath that he began psychological treatment approximately February or March 2026, described his symptoms and their increased severity, and explained his decision to seek professional treatment. Dep. 116:15-120:21. Plaintiff further testified that he continued attending therapy approximately every two or three weeks. Id.

**¶ 82.** Admitted.

**¶ 83.** Admitted.

**¶ 84. Defendant's assertion:** Plaintiff provided one credit denial. On February 22, 2025, Plaintiff attempted to purchase a 2025 GLS450W4 Cirrus Silver Metallic Mercedes Benz at a purchase price of $95,865. See ECF No. 35 at p. 54.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that the record contains documentation concerning his February 22, 2025 application for financing in connection with the proposed purchase of a 2025 Mercedes-Benz GLS450W4, with a purchase price of $95,865. ECF No. 35, at 54. Plaintiff disputes Defendant's characterization insofar as the statement that Plaintiff "provided one credit denial" is intended to establish that Plaintiff experienced no other credit denials. The cited exhibit documents the identified transaction but does not, standing alone, establish the absence of other credit denials.

**¶ 85.** Admitted.

**¶ 86.** Admitted.

**¶ 87.** Admitted.

**¶ 88.** Admitted.

**¶ 89.** Admitted.

**¶ 90.** Admitted.

**¶ 91.** Admitted.

**¶ 92.** Admitted.

**¶ 93.** Admitted.

**¶ 94.** Admitted.

**¶ 95** Admitted.

**¶ 96.** Admitted.

**¶ 97. Defendant's assertion:** Plaintiff agreed that whether himself or ELAN closed the account has nothing to do with the proportion of balances to credit limits, too few accounts currently agreed as paid, and time since last delinquency, which were all reasons for the Mercedes denial. See id. at 160:17-25 - 161:1-3.

**Plaintiff's response:** Admitted that Plaintiff agreed during his deposition that the designation identifying whether Plaintiff or ELAN closed the account was not, on its face, related to the three specified financing-denial factors. Plaintiff further testified that an incorrectly reported charge-off balance could affect factors identified in the Mercedes-Benz denial letter. Dep. 160:17-161:12.

**¶ 98. Defendant's assertion:** Plaintiff testified that there is income that he received in 2024 that was not included in his IRS filing. See id. at 133:1-7. Additionally, Plaintiff testified that he makes roughly $200,000 a year but that he cannot provide any specific source of income for 2024. See id. at 132:5-7; 137: 19-20

**Plaintiff's response:** Admitted that Plaintiff testified that he received compensation in 2024 that was not included in his federal income-tax filing, that he characterized certain compensation as nontaxable, and that he could not identify specific sources of his 2024 income during the deposition. Plaintiff further testified that he did not have his income records before him and could not recall the income information supplied in the vehicle-financing application. Dep. 132:2-133:7, 134:20-135:6, 137:4-138:1.

**¶ 99.** Admitted.

**¶ 100. Defendant's assertion:** Plaintiff did not monitor his credit score regularly. Id. at 115:18-20.

**Plaintiff's response:** Admitted that Plaintiff testified he was not regularly monitoring his credit score at the time of his deposition. Plaintiff further testified that, before his disputes with Trans Union, he monitored his credit score frequently. Dep. 115:18-25.

**¶ 101. Defendant's assertion:** Plaintiff began seeing a therapist in February/March of 2026, nearly a year after filing this lawsuit, but did not include any evidence relating to his condition or treatment in his discovery responses. See id. at 116:20-25 - 117:1-19.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that he testified that psychological treatment began approximately February or March 2026, after the commencement of

this action, and that he had not provided treatment-related documentation in his discovery responses. Plaintiff disputes Defendant's assertion insofar as it suggests that the record contains no sworn evidence concerning Plaintiff's emotional distress or treatment. Plaintiff testified concerning stress and anxiety, the increased severity of those symptoms, his decision to seek professional treatment, and his continued attendance at therapy approximately every two or three weeks. Dep. 116:15-120:21.

**¶ 102. Defendant's assertion:** Plaintiff testified that he sees his therapist every two to three weeks. When asked whether he talks to his therapist about Trans Union specifically, Trans Union responded, "Probably not specifically about Trans Union, but the situation in general." Id. at 119:17-25. Plaintiff is not taking any medication for any of the emotional distress he is claiming. See id. at 118:11-13.

**Plaintiff's response:** Admitted that Plaintiff testified he attended therapy approximately every two or three weeks, stated that he probably did not discuss Trans Union specifically but discussed the situation generally, and testified that he was not taking medication for his claimed emotional distress. Dep. 118:11-13, 119:17-25. Plaintiff notes that Defendant's assertion incorrectly attributes the quoted response to Trans Union rather than Plaintiff.

**¶ 103. Defendant's assertion:** Trans Union conducted a reasonable reinvestigation into Plaintiff's January 2, 2025, dispute and sent the reinvestigation results within the time mandated by the FCRA. See Ex. 9 at Bates Labeled Pirzinger_Trans Union_Discovery_001533 - 001548.

**Plaintiff's response:** Disputed. Plaintiff disputes Defendant's assertion that it conducted a reasonable reinvestigation of the specific inaccuracies identified in Plaintiff's January 2, 2025 dispute or complied with the FCRA's requirements for communicating the reinvestigation results. Defendant's Exhibit 7 contains ACDV records, but those records do not, standing alone, establish that Defendant reasonably reinvestigated the particular information challenged by Plaintiff. Def.

Exs. 5, 7. Plaintiff expressly revoked consent to electronic communications on December 26, 2024, and reiterated that revocation in his January 2, 2025 dispute, directing that reinvestigation results be delivered exclusively by postal mail. Def. Exs. 4-5. Nevertheless, Defendant's own Exhibit 9 records electronic transmission of the January 23, 2025 reinvestigation results. Def. Ex. 9; Tucker Decl. ¶ 43. Plaintiff further declares under penalty of perjury that he has never received those results by postal mail. See Pirzinger Decl. ¶¶ 2-3.

**¶ 104. Defendant's assertion:** Trans Union reasonably relied on this information provided by ELAN, TBOM- FORTIVA, and TD Bank USA as the furnishers. See Exhibit 7.

**Plaintiff's response:** Disputed. Defendant's Exhibit 7 does not establish that its reliance on furnisher responses was reasonable. In particular, the ELAN ACDV does not expressly convey Plaintiff's allegation that the account was not closed by the consumer, instead requesting verification of account status, compliance condition code, special comment code, and date closed. Def. Exs. 5, 7.

**¶ 105. Defendant's assertion:** Trans Union maintains policies and procedures to process disputes and other correspondence from consumers related to their Trans Union consumer credit files. See Trans Union's Document Production, Bates Labeled Pirzinger_Trans Union_Discovery_001598 - 001613.

**Plaintiff's response:** Admitted that Defendant maintains written policies and procedures concerning the processing of consumer disputes and correspondence. Plaintiff does not admit that those policies and procedures comply with the FCRA or that Defendant properly followed them in processing Plaintiff's December 26, 2024 revocation of electronic consent and January 2, 2025 dispute.

¶ **106. Defendant's assertion:** Trans Union reviewed Plaintiff's December 2024 Letter and, due to the correspondence requested more information, which Plaintiff failed to provide. See Exs. 4, 5 and Ex. 2 at 47:8-13.

**Plaintiff's response:** Disputed. Plaintiff disputes Defendant's characterization that his December 26, 2024 correspondence was insufficient and that he failed to provide the information necessary to process his revocation of electronic consent. Plaintiff's December 26 correspondence expressly revoked consent to electronic communications and directed that future communications be transmitted exclusively by postal mail. Def. Ex. 4. Plaintiff reiterated that revocation and postal-mail instruction in his January 2, 2025 written dispute, which was delivered to Defendant by Federal Express on January 6, 2025. Def. Ex. 5; ECF No. 35, at 30. Defendant's January 8, 2025 letter, bearing the reference "Re: Dispute Status," stated that Defendant was unable to determine the nature of a request or that the correspondence was illegible. Def. Ex. 6. Plaintiff disputes that these circumstances establish that Defendant was unable to process his revocation or that Plaintiff failed to provide the necessary information.

¶ **107. Defendant's assertion:** Trans Union complied with its reasonable reinvestigation requirements under 15 U.S.C. § 1681i(a)(1)(A) of the FCRA after receiving Plaintiff's January 2025 Dispute. See Exs. 7, 8.

**Plaintiff's response:** Disputed. Plaintiff disputes Defendant's assertion that it complied with its obligation under 15 U.S.C. § 1681i(a)(1)(A) to conduct a reasonable reinvestigation of the specific inaccuracies identified in Plaintiff's January 2, 2025 written dispute. Defendant's Exhibit 7 contains ACDV records reflecting communications with the furnishers, and Exhibit 8 contains the January 23, 2025 reinvestigation results. Neither exhibit, standing alone, establishes that Defendant reasonably investigated the particular information challenged by Plaintiff. In particular, the ELAN ACDV does not expressly convey Plaintiff's specific allegation that the account was not closed by

the consumer, instead requesting verification of account status, compliance condition code, special comment code, and date closed. Def. Exs. 5, 7-8. Plaintiff disputes that the documented ACDV communications and resulting updates establish compliance with Defendant's statutory reinvestigation obligations.

**¶ 108. Defendant's assertion:** In fact, Plaintiff agreed that Trans Union complied with its reinvestigation requirements as he stated in his deposition that "Had I gotten that document [January 23, 2025 Reinvestigation Results], there probably wouldn't have been a lawsuit filed." Ex. 2 at 51: 5-6.

**Plaintiff's response:** Admitted in part; disputed in part. Plaintiff admits that he testified, "Had I gotten that document, there probably wouldn't have been a lawsuit filed." Dep. 51:5-6. Plaintiff disputes Defendant's characterization that this testimony constituted an agreement or admission that Defendant complied with its statutory reinvestigation obligations. Plaintiff's statement concerned his nonreceipt of the January 23, 2025 reinvestigation results and the effect that receiving those results might have had on his decision to file suit. Plaintiff did not testify that Defendant's reinvestigation was reasonable or that Defendant complied with 15 U.S.C. § 1681i(a)(1)(A). Dep. 51:1-6.

Respectfully submitted,

*Jeffrey Thomas Pirzinger*

Dated: October 30, 2026

Jeffrey Thomas Pirzinger
135 Beechwood Dr
Mamaroneck, NY 10543
T: (914) 497-1104
F: (914) 412-0456
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)**

JEFFREY THOMAS PIRZINGER,

Plaintiff,

vs.

TRANS UNION LLC,

Defendant.

Case No. 7:25-cv-01760-PMH

**DECLARATION OF JEFFREY THOMAS PIRZINGER**

I, Jeffrey Thomas Pirzinger, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. I am the Plaintiff in this action and make this declaration based upon my personal knowledge.
2. I have never received by United States postal mail the results of Trans Union LLC's January 2025 reinvestigation, which Defendant represents were issued on or about January 23, 2025.
3. As of October 30, 2026, I have not received those reinvestigation results by postal mail.

**I AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE FOREGOING REPRESENTATIONS ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF.**

Dated: October 30, 2026

Jeffrey Thomas Pirzinger
Jeffrey Thomas Pirzinger
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)**

| | | |
|---|---|---|
| JEFFREY THOMAS PIRZINGER, Plaintiff, | ) | Case No. 7:25-cv-01760-PMH |
| | ) | Hon. Philip M. Halpern |
| | ) | |
| v. | ) | |
| | ) | |
| TRANS UNION LLC, | ) | |
| Defendant. | ) | |
| | ) | |

# AFFIDAVIT

I, Jeffrey Thomas Pirzinger, declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the following statements are true and correct based upon my personal knowledge:

1. I am the Plaintiff in this action and reside at 135 Beechwood Dr., Mamaroneck, New York 10543.
2. I have personal knowledge of the matters stated in this affidavit and could testify to them if called as a witness.
3. On January 2, 2025, I sent a written dispute to Trans Union LLC ("TransUnion") concerning information appearing in my TransUnion consumer report.
4. The written dispute communication was sent by Federal Express with tracking number 771146841215.
5. My dispute concerned several items appearing in TransUnion consumer report dated December 20, 2024, report number 450079572-043.
6. Within this report was information furnished by ELAN FIN SVCS/FIDELITY, account ending in 0929 as displayed on the TransUnion consumer report.
7. The TransUnion consumer report dated December 20, 2024 that I received reports the remark associated with that account stating "Account Closed by Consumer."
8. A true and correct copy of the relevant page of that report is attached as Exhibit A.
9. On February 15, 2024, I received a letter from Elan Financial Services stating that Elan Financial Services had elected to close the account ending in 0853 effective February 13, 2024.
10. A true and correct copy of that letter is attached as Exhibit C.
11. The account appearing on the TransUnion report as ending in 0929 corresponds to the Elan Financial Services credit card account ending in 0853.
12. The Elan Financial Services letter references the same credit card account reported on my TransUnion consumer report.
13. I did not request, authorize, or instruct ELAN FIN SVCS/FIDELITY to close the account ending in 0929 (the same account ending in 0853 referenced in the Elan Financial Services letter).

14. I did not communicate to ELAN FIN SVCS/FIDELITY or any of its representatives a request that the account be closed.
15. In my January 2, 2025 dispute communication to TransUnion, I disputed the reported remark associated with that account.
16. After receiving the dispute communication, TransUnion issued a reinvestigation report dated January 23, 2025.
17. The reinvestigation report dated January 23, 2025 contains the remark "Account Closed by Consumer" associated with the ELAN FIN SVCS/FIDELITY account ending in 0929.
18. The phrase "Account Closed by Consumer" appears on both the December 20, 2024 consumer report and the January 23, 2025 reinvestigation consumer report.
19. A true and correct copy of the relevant page of the reinvestigation report is attached as Exhibit B.
20. If called to testify, I would testify truthfully to the facts stated herein.
21. The statements in this affidavit are based upon my personal knowledge.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 15 day of March, 2026, in New York.

Jeffrey Thomas Pirzinger — 3/15/2026

Signature — Date

Jeffrey Thomas Pirzinger
135 Beechwood Dr
Mamaroneck, New York 10543

# EXHIBIT A

True and correct copy of the relevant page of the TransUnion consumer report dated December 20, 2024 referenced in the affidavit of Jeffrey Thomas Pirzinger.

File Number: [redacted]9572
Date Issued: 12/20/2024

TransUnion

## Personal Information

You have been on our files since 04/01/1998

SSN: XXX XX 1654

Date of Birth: [redacted]

**Names Reported:** JEFFREY THOMAS PIRZINGER

**Addresses Reported:**

| Address | Date Reported |
|---|---|
| 135 BEECHWOOD DR, MAMARONECK, NY 10543 1201 | [redacted] |

**Telephone Numbers Reported:**

[redacted]

**Employment Data Reported:**

| Employer Name | Date Verified | Location | Position | Date Hired |
|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

## Account Information

Typically, creditors report any changes made to your account information monthly. This means that some accounts listed below may not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, payments, dates, remarks, ratings, etc. The key(s) below are provided to help you understand some of the account information that could be reported. Pay Status represents the current status of accounts and indicates how you are currently paying. For accounts that have been paid and closed, sold, or transferred, Pay Status represents the last reported status of the account.

**Rating Key**

Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. Any rating that is shaded indicates that it is considered adverse. Please note: Some but not all of these ratings may be present in your credit report.

| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120+ days late | Collection | Voluntary Surrender | Repossession | Charge Off | Foreclosure |

**Remark Key**

Additionally, some creditors may notate your account with comments each month. We refer to these creditor comments as "Remarks". The key below gives the descriptions of the abbreviated remarks contained in your credit file. Any remark containing brackets › ‹ indicates that this remark is considered adverse.

| | | | | | |
|---|---|---|---|---|---|
| CBC | ACCOUNT CLOSED BY CONSUMER | CBG | CLOSED BY CREDIT GRANTOR | CLO | CLOSED |
| DRC | DISP INVG COMP CONSUM DISAGRS | ›PRL‹ | UNPAID BALANCE CHARGED OFF | | |

## Accounts with Adverse Information

**ELAN FIN SVCS/FIDELITY #[redacted]0929****** (CB DISPUTES, PO BOX 108, SAINT LOUIS, MO 63166, (866) 234 4750)

Date Opened: 03/05/2012
Responsibility: Individual Account
Account Type: Revolving Account
Loan Type: FLEXIBLE SPENDING CREDIT CARD

Date Updated: 11/30/2024
Payment Received: $0
Last Payment Made: 07/08/2024
Original Charge-off: $18,779

Pay Status: ›Charged Off‹
Terms: Paid Monthly
Date Closed: 02/01/2024
›Maximum Delinquency of 120 days in 07/2024 and in 08/2024‹

High Balance: High balance of $21,551 from 10/2024 to 11/2024
Credit Limit: Credit limit of $35,000 from 10/2024 to 11/2024
Estimated month and year that this item will be removed: 03/2031

| | 11/2024 | 10/2024 | 09/2024 | 08/2024 | 07/2024 | 06/2024 | 05/2024 | 04/2024 | 03/2024 | 02/2024 | 01/2024 | 12/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $21,551 | $21,551 | | | | | | | | | | |
| Scheduled Payment | | $0 | | | | | | | | | | |
| Amount Paid | $0 | $0 | | | | | | | | | | |
| Past Due | $21,551 | $21,551 | | | | | | | | | | |
| Remarks | CBC/PRL | CBC/PRL | | | | | | | | | | |
| Rating | C/O | C/O | N/R | 120 | 120 | 90 | 60 | 30 | OK | OK | OK | OK |

| | 11/2023 | 10/2023 | 09/2023 | 08/2023 | 07/2023 | 06/2023 | 05/2023 | 04/2023 | 03/2023 | 02/2023 | 01/2023 | 12/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2022 | 10/2022 | 09/2022 | 08/2022 | 07/2022 | 06/2022 | 05/2022 | 04/2022 | 03/2022 | 02/2022 | 01/2022 | 12/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2021 | 10/2021 | 09/2021 | 08/2021 | 07/2021 | 06/2021 | 05/2021 | 04/2021 | 03/2021 | 02/2021 | 01/2021 | 12/2020 | 11/2020 | 10/2020 | 09/2020 | 08/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

**To dispute online go to: http://transunion.com/disputeonline**

# EXHIBIT B

True and correct copy of the relevant page of the TransUnion reinvestigation report dated January 23, 2025 referenced in the affidavit of Jeffrey Thomas Pirzinger.

File Number: [redacted]9572
Date Issued: 01/23/2025



# Your Investigation Results

**INVESTIGATION RESULTS - DISPUTED INFORMATION UPDATED: A change was made to the item(s) based on your dispute.**

**ELAN FIN SVCS/FIDELITY #**[redacted]0929**** (CB DISPUTES, PO BOX 108, SAINT LOUIS, MO 63166, (866) 234 4750 )

We investigated the information you disputed and updated: **Rating; Historical Trended Data.** Here is how this item appears on your credit report following our investigation.

**Date Opened:** 03/05/2012
**Responsibility:** Individual Account
**Account Type:** Revolving Account
**Loan Type:** FLEXIBLE SPENDING CREDIT CARD

**Balance:** $21,551
**Date Updated:** 12/31/2024
**Payment Received:** 07/08/2024 ($0)
**Last Payment Made:** 07/08/2024
**High Balance:** $21,551
**Original Charge-off:** $16,779
**Credit Limit:** $35,000
**Past Due:** >$21,551<

**Pay Status:** >Charged Off<
**Terms:** Paid Monthly
**Date Closed:** 02/01/2024
>Maximum Delinquency of 120 days in 07/2024 and in 08/2024<

**Remarks:** ACCOUNT CLOSED BY CONSUMER; >UNPAID BALANCE CHARGED OFF<

**Estimated month and year that this item will be removed:** 03/2031

| | 11/2024 | 10/2024 | 09/2024 | 08/2024 | 07/2024 | 06/2024 | 05/2024 | 04/2024 | 03/2024 | 02/2024 | 01/2024 | 12/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | C/O | C/O | X | 120 | 120 | 60 | 60 | 30 | OK | OK | OK | OK |

| | 11/2023 | 10/2023 | 09/2023 | 08/2023 | 07/2023 | 06/2023 | 05/2023 | 04/2023 | 03/2023 | 02/2023 | 01/2023 | 12/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2022 | 10/2022 | 09/2022 | 08/2022 | 07/2022 | 06/2022 | 05/2022 | 04/2022 | 03/2022 | 02/2022 | 01/2022 | 12/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2021 | 10/2021 | 09/2021 | 08/2021 | 07/2021 | 06/2021 | 05/2021 | 04/2021 | 03/2021 | 02/2021 | 01/2021 | 12/2020 | 11/2020 | 10/2020 | 09/2020 | 08/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 07/2020 | 06/2020 | 05/2020 | 04/2020 | 03/2020 | 02/2020 | 01/2020 | 12/2019 | 11/2019 | 10/2019 | 09/2019 | 08/2019 | 07/2019 | 06/2019 | 05/2019 | 04/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 03/2019 | 02/2019 | 01/2019 | 12/2018 | 11/2018 | 10/2018 | 09/2018 | 08/2018 | 07/2018 | 06/2018 | 05/2018 | 04/2018 | 03/2018 | 02/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

# EXHIBIT C

True and correct copy of the February 15, 2024 letter from Elan Financial Services referenced in the affidavit of Jeffrey Thomas Pirzinger.

elan
Credit Card
201 S TRYON ST STE 200
CHARLOTTE NC 28202

C5BAAE
Page 1 of 1

2/15/2024

000000032 01 SP 106481964628869 P
JEFFREY PIRZINGER
135 BEECHWOOD DR
MAMARONECK NY 105431201

Please reference ID M_0159890647
Account(s) ending in: 0853
Closed Effective 2/13/2024

Dear Customer,

Please be advised that Elan Financial Services has elected to close your credit card account(s) referenced above in accordance with the terms and conditions of your Cardmember Agreement. In the section of the Agreement titled *Cancellation of Your Account*, it highlights that we may cancel your account by providing notice to you. Your Agreement is included with the documentation provided when a new account is opened, and you may also contact the customer service number on the back of your card to request a copy of your Agreement.

The account is closed effective immediately. Any outstanding balance remains due and payable in accordance with the terms of the Agreement, and you will continue to receive monthly statements until the account is paid in full. All rewards are forfeited at account closure.

If you have any questions concerning this letter, please contact us at 833-868-4983, Monday-Friday,8 a.m. to 7 p.m. EST. We accept relay calls. Please understand that your local branch does not have the details to assist you with this matter.

Sincerely,
Account Closure Department

Please send your written correspondence to:
Fax Number: 866-616-0854
Email: kycresponseelan@elanfs.com

The creditor and issuer of this credit card is Elan Financial Services.

**EQUAL CREDIT OPPORTUNITY ACT NOTICE**

The Federal Equal Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because of all or part of the applicant's income derives from any public assistance program/ or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection (CFPB), 1700 G Street NW, Washington, DC 20552.

Notice to Washington residents: Washington state law against discrimination prohibits discrimination in credit transactions because of race, creed, color, national origin, sex, marital status, honorably discharged veteran or military status, sexual orientation, or the presence of any sensory, mental or physical disability or the use of a trained guide dog or service dog by a disabled person. The Washington State Human Rights Commission administers compliance with this law.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)**

---

JEFFREY THOMAS PIRZINGER,

Plaintiff,

vs.

TRANS UNION LLC,

Defendant.

Case No. 7:25-cv-01760-PMH

---

**SUPPLEMENTAL DECLARATION OF JEFFREY THOMAS PIRZINGER REGARDING ELAN ACCOUNT IDENTIFICATION**

I, Jeffrey Thomas Pirzinger, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. I am the Plaintiff in this action and make this declaration based upon my personal knowledge.
2. I possess the Fidelity Rewards Visa credit card issued by ELAN Financial Services that is the subject of the disputed account-closure reporting.
3. The card's account number contains sixteen digits. Digits nine through twelve are 0929, corresponding to the account identifier appearing in Trans Union's reporting. Digits thirteen through sixteen are 0853, corresponding to the account identifier appearing in ELAN Financial Services' February 15, 2024 correspondence.
4. Attached as Exhibit D is a true and correct photocopy of the front and reverse sides of that card, with sensitive account information redacted.

5. The card corroborates that the differently masked account identifiers appearing in the Trans Union report and ELAN correspondence refer to the same credit card account.

**I AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE FOREGOING REPRESENTATIONS ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF.**

Dated: October 30, 2026

Jeffrey Thomas Pirzinger

Jeffrey Thomas Pirzinger
Plaintiff, Pro Se

# Exhibit D

Fidelity Rewards Visa Card (Issued by ELAN Financial Services)
having the last eight digits of 0853

***(Redacted for Public Filing)***






# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing, including:

1. PLAINTIFF'S JEFFREY THOMAS PIRZINGER'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

2. PLAINTIFF'S RESPONSES TO DEFENDANT'S LOCAL CIVIL RULE 56.1 STATEMENT

3. DECLARATION OF JEFFREY THOMAS PIRZINGER

4. AFFIDAVIT OF JEFREY THOMAS PIRZINGER DATED MARCH 15, 2006 (8 pages with Exhibits)

5. SUPPLEMENTAL DECLARATION OF JEFFREY THOMAS PIRZINGER REGARDING ELAN ACCOUNT IDENTIFICATION

was served upon Counsel for Defendant Trans Union LLC via ECF upon docketing, and electronic mail on the 30th day of October, 2026, to the following:

andrew.hope@bipc.com
makenzie.leh@bipc.com

Respectfully submitted,

*Jeffrey Thomas Pirzinger*

Dated: October 30, 2026

Jeffrey Thomas Pirzinger
135 Beechwood Dr
Mamaroneck, NY 10543
T: (914) 497-1104
F: (914) 412-0456
Plaintiff, Pro Se